**McDonough Holland & Allen PC**
Attorneys at Law

Marcia L. Augsburger
Attorney at Law

Sacramento Office
916.444.3900 tel
916.444.8989 fax
maugsburger@mhalaw.com

July 7, 2008

The Honorable Jeffrey S. White
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3483

Re: *Alta Bates Summit Medical Center("ABSMC") v. United of Omaha Life Insurance Co., et al.*, United States District Court, Northern District of California, Case No. 07-04224 JSW

Dear Judge White:

This letter is submitted pursuant to this Court's standing order for resolution of discovery disputes. The parties' dispute relates to requests for production that ABSMC served on United of Omaha Life Insurance Company ("UOO"). The parties met and conferred by telephone and in person during the week of June 23, 2008, after exchanging correspondence. However, the parties were unable to resolve all issues. ABSMC seeks an order that UOO must produce documents in response to request numbers 17, 51, and 52, Exhibit A1 hereto. UOO's responses to the requests at issue are attached hereto as Exhibit B1.

<u>Plaintiff/Moving Party ABSMC's Position</u>

ABSMC is a non-profit public benefit corporation that operates an acute care hospital. ABSMC is self-insured for health care. To cover catastrophic medical expenses for its employees, ABSMC purchased stoploss insurance from UOO for calendar years 2003, 2004, 2005, and 2006. This insurance was to cover a percentage of ABSMC's costs over a "Specific Deductible" for medical care rendered to its employees. During the policy year 2006, UOO was obligated to pay eligible medical expenses for the ABSMC employee at issue ("Employee Patient"), who had renal disease. UOO denied coverage, claiming that Employee Patient's renal disease diagnosis was not disclosed before the policy was issued.

Specifically, UOO contends that ABSMC's third party administrator ("TPA"), Benefit Risk Management Services, Inc. ("BRMS"), who was also UOO's TPA and agent, was obligated to disclose Employee Patient's diagnosis on a Select Risk Questionnaire that was submitted to UOO prior to the policy renewal date of January 1, 2006. The Select Risk Questionnaire stated that the applicant was to complete an "Attachment A . . . with respect to any individuals . . . satisfying [listed] criteria and expected to be covered under the Applicant's self-funded medical plan on the [renewal date.]" The Select Risk Questionnaire also stated that "[a]s an alternative to completing Attachment A, the Applicant may attach a report(s) that contain(s) the information requested for Attachment A ... within 30 days of the Proposed Effective Date ...." In accordance with this provision, BRMS sent a report to UOO on January 28, 2006, that contained the information requested about individuals having certain "trigger" diagnoses, including Employee Patient. UOO contends this disclosure was too late because the disclosure form required disclosure within 30 days before the Proposed Effective Date.

ABSMC contends that the disclosure was made within 30 days before or after the Proposed Effective Date is not material and that there was substantial compliance with any disclosure

Sacramento
555 Capitol Mall
9th Floor
Sacramento CA
95814-4692
tel 916.444.3900
toll free 800.403.3900
fax 916.444.8334

Oakland
1901 Harrison Street
9th Floor
Oakland CA
94612-3501
tel 510.273.8780
toll free 800.339.3030
fax 510.839.9104

www.mhalaw.com

 **McDonough Holland & Allen PC**
Attorneys at Law

The Honorable Jeffrey S. White
July 7, 2008
Page 2

requirement. See, e.g., Cal. Ins. Code §§ 332 (party to insurance contract must communicate to other in good faith all facts within his/her knowledge that are material and not that other does not have means of ascertaining), 334 ("Materiality" is determined by "the probable and reasonable influence of the facts upon the party to whom the communication is due."), 359 (rescission of insurance policy available where false representation at issuance of policy was material). In fact, it is undisputed that the premium would not have changed and that at most, UOO would have applied a higher specific deductible to coverage for Employee Patient. Moreover, not only is the disclosure form ambiguous on its face in this regard, UOO did not act in accordance with its current interpretation. UOO paid stoploss claims in 2006 for at least one other employee who had one of the "trigger" diagnoses and who was only disclosed on the January 28, 2006 report ("Employee B").

