

**McDonough Holland & Allen PC**
Attorneys at Law

**Marcia L. Augsburger**
Attorney at Law

Sacramento Office
916.444.3900 tel
916.444.8989 fax
maugsburger@mhalaw.com

August 6, 2008

Magistrate Judge Elizabeth D. Laporte
United States District Court,
Northern District of California
Courtroom E, 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102-3483

Re:  *Alta Bates Summit Medical Center("ABSMC") v. United of Omaha Life Insurance Co., et al.*, United States District Court, Northern District of California, Case No. 07-04224 JSW

Dear Magistrate LaPorte:

The parties have met and conferred as directed in Your Order Re: July 7, 2008 Joint Letter Regarding Discovery Dispute ("July 25 Discovery Order") in the above-referenced matter, and Plaintiff is not satisfied with the explanation that Defendant purported to provide pursuant to that Order.  The July 25 Discovery Order stated, in pertinent part:

> The documents sought by Plaintiff have at least some relevance for purposes of discovery regarding Defendant's interpretation and enforcement of its policy requirements, although they are overbroad and it appears that searching for all such documents would be unduly burdensome and disproportionate.  Therefore, if as Defendant states, it has no responsive documents, it shall submit a declaration from the person(s) most knowledgeable regarding the diligent search made for documents and/or why Defendant believes that no responsive documents exist.  This declaration shall be provided no later than August 1, 2008.  If Defendant cannot in good faith provide such a declaration, or if Plaintiff in good faith is not satisfied with the explanation, the parties shall meet and confer immediately and agree on restrictions to the scope of this discovery, including but not limited to a temporal limit on all the requests as in request number 51.

Plaintiff submits this matter in letter form because the July 25 Discovery Order does not state a remedy; the papers underlying the July 25 Discovery Order were in the form of a letter, as then required by Judge White; the applicable noticed motion would be one for

**Sacramento**
555 Capitol Mall
9th Floor
Sacramento CA
95814-4692
tel 916.444.3900
toll free 800.403.3900
fax 916.444.8334

**Oakland**
1901 Harrison Street
9th Floor
Oakland CA
94612-3501
tel 510.273.8780
toll free 800.339.3030
fax 510.839.9104

www.mhalaw.com

1116750v7 33802/0004

 **McDonough Holland & Allen PC**
Attorneys at Law

Magistrate Judge Elizabeth D. Laporte
August 6, 2008
Page 2

contempt, which Plaintiff hopes to avoid if possible due to the associated expense, time, and punitive nature of such a motion - Plaintiff simply needs the documents.

Defendant contends that Plaintiff must file a motion to compel, based on Judge White's Order of Referral and Your Order Re Discovery Procedures, and has therefore declined to participate in the drafting and submission of this letter. However, we believe this is the appropriate procedure because the July 7, 2008 Joint Letter was itself a "motion to compel" and this letter relates to the same discovery requests that were in issue and partially resolved in Your July 25 Discovery Order.

For these reasons, we submit the following in support of a ruling that Defendant has failed to comply with the July 25 Discovery Order and that Defendant must now produce requested documents forthwith.

On August 1, 2008, Defendant submitted a declaration that does not comply with the July 25 Discovery Order. The declaration states, in its entirety:

> I, Carol Tarkowski, declare:
>
> 1. I am Manager of Stop Loss Claims for Mutual of Omaha Insurance Company ("Mutual") and United of Omaha Life Insurance Company ("United"). The following statements are within my personal knowledge and, if called on to do so, I could and would testify competently thereto.
> 2. United of Omaha maintains records of stop loss claims it has denied. I have reviewed these records for claims involving failures to disclose in California. Other than the claim at issue in this case, there is not indication that United has denied any claim in California since 2003 due to non-disclosure or placed any laser on an individual after-the-fact.
> 3. Since 2005, United has maintained an exception log. There is no record on the log indicating that United has made an exception and paid a claim in California that United could have denied due to a failure to disclose.
> I declare under penalty of perjury under the laws of the United States and of California that the foregoing is true and correct. Executed on August 1, 2008, in Omaha, Nebraska.

The declaration does not address requests numbers 17 and 51 set forth below, and is inadequate and misleading.

