# Exhibit A

MUTUAL *of* OMAHA INSU....NCE C ANY
UNITED *of* OMAHA LIFE INSURANCE COMPANY
Mutual of Omaha Plaza
Omaha, NE 68175
402 342 7600
mutualofomaha.com



03/22/2006

Alta Bates Summit Medical Center,

This is to acknowledge that you have received the Stop Loss Master Contract issued by Mutual of Omaha. Please sign the bottom of this page and return it within 15 working days to the following address.

    S3 Stop Loss Unit -- Georgeann Baxter
    Mutual of Omaha Insurance Company
    Mutual of Omaha Plaza
    Omaha NE 68175

If you prefer, you may email or fax this letter to the following:

Email - georgeann.baxter@mutualofomaha.com

Fax – (402) 351-1914

If you have any questions, please contact me or your Third Party Administrator (TPA).

Thank you,

*Georgeann Baxter*

Georgeann Baxter
Mutual of Omaha
Contract Svcs Specialist
402-351-8119

Date: 3/27/06

Signature _____  Mary A.S. Polley

Title  Director, Benefits & Disability Mgmt

EXHIBIT A

# UNITED of OMAHA LIFE INSURANCE COMPANY

Home Office: Mutual of Omaha Plaza, Omaha, Nebraska 68175

**A Stock Company**

(herein called Company)

has issued this Policy to **Alta Bates Summit Medical Center**

(herein called Policyholder)

This Policy is issued in consideration of the terms, conditions and limitations of this Policy.

This Policy is effective January 1, 2006, at 12:01 a.m., Standard Time, at the main office of the Policyholder.

The Company agrees to reimburse the Policyholder for excess Eligible Losses, in accordance with the terms, conditions and limitations of this Policy.

This Policy is issued in and is subject to California law.

UNITED OF OMAHA LIFE INSURANCE COMPANY

*[signature]*

Chairman of the Board and Chief Executive Officer

*[signature]*

Corporate Secretary

**POLICY NO. UP-90X4**

(herein called Policy)

Mutual of Omaha

5654GM-A-U-EZ 03

(**)
TPA wo subro

CONFIDENTIAL                                    ABSMC01595

SCHEDULE OF INSURANCE

UP-90X4

This Schedule of Insurance is incorporated into and is made a part of this Policy. Insurance coverage herein applies only during the Policy period specified, except that the Maximum Specific Reimbursement applies to reimbursements made during the Policy period specified in the Schedule of Insurance and any prior Policy period. Except as otherwise described in this Policy, the coverage herein follows the benefit exclusions and provisions in the Plan.

Terms shown in the Schedule of Insurance will be used throughout the Policy and will have the value or meaning shown herein.

1. **THIRD PARTY ADMINISTRATOR (TPA):** Benefit & Risk Management Services

2. **POLICY PERIOD:** Begins January 1, 2006 and ends December 31, 2006

3. **COVERED UNITS:**

   (a) Your full-time eligible employees working at least 30 hours per week; or

   (b) COBRA, FMLA, USERRA and other continuees described in the Plan document.

4. **SPECIFIC STOP LOSS INSURANCE**

   (a) **Specific Deductible:** $250,000

   (b) **Aggregated Specific Deductible:** $250,000 (Applies only to the following individuals)

   [Redacted]

   (c) **Specific Reimbursement Percentage:** 100%

   (d) **Maximum Specific Reimbursement:** $1,750,000

   (e) **Specific Benefit Period:**

   Expenses incurred from January 1, 2005 to January 1, 2007, and Plan benefits Paid from January 1, 2006 to January 1, 2007

   (f) Specific Stop Loss Insurance provides reimbursement for Eligible Losses for medical and prescription drug card program Expenses.

   (g) **Specific Monthly Premium Rates:**

   covered unit with or without dependents............................ [Redacted]

5. **SPECIAL UNDERWRITING TERMS:** The following special underwriting terms apply to all provisions of the Policy, including any Riders:

The following provision applies only if an eligible employee or his/her eligible dependent(s) becomes covered after the time period specified under the Employee Benefit Plan provided by the Policyholder.

