MARCIA L. AUGSBURGER (SBN 145686)
LESLIE C. MURPHY (SBN 227454)
McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax:    916.444.8989

Attorneys for Plaintiff
Alta Bates Summit Medical Center

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER,<br><br>　　　　　　　Plaintiff,<br>v.<br>UNITED OF OMAHA LIFE INSURANCE COMPANY; MUTUAL OF OMAHA LIFE INSURANCE COMPANY, et al.,<br>　　　　　　　Defendants. | Case No. C 07-4224 JSW<br><br>**DECLARATION OF MARCIA L. AUGSBURGER IN SUPPORT OF PLAINTIFF ALTA BATES SUMMIT MEDICAL CENTER'S MOTION FOR ADMINISTRATIVE RELIEF**<br><br>DATE:<br>TIME:<br>COURTROOM: |

I, Marcia L. Augsburger, declare:

1. I am an attorney licensed to practice law before all courts of the States of California. I am a shareholder with McDonough Holland & Allen PC, representing Alta Bates Summit Medical Center. This declaration is made and based upon facts personally known to me, and if called upon as a witness to do so, I could and would competently testify as to their truth.

2. I am the attorney primarily responsible for the handling of this lawsuit. My associate, Leslie Murphy, is also responsible. No other attorney is sufficiently familiar with this case to handle law and motion relating to it.

3. When this lawsuit was filed (in state court), Plaintiff thought it was a simple breach of contract case. However, when Defendants finally produced documents in mid to late April, 2008 the evidence began to paint a very different picture. *See, e.g.,* Ex. A hereto (e-mail produced by

Defendant during discovery, internal to United/Mutual stating that if United/Mutual had known about the diagnoses before policy renewal, they would not have changed the premium or declined coverage, but would simply have increased the deductible for patient DJ).

4. By the time we finally received sufficient documents to conduct meaningful depositions, it was mid to late June. Defendants had failed to produce responsive documents on a timely basis and had requested numerous extensions of time to Defendants to respond to the discovery requests herein. Declaration of Leslie C. Murphy filed herewith (Defendants were granted numerous extensions of time to respond to discovery). Despite the resulting prejudice, <u>within days after receiving</u> requested documents, my associate, Leslie Murphy, and I traveled to Omaha, Nebraska and to depose United/Mutual's employees.

5. Ms. Murphy and I took depositions of Defendant witnesses in Omaha, Nebraska on June 25-27, 2008, it took us several weeks to schedule these depositions in order to take them consecutively. Testimony was elicited in these depositions that gave rise to the need to amend the complaint to add additional causes of action. Specifically, on June 25, 26, and 27, we deposed Mutual employees Claudia Wells, Patricia Swank, Tom Gage, and Carol Tarkowsky, and started the deposition of Betty Coyle-Roberts. We were unable to finish Ms. Coyle-Roberts deposition before she had to leave for an appointment because we had to evacuate the premises due to a hurricane. We continued deposing Ms. Coyle-Roberts, underwriter for Mutual, by video on July 24, 2008.

6. The depositions of Deanne Prefling and Matt Schafer of Benefit Risk Management Services ("BRMS") were conducted on July 29 and 30, 2008. BRMS was the TPA for ABSMC and also the TPA for United/Mutual. We are still waiting for the final transcripts from these third-party witnesses.

7. Upon conclusion of these depositions, to our surprise, we learned various facts that we now believe support a claim against United and Mutual for bad faith, fraud, and unfair business practices. The following are some examples of what we learned, for the first time:

    a. United/Mutual not only knew about DJ's Diagnosis of renal disease on January 28, 2006 and accepted premiums thereafter for her without ever indicating that they


