# Exhibit A

CONFIDENTIAL

 John Lenagh /MutualOMA
08/02/2006 09:55 AM

To    Mark Brewer/MutualOMA@Mutual of Omaha

cc    Betty Coyle/MutualOMA@Mutual of Omaha, Julie-GBS
Moore/MutualOMA@Mutual of Omaha, Carol
Tarkowski/MutualOMA@Mutual of Omaha, Tom

bcc

Subject    Re: Disclosure/Alta Bates 📄

Mark, we agree that a denial is appropriate. We do plan on having some meetings soon and discuss the
whole BRMS situation. This new claim will be added to other recent issues.. thanks for the fyi........
Mark Brewer/MutualOMA

 Mark Brewer /MutualOMA
08/01/2006 01:05 PM

To    Betty Coyle/MutualOMA@Mutual of Omaha

cc    John Lenagh/MutualOMA@Mutual of Omaha, Julie-GBS
Moore/MutualOMA@Mutual of Omaha

Subject    Disclosure/Alta Bates

Hi Betty. I'm processing a claim for Alta Bates where there wasn't a disclosure on the 1-1-06 renewal.
Insured in D█████ J█████. The submission indicates that she was treated for acute renal failure and
hypertension 5-24-05. She was precertified on 8-23-05 for a duplex scan of extremity veins and AV
anastomosis for diagnosis of chronic renal failure. This was to place a hemodialysis shunt. On 11-22-05
she was precertified for a duplex scan of the hemodialysis access again for chronic renal failure.

We didn't receive notice on this individual until 6-9-06.

I had Tricia Swank review the file and she said she would have lasered this individual at $350,000 if they
had been disclosed. The spec deductible is $250,000 and the TPA is requesting $331,000.

Please review and let me know how to proceed in this case. Let me know if you need additional
information.

Thanks.

Mark Brewer
Stop Loss Operation Auditor
Mutual of Omaha
Mutual of Omaha Plaza
Omaha NE 68175
t(402) 351-6540
f(402) 351-1914
Mark.Brewer@Mutualofomaha.com

# Exhibit B

CONFIDENTIAL



|  | | |
|---|---|---|
| "Jeanette Davidson" <JeanetteD@brmsonline.com > | To | "Patricia Swank (E-mail)" <Patricia.Swank@mutualofomaha.com> |
| 02/01/2006 05:37 PM | cc | |
|  | bcc | |
|  | Subject | Delay in reports |

Hello Patricia,
I just wanted to send you a quick email letting you know that we are working on the reinsurance reports, however, sadly Mark's sister has taken a turn for the worse, we are a little bit behind. Please feel free to contact me...in the interim, I'll be plugging away on those reports. Thanks!

## Jeanette Hinckley Davidson

Medical Management Consultant
Benefit & Risk Management Services
10860 Gold Center Drive #300      ph: 916-858-2950 ext. 220 fax 916-858-3955
Rancho Cordova, CA 95670      email: jeanetted@brmsonline.com
United States      web: www.brmsonline.com

*Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain leally privileged and/or confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from you computer. Thank you.*





20

UNITED-4615

CONFIDENTIAL



| | 182356 | 1/6/2006 |
| | 182396 | 1/19/2006 |
| | 182479 | 1/13/2006 |
| | 182403 | 1/10/2006 |
| | 182453 | 1/17/2006 |
| | 182497 | 1/18/2006 |
| | 182519 | 1/11/2006 |
| | 182368 | 1/18/2006 |
| | 182461 | 1/19/2006 |
| | 182598 | 1/19/2006 |
| | 182670 | 1/21/2006 |
| | 182618 | 1/19/2006 |
| | 182619 | 1/20/2006 |
| | 182585 | 1/1/2006 |
| | 182664 | 1/31/2006 |
| | 182757 | 1/25/2006 |

1/28/2006          02:04:03PM

21

UNITED-4616

# Exhibit C

CONFIDENTIAL



"Mark Lucas"
&lt;MarkL@brmsonline.com&gt;          To   "Patricia Swank (E-mail)"
02/10/2006 10:38 AM                     &lt;Patricia.Swank@mutualofomaha.com&gt;

                                   cc

                                   bcc

                              Subject  FW: Pls QC...3 down (to include ▓▓▓▓)....3 more to
                                       go...▓▓▓▓, ▓▓▓▓▓ and ▓▓▓ left...I'm done for the day

------Original Message------
From:  Jeanette Davidson
Sent:  Wednesday, February 08, 2006 2:51 PM
To:    Mark Lucas
Subject:  Pls QC...3 down (to include (▓▓▓▓))....3 more to go...▓▓▓▓, ▓▓▓▓▓ and ▓▓▓left...I'm done for the day

D▓▓ J▓▓▓ - ESRD - 55 y/o African-American female with a history of end-stage renal disease with AV fistula placement on Sept. 1 who initially presented to the ER with complaints of dyspnea on 25 Jan 2006. Patient was admitted to the ICU and was found to be severely anemic with an admission hemoglobin and hematocrit of 4.5 and 13.5. Patient received significant blood transfusions with improvement in her respiratory status. Mild suggestion of a respiratory tract infection treated with oral Levaquin. Patient's x-ray and clinical findings were suggestive of pulmonary edema secondary to congestive heart failure likely associated with significant anemia as well as renal failure. Patient had a temporary dialysis access placed with hemodialysis. Patient was transferred to ▓▓▓▓▓▓▓ Hospital, placed on a split-stream catheter and initiated dialysis. Hemoglobin and hematocrit 10/30.2. Patient was dc'd 31 Jan 2006. Patient had AV port in place on 1 Feb 2006 to cont. with dialysis.

**No indications of transplant workup.**
*****************************************************************************************
*********************************************

▓▓▓▓▓▓ still in-house; making progress.