In its request numbers 17, 51, and 52 to UOO ABSMC seeks evidence of UOO's interpretation and enforcement of the alleged requirement that employees with certain trigger diagnosis codes be disclosed to UOO before the renewal date, and specifically documents showing how UOO performed the identical provisions in its dealings with insureds other than ABSMC, the construction UOO gave to the alleged contractual provisions, and whether UOO's asserted interpretation of the contract is consistent with its course of dealing and performance, from 2003 through the present. See, e.g., Cal. Code Civ. Proc. §§ 1856(c), 1860; Cal. Ins. Code § 359. Responsive documents may support ABSMC's arguments that disclosure of "trigger" diagnoses was not a precondition to renewal; that disclosure within 30 days after the renewal date was not a material non-disclosure; that the alleged disclosure requirement is too uncertain to enforce as a precondition; that the most critical information was provided so there was substantial performance; and that UOO is estopped to deny coverage.

UOO has not provided information on the volume of relevant files or responsive documents, but if UOO establishes oppression, ABSMC is willing to limit the production to denials of stoploss claims based on failure to timely disclose trigger diagnoses; documents showing that UOO applied a higher "deductible" to such claims but paid them; and documents showing UOO paid such claims despite the failure to disclose them before renewal. ABSMC is informed that UOO uses forms and protocols for recording information of this type, including "exceptions logs," indicating that compiling the requested information would not be burdensome. If such logs or documents exist, then Employee B and others would appear there and UOO should be required to produce them.

Accordingly, ABSMC requests an order compelling production of the foregoing documents or responses. If, as UOO suggests below, documents responsive to requests 17, 51, and/or 52 do not exist, UOO should be compelled to amend its responses to so state.

United's Position

The right to discovery is broad, but it is not without limits. Alta Bates contends that United of Omaha ("United") breached an obligation under Alta Bates's stoploss policy to reimburse it for medical expenses related to a former employee (the "Employee Patient"). Rather than focus on the facts of the claim at issue and the relationship between Alta Bates and United, Alta Bates seeks the production of all stoploss policies issued to other companies in California and all claims ever submitted related to those policies. These broad and intrusive discovery requests are unduly burdensome and seek information that is completely irrelevant to this case.

This is a breach of contract dispute between Alta Bates and United. The insurance contract at issue requires the submission of a Select Risk Questionnaire prior to issuance of the policy. The Questionnaire lists renal failure as a diagnosis that must be disclosed. Alta Bates's third party

 **McDonough Holland & Allen PC**
Attorneys at Law

The Honorable Jeffrey S. White
July 7, 2008
Page 3

administrator ("TPA") compiled the information to be disclosed on the Select Risk Questionnaire. Alta Bates's broker submitted this disclosure to United in November 2005, which United and Alta Bates used to negotiate the final rates and terms for the policy. Alta Bates signed and formally submitted this Select Risk Questionnaire 23 days prior to the effective date of the new policy, acknowledging that the disclosure was complete and that a claim could be denied if an individual was not disclosed who should have been disclosed. A policy was then issued, and stoploss coverage started effective January 1, 2006.

Alta Bates's stoploss policy provides specific options to United when an individual suffering a medical condition is not disclosed on the Select Risk Questionnaire: United may deny a claim for reimbursement related to that individual, modify the contract to set a higher specific deductible for the person, charge additional premiums, or rescind or void the policy. The Questionnaire also warns the insured of these options in the event of non-disclosure. Modifying the specific deductible to include a higher amount for a particular employee is sometimes referred to as "lasering." This typically happens prior to the issuance of the policy, but is also a contractual option United may employ after the policy has been issued and a company submits a claim for reimbursement. Alta Bates failed to disclose the Employee Patient to United on the Select Risk Questionnaire even though Alta Bates's TPA knew that she had been diagnosed with chronic renal failure. Alta Bates later submitted a claim for reimbursement of medical expenses related to that employee. Under the express terms of the policy, United exercised its contractual right to deny the claim for reimbursement due to the failure to disclose.