**Request No. 17**. As limited during meet and confer discussions between the parties, Plaintiff seeks documents showing approvals and denials of claims where the trigger

1116750v7 33802/0004

**MHA** McDonough Holland & Allen PC
Attorneys at Law

Magistrate Judge Elizabeth D. Laporte
August 6, 2008
Page 3

diagnosis was not disclosed before policy commencement for the years 2005 and 2006, in California, with the identities of the patients at issue redacted.

The requested documents go to the heart of this dispute. Defendant's denial of the claim at issue was based on its contention that patients with certain diagnoses had to be disclosed before commencement of the policy period, January 1, 2006. Defendant based its denial on the "Misstated Data" exclusion under the policy at issue, which purports to allow Defendant to deny claims where the insured "misstated, omitted, concealed or misrepresented [a] **material fact or circumstance** concerning th[e] Policy . . .." Plaintiff contends that the omission to disclose the diagnosis 29 days earlier is not material in this case. The requests are reasonably calculated to elicit information revealing how Defendant treated other cases where serious illnesses were not disclosed before the policy commencement date, and to show whether such non-disclosures were in fact a "material fact or circumstance concerning the Policy" that may have justified denial.

No facts are stated to show that a diligent search was made for the documents. Defendant's declaration states that Ms. Tarkowski reviewed records of claims it denied, but she apparently did not review documents relating to claims that were approved where the trigger diagnosis was not disclosed. Similarly, Defendant states that there is no record on an "exception log" indicating that Defendant "has made an exception and paid a claim . . . that [Defendant] could have denied due to a failure to disclose." The declaration says nothing about reviewing any other documents that would show that Defendant paid claims where the trigger diagnosis was not disclosed. Thus, essentially Defendant's declaration states only that Defendant reviewed records of claims it denied and a log. This is not a diligent search and it does not establish that responsive documents do not exist.

In fact, according to the declaration, the "exception log" only includes claims that Defendant considered to be those that it "could have denied," which of course begs the question at issue: Did Defendant approve claims for employees whose serious illness or injury diagnosis preceded the disclosure because Defendant knew it was required to do so under the policy and SRQ. The question can only be answered by searching and producing records of paid and denied claims.

Defendant refuses to produce the documents on the ground that they are irrelevant, despite Your Order to the contrary, and on the further ground that locating them would require a review of "every claim file." However, Defendant refuses to even estimate how many claim files Defendant would need to review for 2005 and 2006. Thus, it must be assumed that the files can be reviewed and documents produced. Furthermore, even if the records are voluminous, Defendant should be able to run reports for the 2 policy years in issue on all claims that were paid and denied; check them against the final disclosures, of which, according to deposition testimony, there is only one for each insured group; and then, for those patients who do not appear on the final disclosures, check to see when they were first diagnosed. For the cases where the diagnosis preceded the policy commencement date, Defendants should be compelled to produce the claims files.

1116750v7 33802/0004


**McDonough Holland & Allen PC**
Attorneys at Law

Magistrate Judge Elizabeth D. Laporte
August 6, 2008
Page 4

Defendant's declaration is also misleading. Under Defendant's interpretation of the policy language here,[1] there is at least one other claim that Defendant "could have denied due to a failure to disclose" – a claim involving a patient we will refer to here as "Patient CC." In Patient CC's case, Plaintiff's TPA received information before the policy renewal that Patient CC had a trigger diagnosis but the TPA did not disclose that diagnosis and patient before the policy commencement date of January 1, 2006. **This is exactly the same situation as the case at issue, but Defendant paid the claims for Patient CC and did not pay them for Employee Patient.** Nonetheless, Defendant's declaration states that there is no record <u>on the log</u> indicating that Defendant paid a claim in California "that United could have denied due to a failure to disclose." Thus, to preclude Plaintiff from discovering circumstances materially or substantially similar to Employee Patient's claim, Defendant is essentially drawing a legal conclusion that it could not have denied the claims that it paid and therefore need not produce evidence about them. Defendant is, at a minimum, playing semantic games.