If an eligible employee or eligible dependent received treatment for, or is diagnosed with, a condition in the six-month period before that person became covered under the Policyholder's Employee Benefit Plan, We will not make payment under the Specific Stop Loss Insurance provision until a period of 12 consecutive months has passed from the date that person initially became covered under such Plan.

All eligible medical Expenses incurred at Alta Bates Summit Medical Center facilities, will be reimbursed at 60%.

1. No benefits are provided under this plan for Expenses incurred for or in connection with:

    a. Charges arising out of or in the course of any employment or occupation for wage or profit, or for which the employee is entitled to benefits under any worker's compensation or occupation disease law, or any such similar law. This applies whether or not worker's compensation or similar law actually covers the charges incurred, or whether such employment is with the employer, another employer or self-employment.

    b. Charges incurred for the treatment of sexual inadequacies or dysfunction, impotence (unless organic in nature), or for sexual transformation.

    c. Charges for the purchase of rental or durable medical equipment that can be used for common use.

    d. Charges resulting from or occurring during the commissions of a crime, illegal act, felonious act, or while engaging in an illegal occupation or act, or aggravated assault.

    e. All plans, except for the combined plans, services or supplies for an on-going treatment of infertility, artificial insemination in-vitro fertilization, or surgery to correct voluntary sterilization.

2. The plan includes pre-certification and utilization review, which is a program designed to help ensure that all covered persons receive necessary and appropriate health care while avoiding unnecessary Expenses.

3. If deemed appropriate by the plan, large case management will work with the physician, the hospital, the patient and the patient's family to provide high-quality cost effective treatment options for certain patients on a voluntary basis.

CONFIDENTIAL

ABSMC01597

4. There may be a situation in which You or Your covered dependent(s) may have a legal right to recover the costs of Your health care from a third party who may be responsible for the illness or injury. If We have provided any benefits, We will be entitled to recover the amount We have paid from the proceeds of any settlement or recovery You or a covered dependent received from a third party.

CONFIDENTIAL

## DEFINITIONS

**ELIGIBLE PARTICIPANT** means any individual covered under the Plan, except as otherwise noted in the Special Underwriting Terms in the Schedule of Insurance.

**ELIGIBLE LOSS** means a Loss that shall be considered toward the satisfaction of deductibles and/or subject to reimbursement under this Policy. Eligible Loss does not, however, include any Loss described in the Exclusions provision.

**EXPENSE** means the charge incurred by an Eligible Participant for a service or supply which has been ordered, prescribed or rendered by a dentist, physician or hospital. An Expense is considered incurred on the date the service or supply is received.

**LOSS** means an amount Paid by You or the Plan:

   (a) for Plan benefits for Expenses;

   (b) in settlement of claims for benefits under the Plan; or

   (c) in satisfaction of judgments for benefits under the Plan.

**OUR, WE, US** means the Company shown on the face page of this Policy.

**PAY, PAID, PAYMENT** means a claim for Plan benefits has been processed, provided a draft/check is delivered to the payee within 10 days after the day Plan benefits were processed.

**PERFORMING NORMAL ACTIVITIES** means physically or mentally able to perform all of the usual and customary duties and activities of a person of the same age and sex, who is in good health. An individual is not performing normal activities if he/she is:

   (a) hospital confined;

   (b) confined to an institution;

   (c) confined to a facility other than a hospital;

   (d) confined at home; or

   (e) confined elsewhere due to an injury or sickness.

**PLAN** means Your self-insured health care plan for the benefit of Eligible Participants.

**RIDER** means a document that is added to and made a part of the Policy. A rider amends, limits, restricts or otherwise changes the provisions of the Policy.

**YOU, YOUR** means the Policyholder shown on the face page of this Policy.

## BENEFIT DEFINITIONS

**Maximum Specific Reimbursement** means Our maximum liability for all specific stop loss insurance reimbursements for Eligible Losses of a covered unit, including reimbursements made under this Policy, or any prior stop loss insurance policy issued by Us.