:Donough Holland & Allen PC
Attorneys at Law

2

Marcia L. Augsburger's Declaration in Support of Plaintiff's Motion for Administrative Relief 1120211v1 33802/0004

would deny coverage for failure to disclose, but that United/Mutual reported her case for United/Mutual's reinsurance purposes, see **Exhibit B** hereto, and was actively involved in the management of her case by February 10, 2006. See **Exhibit C** hereto. Attached hereto as **Exhibit D** are pages 98 through 101 from the deposition testimony of Patricia Swank showing that United/Mutual was analyzing and managing DJ's case.

    b. United/Mutual arbitrarily, and for pecuniary gain, chose to deny DJ's claim when it paid claims for another ABSMC employee patient, "CC," whose diagnosis was known to BRMS before January 1, 2006 but not disclosed.

    c. In addition, Plaintiff learned that the individual who denied the claim as not with United's/Mutual's stop loss claims department – which ordinarily makes the determination to pay or deny stop loss claims - but was part of Mutual's auditing department, which was an active participant in internal efforts to "fire" ABSMC's TPA, BRMS. See Exhibit D to the Declaration of Mary Pelkey filed herewith.

    d. The arbitrary nature of Defendants' coverage decisions are still being revealed to Plaintiff as United/Mutual continues to respond to discovery in "dribs and drabs."

8. Upon our return from the depositions in Omaha, we also described what we learned to our expert, James R. Dunathan, who opined that United/Mutual had breached its duty of good faith and fair dealing, and in fact, acted in bad faith. A copy of the report of James R. Dunathan, Plaintiff's disclosed expert in this case, is attached hereto as **Exhibit E**.

9. After the depositions, we continued efforts to obtain documents from United/Mutual that were referenced by the witnesses in the depositions and had been requested in discovery but were not produced. We also served an additional document request to further investigate the validity of our suspicions about United's/Mutual's bad faith, fraud, and unfair business practices. This document request, Set Two, was served on June 27, 2008, Plaintiff served a Request for Documents (set two) on Defendants. Defendants served written responses on July 25, 2008, and produced some documents thereafter.

Marcia L. Augsburger's Declaration in Support of Plaintiff's Motion for Administrative Relief 1120211v1 33802/0004

10. All the while, through today, I have attempted to resolve discovery disputes with United's/Mutual's counsel regarding document requests Set One and Set Two. My attempts to resolve these disputes consumed much of my time in July (one week of which I was out of the office at a family reunion on the East Coast). A description of these disputes should suffice to show that throughout July, my associate and I were attempting to gather information confirming our suspicions about United's/Mutual's bad faith conduct, and the time that these disputes consumed:

    a. On July 7, we submitted a joint letter regarding some of the disputes arising from Set One, which was partially resolved by Order dated July 25. In that Order, Magistrate Judge LaPorte ordered Defendants to perform a diligent search for documents and to submit a declaration to that effect to Plaintiff if documents were not found. Defendants submitted a declaration to me that did not even state that a diligent search had been performed. Moreover, the declaration did not address all of the requests at issue.

    b. Despite Magistrate Judge LaPorte's ruling that the requested documents were relevant and discoverable, Defendants' counsel continued to assert that the documents requested were not "relevant." In request number 17, as limited during meet and confer discussions between the parties, Plaintiff sought documents showing approvals and denials of claims where the trigger diagnosis was not disclosed before policy commencement for the years 2005 and 2006, in California, with the identities of the patients at issue redacted - documents that go to the heart of this dispute with regard to United's/Mutual's interpretation of the Policy and breach of the covenant of good faith and fair dealing contained therein. Defendant's denial of the claim at issue was based on its contention that patients with certain diagnoses had to be disclosed before commencement of the policy period, January 1, 2006. See Exhibit D to the Declaration of Mary Pelkey filed herewith. Defendant based its denial on the "Misstated Data" exclusion under the policy at issue, which purports to allow Defendant to deny claims where the insured "misstated, omitted, concealed or