▓▓▓▓▓▓

NICU progress note from 7 Feb 2006:

Interim events: Patient did well overnight, respiratory status seemed to improve after addition of diuretic,- Weight: 1820 grams (4 lbs, 0 oz) no change

EXAM: AF soft, sutures normal, alert, active child with good tone.
RESPIRATORY: clear to auscultation bilaterally
CARDIAC: regular rate and rhythm, no murmur , pulses normal
ABDOMEN: distended but soft, non-tender, no organomegaly

DEPOSITION
EXHIBIT
79
Swank
PENGAD 800-631-6989

*Charges interim but ≠ UB92s , physician review & status.  51*

UNITED-3982

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2006
Underwriter: B Coyle/jm

| Date | Employer Group Effective Date Specific Ded. | TPA | Claimant | Diagnosis    Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|---|---|---|---|---|---|
| 08/11/2005 | Alta Bates Summit Medical Center    takeover: 15/12 effective date: 1/1/06    stop loss level: $250,000 | BRMS    addl 9/7/05  addl 9/15/05 addl 11/5/05 | | lumbar disc degen surg 3/05, PT 3/05-6/05; esophageal ulcer, bx - no malignanc, currently receiving epidural inj, $270,482 | no expected stop loss |
| 08/23/2005 | Renewal | addl 9/7/05  addl 9/15/05 addl 11/21/05 | | T1 N2B squamous cell carcinoma L tonsil, s/p chemo; DM, 11/05 scan to r/o recurrence of ca  $161,150 | no expected stop loss |
| 09/07/2005 | | | | lipidoses | formed 9/1/04 |
| 09/16/2005 | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | inpt 5/12 - 6/6/05  alcoholic cirrhosis of liver, hepatorenal syndrome $305,319 | expired 6/6/05 |
| 09/21/2005 | | addl 9/7/05  addl 11/21/05 | | preterm infant inpt 3/14-5/3/05, well baby check 5/05 $185,936 ptd | no expected stop loss |
| 10/03/2005 | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | nasopharyngeal ca w/bone mets, chemo/rads $99,129 | no expected stop loss |
| 10/04/2005 | | addl 9/15/05 addl 10/17/05 addl 11/21/05 | | craniosynostosis, sx mgmt w/new onset papilledema,potential extensive cranial remodeling in future $101,371 | no expected stop loss |
| 10/05/2005 | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | breast ca, mets to lung 3/05, uterine leiomyoma $86,729 | no expected stop loss |
| 10/17/2005 | | addl 9/21/05 | | HIV $7720 | no expected stop loss |
| 10/20/2005 | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | lung ca 3/28-4/11/05, xrt, chemo, 5/19-20/05 chemo, 6/2-10/05 n/v, 6/23-24/05 chemo, 8/2226/05 pneumonia, 11/10/05 scans $166,331 | no expected stop loss |
| 10/28/2005 | | addl 9/7/05  addl 9/15/05  addl 9/21/05 | | multiple myeloma, malig neop bone - several inpt stays, 8/12-14/05, dcd w/hhc,ongoing $186,563 | Medicare prime as of 9/1/05 |
| 11/02/2005 | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | lung ca $165,686 | expired 7/9/05 |
| 11/21/2005 | final disclosure | addl 9/21/05  addl 11/2/05 addl 11/21/05 | | ovarian ca Stage 2 5/05, TAH 7/05, chemo started 8/05, to cont. for 6 mos to 1yr $130,378 | no expected stop loss |
| 11/22/2005 | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | renal failure, dialysis, inpt for 26 dyas 3/05 fo rbronchopulmonary fibrosis, inpt 9/05 renal failure emphysema $194,341 | project $275k w/o transplant and $350k w/transplant |

5²

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2006
Underwriter: B Coyle/jm

| Date | Employer Group Effective Date Specific Ded. | TPA | Claimant | Diagnosis      Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|---|---|---|---|---|---|
| 11/28/2005 | | addl 9/21/05  addl 11/2/05 | | breast ca 11/04, bilateral mastectomies 4/05 $73,028 | no expected stop loss |
| 11/29/2005 | | addl 9/21/05  addl 10/17/05 | | new onset multiple myeloma rt femur 6/05, rt hip hemiarthroplasty for path fx 6/05,plan rads to rt hip/femur, Velcade, admitted 10/6/05 acute TIA, still inpt as of 10/13/05, receiving rads $103,811 | project $275,000 |
| | | addl 9/21/05  addl 10/5/05  addl 11/21/05 | | ESRD/transplant list , dialysis appears to be ~$22- $40k/mo $191,589 | project $350k w/o transplant and $425k w/transplant |
| | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | preterm infant inpt 3/17-5/27/05, laser sx for ROP, bilateral inguinal hernia repair $448,426 | no expected stop loss |
| | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | preterm infant - twin mate $583,468 | expired 4/11/05 |
| | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | preterm infant - twin mate, dob 1/31/05, dod 6/3/05 $612,633 | no expected stop loss |
| | | addl 9/21/05 | | spinal tumor rsxn 7/05, hhc, PT $7992 pd | no expected stop loss |
| | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | recto sigmoid ca 6/05, chemo started 7/05, also taking Tamoxifen $69,464 | no expected stop loss |
| | | addl 9/21/05  addl 10/20/05 addl 11/21/05 | | CRF, dialysis started 8/05, to discuss poss transplant in future w/MD, eval on 9/29/05 $14,089 | project $275,000 w/o transplant and $350,000 w/transplant |
| | | addl 9/21/05  addl 10/4/05 | | chronic Hepatitis C - liver transplant list -CPMC, renal insufficiency, to be seen by nephrologist for possible listing for 2 organs, case rate $92k, if total bill under $210k, then pd at case rate of $92k, if bill is over $210k, pd at 60%, Prof. services $23.5k, if over $46k, pd @ 50% $1245 | no expected stop loss |
| | | new 9/21/05  addl 10/3/05 | | dob 8/23/05 @ 33wks, inpt 8/23-9/2/05, dcd home | no expected stop loss |
| | | new 9/21/05 | | dob 8/23/05 @ 33wks, inpt 8/23-9/2/05, dcd home | no expected stop loss |
| | | new 10/3/05 | | inpt 8/23-27/05 csxn - twins-pre-term, both babies dcd 9/2/05 $70,351 | no expected stop loss |