Alta Bates now contends that it is not bound by the disclosures it made on the Select Risk Questionnaire and can rely upon reports its TPA submitted after the issuance of the stoploss policy. In late January 2006, Alta Bates's TPA sent a "potential large claim" report to one of United's case management nurses. The Employee Patient was listed on the document. The nurse who received the report was not an underwriter, and Alta Bates's TPA did not indicate that this form was intended to relate to the renewal or underwriting. In fact, the report only listed treatment dates in 2006, after the policy was issued, and thus would not have provided notice to Untied of a diagnosis prior to issuance of the policy. Despite the fact that this report had nothing to do with the renewal or underwriting and that it was submitted to a case management nurse after the policy had already been issued, Alta Bates maintains that this report should be treated as a timely disclosure that abrogates United's right to deny the claim for reimbursement related to the Employee Patient.

To support its position, Alta Bates demands that United review claims files related to all other stoploss policies ever issued in California to determine whether these claims potentially involve a non-disclosure of a diagnosis listed on the Select Risk Questionnaire and to explore how United treated these claims. Alta Bates's apparent theory is that, if United chose to laser a person in another non-disclosure case instead of denying a claim, this evidence is relevant to prove that United cannot invoke its contractual right to deny Alta Bates's claim here.

There are a number of problems with this discovery. First, the evidence is not relevant to any issue in dispute and will not lead to the discovery of admissible evidence. The policy explicitly gives United the right to deny claims due to non-disclosure. The fact that United may have taken a different course of action in another situation has no bearing on whether United can invoke its right to deny the claim for reimbursement here. Rather, the resolution of the dispute turns on the facts of this case and the terms of the insurance policy between United and Alta Bates. Allowing discovery into the medical information of employee patients working for different companies would not advance the resolution of this dispute and would involve a significant intrusion into privacy rights of non-parties.

Second, responsive documents, if any, would have no probative value. Evidence related to non-party claims would be potentially relevant only if it involved a substantially similar situation: i.e.,

 **McDonough Holland & Allen PC**
Attorneys at Law

The Honorable Jeffrey S. White
July 7, 2008
Page 4

claims involving chronic renal failure in which United paid the claim despite knowing that the insured had failed to disclose the claimant. This is a fact-intensive inquiry. In other words, the court would have to consider the details and the merits of each of the other claims and conduct a series of mini-trials on unrelated claims to determine whether they also involved a failure to disclose similar to this case.

Third, United would have to manually review all California claim files to find any responsive documents. United does not maintain readily accessible records showing when and how each person was disclosed. Each claim filed would have to be reviewed to determine when the insured first learned of the patient's diagnosis, the details of that diagnosis, and when the patient was first disclosed. Manually reviewing all California claims files to extract this information would be unduly burdensome and oppressive.

Fourth, despite the burden in conducting the manual search, United likely will not find any responsive documents. United has confirmed that it has not denied any claim in California since 2003 due to non-disclosure or placed any laser on an individual after-the-fact. The present dispute is the only case in California in the last five years involving a denial or a laser after the fact due to a failure to disclose. There are no easily accessible records regarding denials or lasers before that date. If United had paid a claim that it could have denied for failure to disclose, this claim would be reflected on an "exceptions" log. United has maintained this log since 2005. There is no record on the log suggesting that United made any such exceptions in California. These facts should put the discovery dispute to rest. Yet, Alta Bates refuses to accept any compromise short of a full manual review of all California claims files for every stoploss policy ever issued in California from the 1990s to the present.

The mere fact that Alta Bates has asserted a breach of contract claim does not give it the right to conduct intrusive, time consuming and pointless discovery into sensitive medical information involving non-parties and their employees. United respectfully requests that the court reject Alta Bates's request for leave to file a discovery motion related to this issue.

Very truly yours,

*Murphy for*
Marcia L. Augsburger, for ABSMC

*Z. R. Wall*
Travis R. Wall, for United of Omaha and Mutual of Omaha

Enclosures

1105604v6 33802/0004