When Plaintiff noted that Patient CC should appear on documents relating to exceptions Defendant made in some cases, opposing counsel asserted that Patient CC's claim would not appear on such records because Defendant determined that if it had known about Patient CC before the renewal date, Defendant would not have changed the policy terms or increased the deductible, i.e., the nondisclosure was not "material." This is precisely why production of the requested documents and information is so important and why Defendant must conduct a more thorough and diligent search of its records to determine whether claims were either paid or denied where trigger diagnoses were not disclosed before policy renewal. Plaintiff has a right to see these records to determine what the differences were in the situations at issue and how the differences explain what was "material" and otherwise bear on policy interpretation and Defendant's breach of the covenant of good faith and fair dealing. If Defendant's explanation of why no "exception" was required for Patient CC is true, the documents requested will also show that Defendant operated according to a set of rules or standards that are not contained within the policy as to whether Defendant "could have denied due to a failure to disclose." Such explanation further indicates that Defendant did not consistently apply the policy exclusion on which it currently relies.

Defendant has complained that it should not be required to produce the information because ultimately, a "mini-trial" would need to be conducted on each one to prove or disprove similarity to the case at issue here. However, this argument is premature; until the requested information is produced, there is no way of knowing whether discovery should be reopened to address them or what kind of discovery is warranted.

<u>**Request No. 51.**</u> As limited during the meet and confer process, this request seeks copies of insurance policies issued to self-insured health plans for medical services

---

[1] I.e., that Defendant had a right to deny the claim at issue (for "Employee Patient") because her trigger diagnosis was "known" to Plaintiff's TPA and not disclosed.

1116750v7 33802/0004

**MHA** McDonough Holland & Allen PC
Attorneys at Law

Magistrate Judge Elizabeth D. Laporte
August 6, 2008
Page 5

rendered to the insureds' employees in California for the policy years 2005 and 2006. As an alternative to the production of these documents, Plaintiff agreed to accept a declaration from Defendant that that all language having to do with trigger diagnoses disclosures contained in the policies, and any Select Risk Questionnaires that Defendant contends were part of the policies, was identical. To date, Defendant has not produced either the policies or the declaration, and has not described any burden associated with producing the policies.

The requested information is relevant to whether disclosures of serious illnesses was a material consideration for Defendant in underwriting or issuing stoploss policies. Evidence that Defendant did not require trigger diagnosis information from all insureds would have a tendency to show that the information was not important to the underwriting and other renewal processes. These documents should be produced.

**Request No. 52**. By this request, Plaintiff seeks documents reflecting or constituting denials of stoploss claims by Defendant for California insureds based on failure to timely disclose trigger diagnoses, for the policy years 2005 and 2006.

As with request number 17, and as acknowledged in Your July 25 Discovery Order, the requested documents are reasonably calculated to reveal how Defendant treated other cases where serious illnesses were not disclosed before the policy commencement date, and to show whether such non-disclosures were in fact a "material fact or circumstance concerning the Policy" that may have justified denial.

For the reasons described above with respect to request number 17, Defendants' declaration does not suffice to satisfy the July 25 Discovery Order. No facts are stated to show that a diligent search was made for the documents.

Furthermore, the declaration states that "there is no indication" in the "records of stop loss claims it has denied" that it denied any claim for non-disclosure other than the case at issue here. There are at least two problems with this statement. First, it appears that the declarant is drawing a conclusion about what the documents "indicate." This is not an affirmative statement based on a diligent search of all records that Defendant has never denied claims due to non-disclosure other than the one at issue. Second, it appears that in cases where Defendant could have denied for non-disclosure under its current policy interpretation but denied for some other reason, Defendant decided the information did not need to be produced. All of this information is relevant to the interpretation of the policy.

For the foregoing reasons, Plaintiff respectfully requests a further ruling from the Court on the discovery matters addressed in the July 25 Discovery Order.

1116750v7 33802/0004

 **McDonough Holland & Allen PC**
Attorneys at Law

Magistrate Judge Elizabeth D. Laporte
August 6, 2008
Page 6

Respectfully submitted,

Marcia L. Augsburger, for ABSMC


cc: Travis R. Wall, for United of Omaha and Mutual of Omaha

1116750v7 33802/0004