**Specific Deductible** means the amount of Your liability for Eligible Losses of each Eligible Participant during a Policy period. The specific deductible applies separately to each Eligible Participant during a Policy period.

**Specific Reimbursement Percentage** means the percentage of Eligible Losses in excess of the Specific Deductible that We agree to reimburse You subject to the terms and conditions of the Policy.

## SUPPLEMENTAL DEFINITIONS

**Maximum Allowable Amount** means the total charge considered as an Eligible Loss before applicable deductibles and reimbursement percentages are applied. If the Usual and Customary Charge is less than the maximum allowable amount, the Usual and Customary Charge applies. In no event shall the maximum allowable amount exceed the amount billed or the amount for which the Eligible Participant is responsible.

The maximum allowable amount for provider charges related to multiple or bilateral surgeries performed during the same operative session will be:

(a) 100% of the Usual and Customary Charge for the primary procedure;

(b) 50% of the Usual and Customary Charge for the secondary procedure; and

(c) 25% of the Usual and Customary Charge for each additional procedure.

The maximum allowable amount for surgical assistance by a physician will be 20% of the Usual and Customary Charge for the surgery for which the assistance is provided.

If We determine that certain services or supplies should have been billed together, or that certain services or supplies should have been billed separately, the maximum allowable amount will be based on Our determination of how such services or supplies should have been billed.

**Usual and Customary Charge** means the amount charged for services and supplies provided, but not to exceed the 90 percentile of the Healthcare Charges Database (HCD) charges for such services or supplies. If We determine that insufficient data exists from the HCD for a service or supply, We will determine the usual and customary charge. The usual and customary charge will be calculated by multiplying the unit cost of the HCD service category assigned to the service or supply, with the relative value assigned to the services or supplies performed by the Medicare Resource Based Relative Value Scale. If a relative value is not available from Medicare, We will use a commercially available relative value scale selected by Us.

For complex, new, and other services or supplies that We determine have no applicable relative value, We will assign a usual and customary charge. In no event will the usual and customary charge exceed the billed amount, or the amount for which the Eligible Participant is responsible.

Usual and customary charges may not reflect actual charges and do not consider a provider's training, experience, or category of licensure.

**Healthcare Charges Database** means a commercially available charge information database that provides historical information about charges for service and supplies by procedure code and geographic categories, all as determined and adjusted by the database supplier. The healthcare charges database will be updated as information becomes available from the database supplier, up to twice each year.

## EXCLUSIONS

Eligible Loss does not include any Loss:

(a) for an Expense for a service or supply which is not medically necessary;

(b) which exceeds the Maximum Allowable Amount for an Expense;

(c) for experimental services or supplies;

(d) for any Expense which is not incurred during the benefit period described in the Schedule of Insurance;

(e) for Plan benefits which are not Paid during the benefit period described in the Schedule of Insurance;

(f) related to Eligible Participants that We require You to report on the Select Risk Questionnaire, unless those Eligible Participants are approved in writing by Us;

(g) which does not strictly comply with the terms and conditions of the Plan;

(h) which You may recover under any Plan coordination of benefits or non-duplication of benefits provision;

(i) related to exemplary, extra-contractual, compensatory or punitive damages or liabilities, including but not limited to those resulting from the Plan's, Your, or Your agent's, employee's or representative's gross negligence, intentional wrongs, fraud, bad faith or strict liability;

(j) related to any settlement or litigation costs and Expenses;

(k) related to the services of (or provided by) a third party administrator or other party, unless approved in writing by Us;

(l) arising out of, or resulting as a consequence of, or related to declared or undeclared war, civil war, warlike action, insurrection, rebellion, or usurped power, or any action taken by a military force or government using military personnel to defend against any of these;

(m) resulting from nuclear accidents;