Marcia L. Augsburger's Declaration in Support of Plaintiff's Motion for Administrative Relief 1120211v1 33802/0004

misrepresented [a] material fact or circumstance concerning th[e] Policy . . .." *Id.* Plaintiff contends that the omission to disclose the diagnosis 29 days earlier is not material in this case. The requests were reasonably calculated to elicit information revealing how Defendant treated other cases where serious illnesses were not disclosed before the policy commencement date, and to show whether such non-disclosures were in fact a "material fact or circumstance concerning the Policy" that may have justified denial. Furthermore, the declaration stated that Ms. Tarkowski reviewed records of claims it denied, but she apparently did not review documents relating to claims that were approved where the trigger diagnosis was not disclosed.

    c.    The declaration was also misleading. Defendant stated that there is no record on an "exception log" indicating that Defendant "has made an exception and paid a claim . . . that [Defendant] could have denied due to a failure to disclose." The declaration said nothing about reviewing any other documents that would show that Defendant paid claims where the trigger diagnosis was not disclosed. Thus, essentially Defendant's declaration states only that Defendant reviewed records of claims it denied and a "log." More important, according to the declaration, the "exception log" only includes claims that Defendant considered to be those that it "could have denied," which of course begs the question at issue: Did Defendant approve claims for employees whose serious illness or injury diagnosis preceded the disclosure because Defendant knew it was required to do so under the policy and SRQ. The question can only be answered by searching and producing all records of paid and denied claims, which Defendants continue to refuse to do.

    d.    During my discussion with Defendants' counsel on this point about the "exception log," I pointed out that according to deposition testimony, the exception log should at least reference a patient, to whom we refer as "CC," because she was diagnosed with cancer before commencement of the policy period but was not disclosed, but instead of denying ABSMC's claims for reimbursement of her medical expenses, United/Mutual made "an exception" and paid them. Counsel stated that in that case,

CC would not appear on the exception log because United/Mutual did not consider the nondisclosure to be material. This underscores that United/Mutual must have documents revealing United/Mutual's interpretation of materiality with respect to disclosures. Yet United/Mutual continues to refuse to produce responsive documents.

e. Defendant's counsel also asserted, without any support, that locating responsive documents would require a review of "every claim file." However, Defendant refused to even estimate how many claim files Defendant would need to review for 2005 and 2006. Furthermore, even if the records are voluminous, Defendant should be able to run reports for the 2 policy years in issue on all claims that were paid and denied; check them against the final disclosures, of which, according to deposition testimony, there is only one for each insured group; and then, for those patients who do not appear on the final disclosures, check to see when they were first diagnosed. For the cases where the diagnosis preceded the policy commencement date, Defendants should be readily able produce the claims files. Instead, for months they have been playing semantic games and" hiding the ball."

f. As limited during the meet and confer process, request number 51 sought copies of insurance policies issued to self-insured health plans for medical services rendered to the insureds' employees in California for the policy years 2005 and 2006. As an alternative to the production of these documents, Plaintiff agreed to accept a declaration from Defendant that that all language having to do with trigger diagnoses disclosures contained in the policies was identical to the policy language at issue here. The requested information is relevant to whether disclosures of serious illnesses was a material consideration for Defendant in underwriting or issuing stoploss policies. Evidence that Defendant did not require trigger diagnosis information from all insureds would have a tendency to show that the information was not important to the underwriting and other renewal processes. To date, Defendant still has not produced either the policies or a declaration, and has not described any burden associated with producing the policies.

g. In request number 52, Plaintiff sought documents reflecting or constituting denials of stoploss claims by Defendant for California insureds based on failure to timely disclose trigger diagnoses, for the policy years 2005 and 2006. As with request number 17, and as acknowledged in Magistrate Judge LaPorte's July 25 Discovery Order, the requested documents are reasonably calculated to reveal how Defendant treated other cases where serious illnesses were not disclosed before the policy commencement date, and to show whether such non-disclosures were in fact a "material fact or circumstance concerning the Policy" that may have justified denial. For the reasons described above with respect to request number 17, Defendants' declaration did not satisfy the July 25 Discovery Order. No facts are stated to show that a diligent search was made for the documents. Furthermore, the declaration states that "there is no indication" in the "records of stop loss claims it has denied" that it denied any claim for non-disclosure other than the case at issue here. There are at least two problems with this statement. First, it appears that the declarant is drawing a conclusion about what the documents "indicate." This is not an affirmative statement based on a diligent search of all records that Defendant has never denied claims due to non-disclosure other than the one at issue. Second, it appears that in cases where Defendant could have denied for non-disclosure under its current policy interpretation but denied for some other reason, Defendant decided the information did not need to be produced. All of this information is relevant to the interpretation of the policy.