53

UNITED-3984

CONFIDENTIAL

**Mutual of Omaha**
**Large Claim Review 2005**
**Underwriter: B Coyle/jm**

| Date | Employer Group Effective Date   Specific Ded. | TPA | Claimant | Diagnosis   Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|------|-----------------------------------------------|-----|----------|--------------------------------------|----------------------------------------------|
| | | new 10/17/05 addl 11/21/05 | | 10/4-11/05, chr leukemia, parietal lesion consistent w/meningioma, stereotactic crani done w/partial rsxn $51,842 | no expected stop loss |
| | | new 10/17/05 | | 9/26-10/3/05 CHF, COPD, dcd w/o hhc | no expected stop loss |
| | | new 10/17/05 | | s/p vag hyster 9/13/05, 9/19-10/7/05 anterior abd wall hematoma, dcd w/hhc | no expected stop loss |
| | | new 10/17/05 | | s/p gastric bypass, 3 inpt stays since sx, pneumonia 9/27-10/3/05 | no expected stop loss |
| | | new 10/26/2005 addl 11/21/05 | | prostate ca w/mets $27,094 | expired 10/25/05 |
| | | new 11/2/05  addl 11/21/05 | | mal neo uterus, ovarian ca, inpt 9/1-29/0, chemo, xrt $137,025 | no expected stop loss |
| | | new 11/21/05 | Stephen Quinn | 5/05 MI, hrt cath $120,510 | no expected stop loss |
| | | new 11/21/05 new 11/22/05 | | ESRD, dialysis started 7/05, transplant eval done 7/25/05 @ CPMC - notified 11/15/05 $62,546 | w/o transplant project $275,000, w/transplant project $350,000 |
| | | new 11/21/05 | | 1/05 kidney stones, lithotripsy 1/05,3/05 $101,468 | no expected stop loss |
| | | new 11/21/05 | | s/p radical mastectomy, 6/05 xrt, chemo $83,178 | no expected stop loss |
| | | new 11/21/05 new 11/29/05 | | 7/21-29/05 chf, bi-vent ICD, cardiac cath, 10/31-11/4/05 CHF, 11/13-present inpt, dcd 11/16/05, recurrent biventricular rt heart failure w/pneumonitis, sleep apnea, Levaquin, CPAP at home, last EF 35% $76,357 | no expected stop loss |
| | | new 11/21/05 | | 6/05 AMI, ant, PT $124,903 | no expected stop loss |
| | | new 11/21/05 | | 8/05 repair lap incisional hernia $67,473 | no expected stop loss |
| | | new 11/21/05 | | 5/05 spondylosis, sx 6/05 PT $124,794 | no expected stop loss |
| | | new 11/21/05 | | 8/05 sx on finger, PT $63,950 | no expected stop loss |
| | | new 11/21/05 | | frontal lesion, ICU, crani $84,613 | expired 4/16/05 |
| | | new 11/21/05 new 11/22/05 | | intractable low back and bilateral leg pain, 3/05 intrathecal analgesia, cardiac pacemaker, 8/05 permanent Medtronic intrathecal pump, 10/05 bxd rt humerus upon falling from bed - ORIF, $84485 | no expected stop loss |

*54*

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2006
Underwriter: B Coyle/jm

| Date | Employer Group Effective Date  Specific Ded. | TPA | Claimant | Diagnosis        Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|---|---|---|---|---|---|
| | | new 11/21/05 | ~~Redacted~~ | lumbar disc degen, fusion 2/05 - lami $119,462 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | CHF 11/04 $87,443 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | aortic valve stenosis, 12/04 cath, 12/05 11 day inpt stay for AV repair, rehab $117,829 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | 2/05 cath $76,322 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | ac pancreatitis, several inpt admits - 1/31-2/8/05, 4/9-15/05, 11/9-current $109,671 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | 7/05 systemic inflamm dz, sepsis, sx, osteomyelitis w/6 wks IVAB, snf, PT, inpt 8/3-31/05 for persistent inf $161,021 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | back inj at work 2004, poss third party liability $83,747 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | motorcycle acc-5/05, poss third party liability $72,542 | no expected stop loss |
| | | new 11/21/05 new 11/28/05 | ~~Redacted~~ | 5/05 malignant lymphoma B cell in lt ethmoid, frontal sinus, and lt orbit, xrt completed 6/05, chemo (Rituxan) started 6/05 - to finish 11/05, MRI 10/05 wnl, to f/u w/scans after chemo $115,419 | no expected stop loss....but if she does relapse and goes for transplant - she would be $300k or over |
| | | new 11/21/05 new 11/22/05 | ~~Redacted~~ | medial meniscus tear rt knee, sx 1/05 $65427 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | 3/05 severe abd pain, 14 day inpt $65,796 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | lupus, dwarfism, inpt 9/05 $70,582 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | 4/05 cp, afib $67,633 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | 4/05 PE, 5/05 cath $67,656 | no expected stop loss |
| | | new 11/21/05 | ~~Redacted~~ | 3/05 pre-term twins, one expired 7/05 ac chole, dural sinus thrombosis 7/27-8/5/05 $88,851 | no expected stop loss |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