(n) which arises out of, or in the course of, any employment with any employer; or for which the Eligible Participant receives any settlement from a workers' compensation carrier, or is entitled to benefits under any workers' compensation or occupational disease law, employer's liability or similar laws regardless of whether such coverage is in force;

(o) resulting from the commission of, or attempted commission of, a felony, or participation in a riot;

(p) related to an Eligible Participant's detention or incarceration in a jail, penitentiary, correctional facility or correctional hospital;

(q) related to an Eligible Participant's active duty or training in the Armed Forces, National Guard or Reserves of any state or country;

(r) for Expenses for which You received a specific stop loss insurance reimbursement from Us for a prior Policy period, but for which Plan benefits were not issued until this Policy period; or

(s) related to surcharges assessed by any governmental authority.

## GENERAL PROVISIONS

**AMENDMENTS TO THE PLAN** - No Plan change will affect this Policy or Our rights or obligations without Our written consent. Written notice of Plan changes must be sent to Our Home Office, at least 31 days prior to the effective date of the change. We will provide reimbursement under this Policy as if the Plan has not been amended if such advance written notice is not received and the change is not accepted in writing by one of Our officers. We will provide reimbursement under this Policy based upon the amended Plan only after such notice is received by, and the change is accepted in writing by one of Our officers.

**AMENDMENTS TO THIS POLICY** - Only one of Our officers may change this Policy. No change will be valid unless made in writing and accepted in writing by Us. No agent has authority to change this Policy or waive any of its provisions.

**ASSIGNMENT** - You may not assign this Policy or Your rights or obligations under this Policy.

**CLERICAL ERROR** - A clerical error will not invalidate insurance otherwise in effect; nor will it continue insurance validly terminated. If an error is discovered, an equitable adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the unearned premium for the Policy period during which We receive proof such an adjustment is necessary.

**CONFORMITY WITH LAW** - If, on the effective date of this Policy, any provision of this Policy conflicts with any applicable law, then the provision will be deemed to conform to the minimum requirements of the law.

**INSURANCE CONTRACT** - The entire contract between the parties shall consist of:

(a) this Policy;

(b) Your Select Risk Questionnaire;

(c) Your application for this Policy; and

(d) Riders added to this Policy that are approved by Us.

**EXAMINATION OF RECORDS** - Your and Your third party administrator's (TPA's) books, records and procedures pertaining to the Plan or this Policy (and those of all Your agents, employees and representatives) will be open to inspection by Our employees and/or representatives during Your or Your TPA's regular business hours.

**HEADINGS** - The headings of the various provisions of this Policy are inserted merely for convenience and do not, expressly or by implication, limit, define or extend the terms of the provisions so designated.

**LEGAL ACTIONS** - No legal action to recover any reimbursement under this Policy may be brought earlier than 60 days after the date written claim for reimbursement has been given to Us. No legal action may be brought more than 3 years, or the date of any applicable state law, after the date any Expense has been incurred for which reimbursements are claimed.

**LIABILITY** - We will have neither the right nor obligation under this Policy to directly pay any person or provider of professional or medical services. Our sole liability is to You, subject to the terms and conditions of this Policy. Nothing in this Policy shall be construed to permit anyone, other than You, to have a direct right of action against Us. We will not be considered a party to Your Plan or to any supplement or amendment to that Plan.

CONFIDENTIAL

**MISSTATED DATA** - We have relied upon the information, including, without limitation, the Select Risk Questionnaire and Your application, provided by You or Your agents, employees or representatives, in the issuance of this Policy. If, before or after, making any reimbursement, We determine that You or Your agent, employee or representative provided inaccurate information or misstated, omitted, concealed or misrepresented any material fact or circumstance concerning this Policy or the Plan, including any Loss or other items that You were required to disclose to Us on Your application or the Select Risk Questionnaire, or there was fraud by You or Your agent, employee or representative relating to this Policy, We may:

(a) deny stop loss reimbursements for Losses related to (or the adjustment of Specific Deductibles for) certain individuals, notwithstanding any other provision of the Policy;

(b) revise the terms or conditions of the Policy, including, without limitation, the premium rates;

(c) rescind the stop loss insurance; or

(d) void the Policy.