h. Throughout July, Defendants also continued to refuse to produce other documents, including those requested in request numbers 62, 65, and 67 of Plaintiff's Set Two requests. Plaintiff spent many hours attempting to resolve the issues and drafting a motion to compel. Finally, on July 7, 2008, Defendants served supplemental responses to the requests, stating as to one request that all responsive documents had been produced, and as to two other requests, stating that the documents will be

Marcia L. Augsburger's Declaration in Support of Plaintiff's Motion for Administrative Relief 1120211v1 33802/0004

produced. As of the writing of this declaration, the documents have not been produced.

11. On July 8, 2008, Leslie Murphy sent an e-mail to Travis Wall asking if his client would stipulate to the amendment of the complaint. A true and copy of the July 8, 2008, e-mail is attached hereto as **Exhibit F**.

12. On July 16, 2008, Travis Wall responded to the request to stipulate via e-mail stating that his client would not stipulate to amending the complaint. A true and correct copy of the July 16, 2008 email is attached hereto as **Exhibit G.**

13. On July 30, 2008, during a deposition, I orally informed Defendants' counsel, Travis Wall, of my intent to file a Motion to Amend the Complaint as soon as possible after the deposition transcripts were received. Mr. Wall and I discussed possible hearing dates. I understood him to suggest we could set the hearing for September 19, 2008, and was proceeding accordingly. However, on August 7, 2008, Mr. Wall denied saying anything to this effect, asserting that September 19 was reserved solely for Defendants' motion for summary judgment, and I would need to reserve a later date for the motion to amend.

14. Shortly thereafter I review the court's calendar and found the earliest hearing for the Motion to Amend the Complaint is October 10, 2008.

15. On August 7, 2008, I sent Travis Wall an e-mail asking whether his client would stipulate to an order changing the scheduling order so that the motion to amend could be heard before the motion for summary judgment. Mr. Wall responded that defendants refused to stipulate. A true and correct copy of the August 7, 2008, e-mail exchange is attached hereto as **Exhibit H.**

16. At this time, the parties' have two separate discovery disputes outstanding with Magistrate Judge LaPorte, which Plaintiffs are seeking additional documentation to support its causes of action from Defendants. Plaintiff was awaiting the outcome of discovery disputes that were pending before Magistrate Judge LaPorte until July 25, the resolution of which should have yielded additional evidence in support of Plaintiff's claims, had Defendants complied with her July 25 Order. Defendant did not comply, and must file a brief with Magistrate Judge LaPorte by August 13, 2008. Order Re: Plaintiff's August 6, 2008 Letter herein.

17. As far as Plaintiff is concerned, discovery need not be reopened, so long as discovery on Defendants' net worth can be done after the initial liability and damages phase. Plaintiff can meet its burden of proof on the new causes of action. Plaintiff is amenable to moving the trial date if the Court deems it appropriate to cure any prejudice.

18. Ms. Murphy, other associates, and I have spent well over 50 hours on legal research since the Omaha depositions, in order to ensure that the causes of action to be alleged in the amended complaint are warranted by existing law, in compliance with Rule 11.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was executed on August 8, 2008, at Sacramento, California.

_____
Marcia L. Augsburger
Attorneys for Alta Bates Summit Medical Center

Marcia L. Augsburger's Declaration in Support of Plaintiff's Motion for Administrative Relief 1120211v1 33802/0004