55

CONFIDENTIAL

Claim Submissions

Cancel    Save

| | |
|---|---|
| 01/01/2006 Alta Bates Summit Medical Center | 24712 |
| J____, D____ | 250,000 |
| Swank, Patricia | |
| 06/09/2006    Notice of Loss    Reimbursement Request | |

Trigger Diagnosis

| 585.6: END STAGE RENAL DISEASE | 585.6: END STAGE RENAL DISEASE |
|---|---|
| | 424.0: Mitral valve disorders |

Expected Excess Claim

| 0.00 | / / |
| 0.00 | / / |
| -9,740.06 | Unknown |

56

UNITED-3987

CONFIDENTIAL



**BRMS**
Benefit & Risk Management Services
HOME: 916-941-9316

(P) 916.858.2950 ext. 232
(O) 800.959.4787
(F) 916.858.2970

Scott Reid
President
sreid@brmsonline.com

License # 0B27806    916-346-6666

13890 Gold Center Drive    Suite 300    Rancho Cordova, CA 95670

UNITED-3988

CONFIDENTIAL

www.brmsonline.com

UNITED-3989

Exhibit D

1

1

```
 1              NORTHERN DISTRICT OF CALIFORNIA

 2

 3    ALTA BATES SUMMIT MEDICAL   )
      CENTER,                     )
 4                               )
           Plaintiff,            )
 5                               )
              -vs-               )Case#C07-4224 JSW
 6                               )
      UNITED OF OMAHA LIFE       )
 7    INSURANCE COMPANY, et al., )
                                 )         DEPOSITION
 8         Defendants.           )
      _____)
 9

10

11             *** CONFIDENTIAL ***

12

13        DEPOSITION OF PATRICIA SWANK

14             Deposition of PATRICIA SWANK, taken

15    on behalf of the Plaintiff, at Erickson &

16    Sederstrom, 10330 Regency Parkway Drive,

17    Suite 100, Omaha, Nebraska, beginning at

18    3:05 p.m., Wednesday, June 25, 2008, before

19    Bobbi M. Randall, RPR, CSR, a General Notary

20    Public within and for the State of Nebraska,

21    pursuant to Notice.

22

23              BOBBI M. RANDALL, RPR, CSR
             MATHESON-TAULBORG-DENNEY-SCHLEIFE
24              7602 Pacific Street, LL101
```

```
                                   Omaha, NE  68114
        25                         (402) 397-9669
```

98

```
 1      A    They did.

 2      Q    Can I have you turn -- it's in your pile

 3   there, Exhibit 49.

 4      A    (Witness obliged.)

 5      Q    Do you have Exhibit 49?

 6      A    Yes.

 7      Q    Exhibit 49 is an email from DeAnn

 8   Prefling to Claudia Wells dated January 28th.

 9   Have you seen this email before?

10      A    No.

11      Q    The email says, Claudia, I have attached

12   reports from our utilization review database.

13   These reports will identify any large claim case

14   we have received an authorization request for

15   based on trigger diagnosis established in our

16   system.  Do you see that?

17      A    Yes.

18      Q    Do you recall receiving large case

19   reports that triggered diagnosis information from

20   BRMS?

21      A    Yes.

22      Q    And if you turn the page, this is the

23   one that we don't have the Bates numbers on.  It

24   has a three-page report and it's called potential

25   large cases.  Do you recognize this document?
```

99

1       A    In general.

2       Q    Is this a trigger diagnosis report?

3       A    They do have the diagnoses listed on

4  here, the primary diagnoses.

5       Q    What would you do as case manager if you

6  received this report?

7       A    I would look at all of these diagnoses

8  and decide if there was anybody I need to request

9  any information on.

10      Q    What about in the renewal process?  What

11  would you do if you received this report?

12      A    Same; I would go through and add them if

13  necessary.

14      Q    And if you needed information, who would

15  you request that information from?

16      A    BRMS.

17      Q    Would you contact them directly?

18      A    Yes.

19      Q    And when you requested -- in general

20  terms in 2005 when you requested information from

21  them, did you typically receive it?

22      A    Yes.  It was at times slow getting the

23  information, but yes, we received it.

24      Q    Okay.  Do you recall receiving this

25  trigger diagnosis report in early 2006?

100

1      A    No.

2           (Exhibit No. 79 was marked for

3      identification.)

4      Q    (By Ms. Murphy)  All right.  This is an

5   email in the beginning from Jeanette Davidson

6   dated February 8th, 2006, to Mark Lucas, and it

7   looks like Mark Lucas forwarded the email to you

8   on February 10th.  Do you see that?

9      A    Yes, I see the date up there.

10     Q    Okay.  And then in the email that

11  Jeanette Davidson sent to Mark Lucas, the first

12  thing listed there is D█████ J█████, and then it has

13  a little paragraph.  Do you see that?

14     A    Yes.

15     Q    Do you recall receiving this information

16  on D████ J████ around February 10th, 2006?

17     A    Not specifically, no.

18     Q    Generally do you remember it?

19     A    Yes.

20     Q    So you do remember receiving information

21  on D████ J████ in early 2006.  Do you recall what

22  you did when you found out about ████ J█████?

23     A    I would have entered the information

24  into the claims system to the journal.

25     Q    Okay.  That's the SLIIC system?

101

1      A    Correct.

2      Q    Okay.  Have you seen any documents that

3  we've reviewed today that was a printout from the

4  SLIIC system?

5      A    Actually, this one is.  This page right

6  here is.

7      Q    What's the number down at the bottom?

8      A    3987.

9      Q    So when you receive information from

10  BRMS, do you always enter it into there -- into

11  the SLIIC system?

12      A    If it's somebody that we're concerned

13  about.

14      Q    And that would be somebody that you

15  wanted to follow?