**NOTICE** - For the purpose of any notice required from Us under the terms of this Policy:

(a) notice to Your TPA shall be considered notice to You; and

(b) notice to You shall be considered notice to Your TPA.

**PARTIES TO THIS POLICY** - The parties to this Policy are You and Us. This Policy does not create:

(a) any right or legal relationship between Us and the Plan or between Us and any TPA, or between Us and any Eligible Participant;

(b) any responsibility or obligation that We directly reimburse the Plan; or

(c) any responsibility or obligation that We directly reimburse any Eligible Participant, or any health care provider for benefits provided under the Plan.

This Policy will not be deemed to make Us a party to any agreement between You and Your TPA.

**REIMBURSEMENT OF PLAN LOSSES** - We shall have the sole authority under this Policy to approve or deny reimbursement for any Loss. All reimbursements provided under this Policy will be Paid to You.

**NEW POLICY** - At the end of the Policy period, but only by mutual written agreement between You and Us, a new stop loss policy may be issued for another Policy period. The new policy may be subject to new premium rates, new special underwriting terms, new benefit periods and other new terms and conditions.

**SEVERABILITY CLAUSE** - If any clause in this Policy is deemed void, voidable, invalid, or otherwise unenforceable, whether or not such a provision is contrary to public interest, voiding that clause will not render any of the remaining provisions of this Policy invalid.

**SET-OFF** - We are authorized to set-off and apply any and all amounts due to You from Us under this Policy to any and all obligations or indebtedness You may have to Us. This right of set-off does not require Us to make any prior demand upon You and this right exists irrespective of whether Your obligations are contingent or unmatured. Our rights under this provision are in addition to any other rights and remedies which We may have under the Policy or otherwise.

## DUTIES OF THE POLICYHOLDER

In addition to all other duties and obligations described in this Policy, the parties agree that You shall have the duties and obligations described herein. We agree that You may retain the TPA identified on Your Schedule of Insurance to act as Your agent in performing any or all of the duties and obligations described in the Policy. Any other Third Party Administrator is subject to Our written approval. Any Third Party Administrator shall be retained and compensated by You and shall not be considered Our agent or representative. You will require Your Third Party Administrator to be subject to and agree to the duties and obligations described in this Policy.

**ADJUDICATION, DEFENSE,** - You agree to:

   (a) promptly investigate, audit, calculate and Pay all Losses; and

   (b) defend any claim made, suit brought or proceeding instituted against You or the Plan or relating to payment or non-payment of Plan benefits.

**PROOF OF PLAN LOSS** - You agree to maintain (and make available at all times) such information as We may reasonably require to reimburse Eligible Losses.

**PAYING AND FUNDING PLAN LOSSES** - You agree to Pay all Losses within 15 days of receiving adequate proof. If You fail to Pay any Losses within the 15 day time limit, We may:

   (a) immediately terminate coverage under this Policy; and

   (b) consider any Policy deductible unsatisfied.

CONFIDENTIAL

**NOTICE OF PENDING PLAN LOSSES AND CERTAIN DIAGNOSES** - You agree to provide Us with written notice of Eligible Participants:

(a) whose Losses are reasonably expected to exceed 50% of the Specific Deductible shown in the Schedule of Insurance; or

(b) who are diagnosed with any serious injury or illness, including but not limited to those diagnoses appearing on the Select Risk Questionnaire.

This notice must be on a form approved by Us. It must be provided as soon as either (a) or (b) is satisfied.

**REPAYMENT AND REFUND** - You agree to repay Us for any voided Payments, refunds or other recoveries received by You or the Plan if You previously received any stop loss insurance reimbursements from Us for the Losses. You also agree to provide such repayments to Us within 45 days after You or the Plan:

(a) receives a refund or recovery; or

(b) voids any Payment.