16      A    Correct.

17      Q    If you look at the February 8th

18  paragraph on D▆▆ J▆▆ that Jeanette Davis sent

19  to Mark Lucas, does it generally look like what we

20  just looked at in the prior report?

21      A    Yes.

22      Q    The following documents, 3983, 3984

23  through 86, look like the large claim review

24  report that we looked at earlier, but this one

25  says 2006; correct?

# Exhibit E

*Shelby*

**INSURANCE SERVICES, INC.**
"A Proud Name in Insurance Since 1880"
BROKERS · CONSULTANTS

July 17, 2008

Marcia L. Augsburger
McDonough Holland & Allen PC
555 Capital Mall, 9th Floor
Sacramento, CA 95814

Re:  Alta Bates Summit Medical Center v. United of Omaha Life Insurance Company;
     Mutual of Omaha Life insurance Company
     Case No. RG07336672

Dear Ms. Augsburger,

The purpose of this letter is to express my opinion with regard to the above case in reference. This case involves a claim by the Plaintiff, Alta Bates Summit Medical Center ("ABSMC") that United of Omaha Life Insurance Company and Mutual of Omaha Life Insurance Company ("United of Omaha & MOO"), as Defendants, failed to comply with their contractual stop-loss re-insurance obligations to reimburse ABSMC for certain claims submitted under policy No. UP-90X4 ("Policy") from January 1, 2005 to January 1, 2007 policy term.

The Complaint alleges that United of Omaha & MOO failed and refused to make any payments for services provided to an ABSMC Employee Patient in breach of the Policy and the covenant of good faith and fair dealing contained therein. As a result of the action taken by United of Omaha & MOO, ABSMC has suffered great financial loss.

In an effort to access the merits of the Complaint, the following documents were reviewed:

- First Amended Complaint for Breach of Contract, dated July 27, 2007
- Select Risk Questionnaire for Stop Loss Insurance, dated December 7, 2005
- Email from De Ann Prefling to Claudia Wells, dated January 28, 2006
- Stipulated Protective Order, dated November 19, 2007
- TPA Report, dated March 2004
- TPA Report, dated June 2005
- Letter to De Ann Prefling from Claudia Wells, dated July 25, 2005
- Mutual of Omaha internal email to Mark Brewer from John Lenagh, dated August 2, 2006
- Letter to Ralph Herrera from Mark Brewer, dated August 2, 2006
- Stop Loss Contract & Plan Document Information Sheet and Disclosure Information, regarding ▮▮▮▮▮▮▮▮, undated
- Stop Loss Contract & Plan Document information Sheet and Disclosure Information, regarding ▮▮▮▮▮▮▮, undated

1

- United of Omaha Life Insurance Company Stop Loss Policy #UP-90X4, effective January 1, 2006
- Third Party Administration Agreement and Amendments, effective January 1, 2003
- Plan Supervisor Agreement, undated
- United of Omaha Life Insurance Company Internal Audit Review, dated October 2005

The United of Omaha & MOO denial of the stop-loss claim at issue ("the Claim") was not consistent with either industry standards or United of Omaha & MOO historical handling with respects to claims denials. As one with over 40 years of experience in the insurance industry, 25 of which specifically involved stop-loss adjudication, third-party health plan administration and the underwriting and rate-setting of self-funded medical plans, I will offer testimony that the processes applied by Mutual of Omaha & MOO were inconsistent with processes I have experienced industry-wide; and, inconsistent with their own internal processes as evidenced in documents reviewed relevant to the claim. In the process of handling a claim for reimbursement under a stop-loss contract, a number of considerations are applied. Historical relationships with the Policyholder and the Third Party Administrator ("TPA") are considered. Class of business, number of insured lives, premiums generated, claims experience, trends related to the account and industry, and, of course, the documentation supporting the claim itself are all important as well. However, contrary to industry customs and practice, United of Omaha & MOO denied the Claim solely based on the TPA and ABSMC failing to comply with the provisions of the Policy, specifically "Misstated Data", totally disregarding the fact that the ABSMC Employee Patient's potential large case notification was properly filed within the allowable window to do so. Internal and external supporting documents clearly reflect actions taken by United of Omaha & MOO set the Claim up for immediate denial.

Non-disclosure of the potential large claim was not material to the underwriting process and underwriting concerns did not dictate that the Claim be denied. In over 4 decades of working with underwriters, claims processors, actuaries, etc. seldom does the final decision come as a result of applying the "table rate" to determine final premium or acceptance of a risk. Many factors apply. It is not simply a matter of data provided (i.e.: age of employee, sex, marital status, claims history, large ongoing claims, etc.). Final determinations are reached through personal interaction between the TPA or the Client and the underwriter. Certainly, the Select Risk Questionnaire and other documents are important. However, relationships and personalities lend significantly to the final determinations as to final rates, factors, deductibles, etc. In the case of ABSMC, United of Omaha & MOO offered the 2006 / 2007 renewal at acceptable rates and premiums, even though claims experience was not favorable, because they <u>wanted the business!</u> The Select Risk Questionnaire and supporting documents reflected a number of large on-going claims, several of which were lasered at renewal. Additional documentation submitted in January 2006 further supported the potential large case inventory based in part on trigger diagnosis. The Claim at issue was listed on this report, and, caused no reaction from underwriting. Why? Because they <u>wanted the business!</u> And, the underwriter admitted she would have accepted the risk and lasered the Employee Patient at a higher specific deductible.