The amount You must repay Us shall not exceed the amount of Our stop loss reimbursements. You also agree to refund to Us or repay Us other amounts due to Us as described in any Riders or any other provisions of the Policy. If You fail to repay or refund Us within 45 days, or within the time period specified in any Rider or other provision of the Policy:

(a) We will assess a late payment equal to 2% of the remaining amounts due, which will be added to the amount due each month until such amount is finally repaid; and

(b) You will be liable for all Expenses We incur, including reasonable attorneys' fees, as a result of Our collection efforts.

We have preference over all other claimants for the repayment or refund of any amount due.

**REPORTING PLAN LOSSES AND COVERED UNITS** - You agree to prepare and submit to Us by the 31st day of each month, a report of:

(a) the total Losses Paid during each month of the Policy period;

(b) the total number of covered units under the Plan during each month of the Policy period; or

(c) all Losses that You or the Plan voided or for which You or the Plan received a refund, recovery or other reimbursement.

Upon Our request, You shall also provide a report showing covered units by city, state, and ZIP code of primary residence and any other pertinent data regarding Eligible Participants.

**RECORDS** - You agree to maintain records reasonably required by Us:

(a) during the term of this Policy; and

(b) for seven (7) years after termination of this Policy.

**NOTIFICATION** - You agree to immediately notify Us of Plan termination or TPA changes.

**PLAN DOCUMENT** - You agree to provide Us with a copy of Your Plan document describing Your Plan's benefits.

**PRIVACY OFFICER** - You agree to designate a HIPAA privacy officer for the Plan.

**USE OF GENERAL ASSETS** - You agree to use only Your assets to fund premiums for this Policy. Neither Plan assets nor employee contributions shall be used to fund these premiums.

### PERSONAL HEALTH INFORMATION

You agree to promptly release and transfer to Us, and also agree to require the Plan and all Your or the Plan's service providers to promptly release and transfer to Us any and all personal health information (including, but not limited to, claim and individual demographic information, medical management reports, etc.) that We need to properly underwrite and administer this Policy. You agree to obtain all necessary and appropriate authorizations or consents required for Us to receive personal health information from You and Your or the Plan's service providers.

You authorize Us to disclose personal health information to individuals or organizations as required by law or as directed by You or Your TPA and allowed or not prohibited by law. You agree and shall require Your TPA to agree not to request that We use or disclose personal health information in any manner not permissible under applicable law.

You agree to indemnify and hold Us harmless from any liability, loss, costs, expenses (including reasonable attorneys' fees) or damages, including punitive and extra-contractual damages, resulting from:

(a) any disclosure of personal health information by You, Your TPA, or the Plan; or

(b) Our disclosure of personal health information to You, or to any individual or organization as permitted or required by law, or as permitted or required by this Policy and allowed or not prohibited by law.

We agree not to use or to further disclose personal health information other than as permitted or required by law or as permitted or required by this Policy and allowed or not prohibited by law. In addition to other disclosures permitted or required by this Policy, We may disclose health information to:

  (a) Our directors, officers, agents and employees as necessary or appropriate to perform Our obligations related to the administration of the Policy;

  (b) persons or organizations that have contracted with Us including, without limitation, reinsurers, subrogation vendors, and others who support Our administration of this Policy; or

  (c) to You, Your privacy officer, or Your TPA.

We agree to use appropriate safeguards to prevent the use or disclosure of personal health information other than as provided by the Policy and as required by law. Upon termination of the Policy, We agree to continue extending this same level of protection to all personal health information. We shall not make any disclosure if such disclosure is prohibited by law.

## PREMIUMS AND FACTORS

**PAYMENT OF PREMIUMS** - The first premium is due the first day of the Policy period. Subsequent premium payments are due the first day of each month ("Premium Due Date") during the Policy period.

Payment should be made to Us at Our Home Office, unless one of Our officers authorizes payment to be made somewhere else.

If this Policy terminates for any reason, You are liable for all premiums to the date of termination.