The late disclosure of the Claim was not material, as reflected, for example, by United of Omaha's & MOO's handling of information and claims from its TPA, Benefit Risk Management Services ("BRMS"), which deviated from industry practices. Standard practice in the industry in managing TPA relationships focuses on "accuracy" and "timelines" of reports that reflect detailed claims payment activity, premium remittance reports, on-going large claims reports, potential large claims reports (50% reports) and necessary trigger diagnosis reports, among others. Contrary to industry expected standards of care, United of Omaha & MOO, as fiduciaries, failed to maintain the records required to document the accuracy of underwriting and claims decisions. Repeatedly, United of Omaha & MOO field auditors discovered that BRMS failed to meet the processing and reporting standards set forth in the company's

2

TPA Guide and yet the contract between them remained in force. For two years, the BRMS audit by United of Omaha & MOO field auditors resulted in the same observations: BRMS was not turning claims around in a timely manner; trigger diagnosis claims were not being reported; potential large claims were not being reported; and, funds were being co-mingled. United of Omaha & Moo believed and concluded that BRMS was underperforming and yet failed to enforce the TPA contract and allowed the relationship to continue on a basis they considered "successful". Obviously, had United of Omaha & MOO held BRMS to the standards of their TPA Guide, the Claim at issue would have been paid. However, as a result of the carrier's negligence and inability (or willingness) to hold to industry standards of care, ABSMC has suffered substantial financial loss.

In the process of forming my opinions regarding this matter and reaching my determinations, I reviewed the filed legal documents, contractual documents, faxes, exhibits, emails, etc. However, due to the lack of adequate time to do so, I will not represent that the above noted is exhaustive. Additional analysis will need to be conducted to further confirm my expressed opinions. I therefore reserve my right to continue to conduct my research of the documents already provided; and, additional documents as they become available to me, including, but not limited to, completed deposition transcripts and exhibits. Following my review of these, and other documents, this report will be supplemented.

A brief summary of my education and professional background is described as follows:

- I began my undergraduate studies at Ohio State University in 1953; and, after a six-year interruption in my studies at Ohio State to serve in the United States Navy, I graduated in 1962. I also studied at the Unites States Armed Forces Institute of Japan in Osaka during my service in the Navy.

- Early in my career, I was an insurance agent in the State of Florida. In 1973 I was appointed by Governor Reuben Askew to the Florida Insurance Study Commission, which developed the FAIR windstorm insurance plan, and to the Florida Reparations Reform Committee, which developed the Florida "no fault" automobile insurance plan.

- From 1974 through 1976, I served as a two-term President of the Professional Insurance Agents Association, after having served on the Association's Board of Directors since 1968.

- I was named the Professional Insurance Agents Association "Agent of the Year" in 1976.

- From 1992 through 1994, I served as a two-term President of the Health Care Administrators Association, after having served on the Association's Board since 1987.

- I currently am a member of the Contra Costa County Board of Supervisors Business Leaders Alliance, having served on that Board since 1997.

- I also have received a number of awards and served on a number of other boards in the course of my career.

- From 1986 to 2000, I was President and Chief Executive Officer of Anchor Pacific Underwriters ("Anchor"), a public company that provides insurance brokerage, third-party claims administration, employee benefits consulting, and underwriting and risk administration to small and middle market companies, groups, trusts, individual consumers and governmental agencies primarily in California, Arizona, and Oregon. Anchor also helped clients design and develop health and other commercial products and services, performed risk analysis, determined benefit

3

and funding levels for insurance programs, and conducted loss control studies for insurance companies and self-insured employers. Anchor marketed the services of many insurance companies, and in 1999 was ranked by Business Insurance Magazine as the 8th largest insurance brokerage/administration company in the country.

- I hold insurance licenses in California and other States for Life & Health, Property Casualty, Surplus Lines, and Special Lines Surplus Lines.

- I have authored various articles on insurance topics, which have been published in insurance, business, employee benefits, and Indian Gaming magazines and trade publications.

- As president of Shelby Insurance Services, Inc., I currently perform insurance consulting, risk management, broker, and expert witness services for commercial insurance clients, tribal governments and the legal community.

- I have been qualified as an expert witness in Federal Court in California.

Attached as Exhibit 1 is a recap of my Expert Witness Assignments and Publications that have published articles I have written over the past 10 years. Exhibit 2 represents my current Fee Schedule.

The above stated expressed opinions have been determined by my own evaluation of the documents provided and in no way reflect the observations or opinions of others.

Respectively submitted,

James R. Dunathan
President

4

Exhibit F

## Leslie Murphy

**From:**      Leslie Murphy
**Sent:**      Tuesday, July 08, 2008 5:09 PM
**To:**        'Wall, Travis R.'
**Cc:**        Marcia L. Augsburger; Corene Rodder
**Subject:**   ABSMC v. MOO/UOO

Travis:

Do you have Betty Coyle Roberts availability for her continued deposition?  Also, we were recently informed that Mary Pelkey is on a criminal jury trial.  We understand the trial is expected to end the week of July 21st.  At this point, we do not believe we need to reschedule her deposition, but we wanted you to be aware of the possibility if the trial lasts longer than expected.

On another matter that may affect scheduling, we are considering whether to seek leave to amend the complaint, as we now believe, based on the deposition testimony, there is evidence of bad faith.  This will require leave from the Court's scheduling order regarding amendment of pleadings.  We assume you will not stipulate, but if that is incorrect, please advise.  Of course, we believe that it would be much more efficient if you would stipulate to the amendment and to moving the discovery deadline off.  Please let us know if you are willing to do so.

Thank you,

Leslie C. Murphy, Esq.
McDonough Holland & Allen PC
555 Capitol Mall, 9th Floor
Sacramento, California 95814
Telephone: 916/325-4510
Fax: 916/444-8989

Confidentiality Notice: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication. If you have received this communication in error, please contact our IT Department by email at helpdesk@mhalaw.com, or by telephone at (916) 444-3900. Thank you.