**PREMIUM AMOUNT** - The premium for the Policy will be calculated on the basis of premium rates shown in the Schedule of Insurance. The amount of premium due each month will be equal to the sum of the products obtained by multiplying each premium rate shown in the Schedule of Insurance by the corresponding number of covered units under the Plan for that premium rate category on the first day of each month.

**GRACE PERIOD** - Except for the first premium payment, a grace period of 31 days from the premium due date will be allowed for the payment of premiums. Coverage will automatically terminate on the premium due date if premium has not been received by Us when the grace period ends.

**PREMIUM RATES, DEDUCTIBLES AND FACTOR CHANGES** - We may change premium rates, deductible factors, or any Policy deductible on:

  (a) the date the Plan or Policy is changed, including, but not limited to, any change that is required by law;

CONFIDENTIAL                                                                                                            ABSMC01608

(b) the date You add or eliminate a subsidiary, affiliated company or division; or

(c) the date that the number of covered units under the Plan increases or decreases more than 10% compared to the number of covered units under the Plan on the effective date of this Policy.

If We give at least 31 days advance written notice, We have the right to adjust premium rates when premium taxes or other changes assessed by any governmental authority and payable by Us increases (but only to the extent of the increase). If We do not adjust the premium rate, We may bill you directly for charges assessed by any governmental authority and payable by Us. Amounts billed directly for charges assessed by any governmental authority and payable by Us are due within 60 days of written notice given by Us.

Any submission of incorrect premium or number of covered units under the Plan during a Policy period must be reported to Us no later than 60 days after the Policy period ends.

## TERMINATION OF INSURANCE

This Policy will continue in effect until the end of the Policy period, unless coverage is terminated as set forth below.

The Policy will terminate on the earliest of:

(a) the date the Plan terminates;

(b) the date You dissolve Your company, suspend active business operations, or are placed in bankruptcy or receivership;

(c) the later of the date We receive written notice of termination from You, or the termination date requested by You;

(d) the date a change in any Policy deductible, deductible factor, or premium rate is effective, but has not been accepted in writing by You; or

(e) the premium due date if premium is not paid by the end of the grace period.

The Policy may also be terminated, at Our option, on the earliest of:

(a) the date You fail to fund the benefits provided by the Plan;

(b) the date We determine that You or Your TPA have failed to Pay any Losses within the 60 day timely payment limit;

(c) the Policy effective date if We obtain evidence of a material omission, concealment, misstatement of data, or fraud by You, or Your TPA;

(d) the date You amend the Plan without Our written consent;

(e) the date the number of covered units under the Plan is less than 50;

(f) the date You or Your TPA fails to perform any of the duties described in this Policy; or

(g) the date any administrative services agreement between You and Your TPA, or any successor Third Party Administrator approved in writing by Us and/or is terminated, is amended, or becomes effective without Our written acceptance.

We will not refund any premiums Paid by You in the event coverage terminates during a Policy period. However, if the Policy is rescinded by Us, all premiums received for that Policy period will be refunded to You.

## REINSTATEMENT AFTER THE POLICY ENDS

If this Policy terminates for any reason, it may be reinstated at Our option. It can be reinstated only in writing by one of Our officers and subject to any written conditions of reinstatement imposed by Us.

## SPECIFIC STOP LOSS INSURANCE

### Benefits
If Eligible Losses for an Eligible Participant exceed the Specific Deductible, upon receipt of Your written request, We will reimburse You an amount equal to the total Eligible Losses for the Eligible Participant minus the Specific Deductible multiplied by the Specific Reimbursement Percentage, and minus any previous specific stop Loss insurance reimbursements and other amounts paid to You under any other Policy provisions in force during this Policy period for that Eligible Participant.

### Conditions
1. Specific stop loss insurance reimbursements may not exceed the Maximum Specific Reimbursement.

2. We must receive proof of Payment for Eligible Losses no later than 60 days after the Policy period ends.

3. If the Policy terminates during the Policy period, the Specific Deductible will be determined as if this Policy had remained in effect for the full Policy period. Plan benefits Paid after the Policy termination date are not Eligible Losses.