1

Exhibit G

Tina Gravel

**From:** Leslie Murphy
**Sent:** Wednesday, July 16, 2008 11:49 AM
**To:** Tina Gravel; Corene Rodder
**Subject:** FW: Alta Bates -- Amendment

**From:** Wall, Travis R. [mailto:twall@barwol.com]
**Sent:** Wednesday, July 16, 2008 10:00 AM
**To:** Leslie Murphy; Marcia L. Augsburger
**Cc:** Kiel, Linda
**Subject:** Alta Bates -- Amendment

Marcia and Leslie:

Please be advised that my client will not stipulate to allow an amendment of the complaint.  I will be prepared to discuss this matter in more detail during our call later today.

Thanks,

Travis

**Travis R. Wall**
BARGER & WOLEN LLP
650 California Street, 9th Floor
San Francisco, California 94108-2713
Tel. (415) 743-3738 (direct)
Tel. (415) 434-2800 (main operator)
Fax. (415) 434-2533
email: twall@barwol.com

**The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above.  Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.  Thank you.**

# Exhibit H

**Leslie Murphy**

| | |
|---|---|
| **From:** | Wall, Travis R. [twall@barwol.com] |
| **Sent:** | Thursday, August 07, 2008 11:25 AM |
| **To:** | Marcia L. Augsburger |
| **Cc:** | Leslie Murphy; Kiel, Linda |
| **Subject:** | RE: Alta Bates |

Marcia:

I conferred with my client, and defendants cannot stipulate to a change in the scheduling order. Among other objections, we believe that the motion for leave to amend is untimely and that the delay is prejudicial. Defendants would be undercutting this position by agreeing to a stipulation to allow plaintiff to file such a motion at this late date.

Travis

> **From:** Marcia L. Augsburger [mailto:maugsburger@mhalaw.com]
> **Sent:** Thursday, August 07, 2008 9:32 AM
> **To:** Wall, Travis R.
> **Subject:** RE: Alta Bates
>
> We intend to claim fraud as well. In any event, would you stipulate to an order changing the scheduling order such that we can file our motion to amend to be heard on 10-10?
>
> *Marcia L. Augsburger, Esq.*
> McDonough Holland & Allen PC
> 555 Capitol Mall
> Sacramento, CA 95814
> Phone: 916-325-4589
> Fax: 916-444-8989
>
> **Confidentiality Notice: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication. If you have received this communication in error, please contact our IT Department by email at helpdesk@mhalaw.com, or by telephone at (916) 444-3900. Thank you.**

> **From:** Wall, Travis R. [mailto:twall@barwol.com]
> **Sent:** Thursday, August 07, 2008 9:29 AM
> **To:** Marcia L. Augsburger
> **Subject:** RE: Alta Bates
>
> Marcia:
>
> We cannot agree to your proposal. There is also no reason for your motion to be heard first. We are moving on the breach of contract claims. If we prevail, your client will have no basis to seek any type of relief under any theory.

8/7/2008

**From:** Marcia L. Augsburger [mailto:maugsburger@mhalaw.com]
**Sent:** Thursday, August 07, 2008 9:28 AM
**To:** Wall, Travis R.
**Subject:** RE: Alta Bates
**Importance:** High

With regard to the hearing dates, it seems to me to be a more efficient schedule to have the motion to amend heard first and then the motion for summary judgment. Would you stipulate to an order changing time so that the motion to amend can be heard on 9-19 and the summary judgment motion on 10-10, which is the next available date?

*Marcia L. Augsburger, Esq.*
McDonough Holland & Allen PC
555 Capitol Mall
Sacramento, CA 95814
Phone: 916-325-4589
Fax: 916-444-8989

**Confidentiality Notice: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication. If you have received this communication in error, please contact our IT Department by email at helpdesk@mhalaw.com, or by telephone at (916) 444-3900. Thank you.**

---

**From:** Wall, Travis R. [mailto:twall@barwol.com]
**Sent:** Thursday, August 07, 2008 9:11 AM
**To:** Marcia L. Augsburger
**Cc:** Leslie Murphy
**Subject:** RE: Alta Bates

Marcia:

We have no obligation to provide a declaration for items 2 or 4. We will provide a supplemental response as required by the Federal Rules of Civil Procedure.

Travis

---

**From:** Marcia L. Augsburger [mailto:maugsburger@mhalaw.com]
**Sent:** Thursday, August 07, 2008 7:00 AM
**To:** Wall, Travis R.
**Cc:** Leslie Murphy
**Subject:** RE: Alta Bates

1. I never refused to explain the relevance - you have refused to accept my explanations, and to acknowledge that it is sufficient if the documents are reasonably calculated to lead to the discovery of admissible evidence. The topics of the manual reflect that they are

reasonably likely to have evidence bearing on issues of materiality of the disclosure, whether UOO/MOO followed its internal practices, procedures, and policies, how it interpreted the SRQ and Policy, and its agency relationship with its TPAs. If you are willing to discuss this further, or to produce the manual forthwith, please contact me or Leslie today. I have meetings until 11, then a noon meeting until 3:00, and another meeting at 5:00.

2. & 4. We will continue working on the motion to compel with regard to these until we see the supplemental responses and a declaration that a diligent search has been conducted of all records. It seems to us you could run a report of all claims paid and denied for 2005 and 2006, check them against the final disclosures, of which there would only be 1 for each insured group in California, then for those patients who do not appear on the final disclosures, check to see when they were first diagnosed. You should then produce the files for the cases where diagnosis preceded the policy commencement date.

3. With regard to the exception log, are there any portions you are willing to produce? We need to better understand the circumstances under which UOO/MOO makes exceptions.

*Marcia L. Augsburger, Esq.*
McDonough Holland & Allen PC
555 Capitol Mall
Sacramento, CA 95814
Phone: 916-325-4589
Fax: 916-444-8989

**Confidentiality Notice: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication. If you have received this communication in error, please contact our IT Department by email at helpdesk@mhalaw.com, or by telephone at (916) 444-3900. Thank you.**

---

**From:** Wall, Travis R. [mailto:twall@barwol.com]
**Sent:** Wednesday, August 06, 2008 10:49 PM
**To:** Marcia L. Augsburger
**Cc:** Leslie Murphy
**Subject:** RE: Alta Bates

Marcia:

I did not have time to respond to your points earlier since I have been working on other matters all day.

1. You have failed to explain why the entire claims manaul is relevant to this dispute. We have offered to have you identify specific sections and state the potential relevance, but you refused.

2. Request No. 62 seeks documents related to United's review of ABSMC stop loss claims related to medical conditions that were not disclosed during renewals. The only potentially responsive documents to this request are those for CC and RM, which have already been produced. I will prepare a supplemental response tomorrow.

3. My client will not agree to produce the exception log since it is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

4. We have already affirmed that all SRQ's are the same. You object to the fact that we used the term "will affirm." Although we take issue with this objection, we will agree to revise the response to affirm that all SRQ's are the same and to specify that MOO does not issue stop loss policies.

5. My client continues to maintain that these files are irrelevant.

As for the timing of your motion to amend, as stated in previous e-mails, Alta Bates cannot notice its motion for September 19. Although the court issued an order establishing a placeholder on that date for dispositive motions, the judge's website makes clear that the earliest available date for other motions is October 3. Please do not imply to the court that we agreed that Alta Bates could notice its motion for September 19. I would also prefer that the motion be heard later, since a September 19 date would make the briefing for the opposition coincide with my vacation and the motion would be mooted if the court grants our motion for summary judgment.

Travis

---

**From:** Marcia L. Augsburger [mailto:maugsburger@mhalaw.com]
**Sent:** Tuesday, August 05, 2008 3:34 PM
**To:** Wall, Travis R.
**Cc:** Leslie Murphy
**Subject:** RE: Alta Bates

With regard to the pending Order of Magistrate LaPorte relating to requests 17, 51, and 52, we will be submitting the enclosed letter to the Court unless you have changed your position on any of the issues discussed therein. We will hold the letter until the end of the day today in case we hear from you, but I believe you have made your position very clear in all the correspondence we have exchanged and during our conversations.

With regard to the remaining outstanding requests, we will file a motion this Thursday, the last day, and request that it be heard on September 16, 2008. The motion will address the following:

1. <u>Claims Manual (Request no. 67)</u>. The Table of Contents makes it absolutely clear that we need the entire manual. Each chapter appears to contain information on matters that have been raised by one party or the other at various times in this matter. We will maintain the confidentiality of the document.

2. <u>Documents regarding UOO's and MOO's review of ABSMC claims related to medical conditions not disclosed during renewal (Request no. 62)</u>. When we talked, you said you would tell me whether you have produced everything. I assume this is what you are referring to in the last paragraph below, and that in fact, your client confirmed it did not produce everything but will not produce any additional documents. I believe this would include documents relating to ████████ and ██████. Please advise asap. If I do not hear from you by close of business, I will assume we need to include it in our

motion to compel.

3. Exception log (Request no. 63). Your client continues to refuse to produce the exception logs for the reasons we have discussed with respect to request number 17 to UOO (please see enclosed letter to Court). If this is inaccurate, please advise asap. Otherwise, we will include this in our motion to compel, based on our position that the exception log is reasonably calculated to lead to evidence that bears on UOO's interpretation of the SRQ and policy.

4. SRQs for 2005 -2006 (Request no. 65). You were going to revise UOO's and MOO's responses to state that all SRQs UOO used were identical, and that MOO did not issue SRQs.

5. UOO's Case Management Files for ABSMC (Request no. 24 to UOO). I understand you will not produce these, so they will be the subject of the motion to compel.

With regard to our motion to amend the complaint, we will file the motion to be heard on the same day as your motion for summary judgment. I believe this is what you suggested.

Marcia L. Augsburger, Esq.
McDonough Holland & Allen PC
555 Capitol Mall
Sacramento, CA 95814
Phone: 916-325-4589
Fax: 916-444-8989

Confidentiality Notice: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication. If you have received this communication in error, please contact our IT Department by email at helpdesk@mhalaw.com, or by telephone at (916) 444-3900. Thank you.

-----Original Message-----
From: Wall, Travis R. [mailto:twall@barwol.com]
Sent: Monday, August 04, 2008 3:54 PM
To: Marcia L. Augsburger; Leslie Murphy
Cc: Kiel, Linda
Subject: Alta Bates

Marcia and Leslie:

Attached is the table of contents for United's claim manual. We have already produced the sections related to claims processing and appeals.
If your client believes another section is potentially relevant, please identify the section. We are not agreeing to produce all sections you might identify, but we are willing to discuss them further. I have designated these documents as confidential under the protective order in this case.

With respect to the SLIIC, please be advised that Mutual and United did not draft any manuals related to SLIIC. Rather the manuals were created by an outside consultant who designed the system for Untied. They simply describe how to use the computer software and are not company procedures manuals. The SLIIC manuals have no potential relevance to this case. There is no SLIIC table of contents that I can send you since the manuals do not have a table of contents.

I spoke with my client about the third-party claims files, and United continues to believe that they are totally irrelevant to this case. My clients will not agree to produce those documents.

8/7/2008

Travis

Travis R. Wall
BARGER & WOLEN LLP
650 California Street, 9th Floor
San Francisco, California 94108-2713
Tel. (415) 743-3738 (direct)
Tel. (415) 434-2800 (main operator)
Fax. (415) 434-2533
email: twall@barwol.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.