1    MARCIA L. AUGSBURGER (SBN 145686)
     LESLIE C. MURPHY (SBN 227454)
2    McDONOUGH HOLLAND & ALLEN PC
     Attorneys at Law
3    555 Capitol Mall, 9th Floor
     Sacramento, CA  95814
4    Phone: 916.444.3900
     Fax:    916.444.8989
5
     Attorneys for Plaintiff
6    Alta Bates Summit Medical Center

7

8              IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ALTA BATES SUMMIT MEDICAL       )   Case No.  C 07-4224 JSW (EDL)
     CENTER,                         )
12                                   )   **MOTION TO COMPEL FURTHER**
                                     )   **RESPONSES TO PLAINTIFF'S REQUESTS**
13                Plaintiff,         )   **FOR PRODUCTION OF DOCUMENTS**
          v.                         )
14                                   )
     UNITED OF OMAHA LIFE INSURANCE  )   Date:        September 16, 2008
15   COMPANY; MUTUAL OF OMAHA LIFE   )   Time:        2:00 p.m.
     INSURANCE COMPANY, et al.,      )   Courtroom:   Courtroom E, 15th Floor
16                                   )                450 Golden Gate Ave.
                  Defendants.        )                San Francisco, CA
17                                   )
                                     )   Magistrate Judge Elizabeth D. Laporte
18   _____)

19        PLEASE TAKE NOTICE that on September 16, 2008, at the hour of 2:00 p.m., in the

20   courtroom of the Honorable Elizabeth D. Laporte, U.S. Magistrate Judge, Courtroom E, United

21   States Courthouse, 450 Golden Gate Ave, San Francisco, California 94102,  Plaintiff Alta Bates

22   Summit Medical Center ("ABSMC"), will move the Court, pursuant to Federal Rule of Civil

23   Procedure 37, and Local Rule 37,   for an order compelling Defendants' further responses to

24   Plaintiff's Requests for Production of Documents, requests numbers 24 and 63, as set forth in the

25   supporting papers filed herewith.  This motion is based on the following:

26        1.    This Notice of Motion and motion;

27        2.    The Memorandum of Points and Authorities set forth below;

28        3.    The Separate Statement of Undisputed Material Facts In Support Of Motion To

**MHA**
:Donough Holland & Allen PC
Attorneys at Law

1

1 Compel Further Responses To Plaintiff's Requests For Production Of Documents As To Defendant

2 United of Omaha Life Insurance Company, filed herewith;

3       4.       The Separate Statement of Undisputed Material Facts In Support of Motion To

4 Compel Further Responses To Plaintiff's Requests For Production Of Documents As To Defendant

5 Mutual of Omaha Life Insurance Company, filed herewith;

6       5.       The Declaration of Marcia L. Augsburger In Support of Motion To Compel Further

7 Responses To Plaintiff's Requests For Production Of Documents and exhibits attached thereto, filed

8 herewith;

9       6.       The Declaration of Leslie C. Murphy In Support of Motion To Compel Further

10 Responses To Plaintiff's Requests For Production Of Documents and exhibits attached thereto, filed

11 herewith;

12       7.       The Declaration of Mary Pelkey In Support of Motion To Compel Further Responses

13 To Plaintiff's Requests For Production Of Documents and exhibits attached thereto, filed herewith;

14       8.       Upon the Court's records and files in the within case;

15       9.       And upon such other and further evidence, offers of proof and arguments of counsel

16 as may be presented at hearing on the matter.

17       The relief or Court action ABSMC seeks is as follows:  ABSMC seeks an order compelling

18 Defendants United of Omaha ("UOO") and Mutual of Omaha ("MOO") to produce further responses

19 to document requests numbers 24 and 63.  Specifically, ABSMC seeks the following:

20       In response to request number 24:

21              (1)  "All [UOO's and MOO's] Case Management file(s) for ABSMC" **or**

22              (2) a statement that UOO and MOO have conducted a diligent search and

23              made a reasonable inquiry in order to locate the requested documents, and

24              statement that the documents never existed, or are not in their possession,

25              custody, or control.

26       In response to request number 63:

27              (1)  "UOO's/MOO's stop loss department's exceptions log for claims

28              submitted between January 1, 2005 and December 31, 2007" **or** (2)  a


:Donough Holland & Allen PC
Attorneys at Law

**Plaintiff's Motion to Compel**                                                                  1119159v8 33802/0004

1              statement that UOO and MOO have conducted a diligent search and made

2              a reasonable inquiry in order to locate the requested documents, and

3              statement that the documents never existed, or are not in their possession,

4              custody, or control.

5  UOO's and MOO's responses to the requests, which also set forth the requests, are attached to the

6  Declaration of Marcia Augsburger filed herewith ("MLA Dec.") as Exhibits A and B, respectively.

7       Plaintiff Alta Bates Summit Medical Center ("ABSMC" or "Plaintiff") submits the following

8  points and authorities in support of its Motion to Compel Production of Documents:

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

MHA
:Donough Holland & Allen PC
Attorneys at Law

**TABLE OF CONTENTS**

PAGE

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ..................................................................................................... 4

     A.    Request No. 63:  Plaintiff Is Entitled To Defendants' Stop Loss Claims
          Department's "Exceptions Log" For Claims Submitted Between January 1,
          2005, and December 31, 2007, Because They Are Reasonably Calculated To
          Show The Circumstances Under Which UOO/MOO Made "Exceptions" To,
          Viewed, And Treated The Requirements Set Forth In The SRQ and Policy,
          Which Bears On Materiality and Enforceability. ........................................... 5

     B.    Request No. 24:  Plaintiff Is Entitled To Defendants' Case Management Files
          Because They Are Reasonably Calculated To Show The Circumstances Under
          Which UOO/MOO Made "Exceptions" To Their Disclosure Requirements
          And How They Viewed And Handled Noncompliance With SRQ and Policy
          "Requirements," Which Bears On Materiality And The Enforceability Of The
          Provisions At Issue. ....................................................................................... 8

III.    CONCLUSION ................................................................................................. 10

Plaintiff's Motion to Compel                                          1119159v8 33802/0004

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Cohen v. Penn. Mutual Life Ins.,*
  48 Cal. 2d 720 (1957) ................................................................................................ 5

*DiPasqua v. California Western States Life Insurance Company,*
  106 Cal. App. 2d 281 (1951) ..................................................................................... 5

*Freeman v. Allstate Life Insurance Company,*
  233 F.3d 533 (9th Cir. 2001) .................................................................................... 4

*Kaur v. Alameida,*
  2007 U.S. Dist. LEXIS 40138 (E.D. Cal. May 15, 2007) ......................................... 7

*McCormick v. Sentinel Life Insurance,*
  153 Cal. App. 3d 1030 (1984) ................................................................................... 5

*Merchants Fire Assurance Corporation v. Timore,*
  263 F.2d 232 (9th Cir. 1959) ............................................................................... 5, 10

*Southern California Edison Company v. Superior Court,*
  37 Cal. App. 4th 839 (1995) ..................................................................................... 4

*Thompson v. Occidental Life Insurance Company of California,*
  9 Cal. 3d 904 (1973) ................................................................................................. 5

*Waterbury v. Scribner,*
  2008 U.S. Dist. LEXIS 53142 (E.D. Cal. May 7, 2008) ............................................ 7

**Statutes**

Cal. Code Civ. Proc. §§ 1856(c), 1860 ........................................................................... 4

**Rules**

Fed. R. Civ. P. 34(a) ........................................................................................................ 7
Fed. R. Civ. P. 37(a)(5) .................................................................................................... 4

**Other Authorities**

Cal. Ins. Code §§ 332 ....................................................................................................... 5


:Donough Holland & Allen PC
Attorneys at Law

Plaintiff's Motion to Compel      1119159v8 33802/0004

# I.    INTRODUCTION

ABSMC is a non-profit public benefit corporation that operates an acute care hospital. Declaration of Mary Pelkey filed herewith ("Pelkey Dec.") ¶ 2. At all times since 2003, ABSMC was self-insured for health care, i.e., ABSMC provided health benefits to its employees through a self-insured plan. *Id.* ¶ 2. ABSMC purchased stop loss insurance to cover catastrophic medical expenses for its employees. *Id.* For the years 2003 through 2006, ABSMC purchased stop loss insurance from UOO and/or MOO. *Id.* ¶ 3.[1] The stop loss insurance was to cover a percentage of ABSMC's costs over a "Specific Deductible" for medical care rendered to ABSMC employees. *Id.* ¶ 5. The monthly premiums for this coverage were calculated by multiplying a per-member per-month amount by the number of ABSMC employees who were eligible for coverage under ABSMC's self-insured plan and covered under the policy. *Id.*

During the policy year 2006, ABSMC employee "DJ" was eligible under ABSMC's plan and was covered under the policy. *Id.* Throughout 2006, ABSMC paid, and UOO/MOO accepted, premiums attributable to DJ. *Id.* ¶ 6. Nonetheless, when Benefit Risk Management Services ("BRMS") submitted claims for reimbursement of DJ's medical costs,[2] UOO/MOO denied coverage, claiming that BRMS "provided inaccurate information or misstated, omitted, concealed or misrepresented [a] material fact or circumstance" in that DJ had been diagnosed with renal disease and heart disease in 2005, which diagnoses were not disclosed before the policy renewal date of January 1, 2006. *Id.* ¶¶ 7 – 8, 10, and Ex. D thereto ("Denial Letter"); MLA Dec. and Ex. C thereto, 175:19-23; 176:6-20 and ¶ 8, and Ex. G thereto.

UOO/MOO denied the claim under the "Misstated Data" exclusion in the policy, which

---

[1] MOO contends that United of Omaha ("UOO"), not MOO, issued the stop loss policy at issue. ABSMC contends that MOO and UOO are essentially the same corporation. The evidence supports ABSMC's position. Deposition Transcript of Tom Gage ("Gage Dep."), attached to MLA Dec. as Ex. C, 9:14-18; *id.* 175:19-176:5 (Tom Gage of MOO and/or UOO testifying he does not recall seeing United of Omaha letterhead); Deposition Transcript of Carol Tarkowski ("Tarkowski Dep.") attached to MLA Dec. as Ex. D, 4:21-5:2; Deposition of Betty Coyle-Roberts ("Coyle-Roberts Dep."), attached to MLA Dec. as Ex. E, 5:4-21.

[2] UOO/MOO denied coverage when BRMS submitted a request for reimbursement to UOO/MOO on or about July 21, 2006, seeking reimbursement of $331,371.80, the portion UOO/MOO agreed to pay out of the $581,371.80 in plan benefits paid. MLA Dec. Ex. F (Deposition Ex. 97 [request for reimbursement]; MLA Dec. Ex. G (Deposition Ex. 99 [denial letter dated August 2, 2006].


MHA
:Donough Holland & Allen PC
Attorneys at Law

Plaintiff's Motion to Compel                                                            1119159v8 33802/0004

1    states, in pertinent part:

> If, before or after, making any reimbursement, We determine that You or Your agent, employee or representative provided inaccurate information or misstated, omitted, concealed or misrepresented any **material fact or circumstance** concerning this Policy or the Plan, including any loss or other items that You were required to disclose to Us on Your application or the Select Risk Questionnaire . . . We may: (a) deny stop loss reimbursement for Losses related to (or the adjustment of Specific Deductibles for) certain individuals, notwithstanding any other provision of the Policy; (b) revise the terms or conditions of the Policy, including, without limitation, the premium rates; (c) rescind the stop loss insurance; or (d) void the policy.

Ex. A to Pelkey Dec. (emphasis added), p. 01604. UOO/MOO relied on a portion of the Select Risk Questionnaire ("SRQ") that states, in pertinent part:

> Complete Attachment A of this Select Risk Questionnaire with respect to any individuals . . . satisfying any of the following criteria and expected to be covered under the Applicant's self-insured health care plan on the Proposed Effective Date and expected to be covered under the Applicant's self-insured health care plan on the Proposed Effective Date . . ..
>
> (e)  Any individual diagnosed with any serious illness or injury including but not limited to any of the following diagnosis: [Heart Disease and Renal Disease].

Ex. B to Pelkey Dec.; MLA Dec. ¶ 13 and Ex. L thereto. Thus, Defendants contend that ABSMC's third-party administrator ("TPA"), BRMS, was obligated to disclose Employee Patient's diagnosis on the SRQ that was submitted to MOO prior to the policy renewal date of January 1, 2006.

However, **the SRQ also stated** that "[a]s an **alternative** to completing Attachment A, the Applicant may attach a report(s) that contain(s) the information requested for Attachment A ... **within 30 days of the Proposed Effective Date** ...." *Id.* In accordance with this provision, BRMS sent a report to MOO on January 28, 2006, that contained the information requested about individuals having certain "trigger" diagnoses, including Employee Patient.[3]

ABSMC maintains, *inter alia*, that (1) the January 28, 2006, disclosure met the requirement stated in the SRQ, which is unambiguous in that the word "within" means that the disclosure report described in the SRQ may be submitted either 30 days before or after the policy effective date; (2) to the extent there is any ambiguity, the parties' past and subsequent performance established that the disclosure was not required before the policy effective date; (3) whether the disclosure was made

---

[3] MLA Dec. Ex. H.



1  within 30 days before or after the Proposed Effective Date is not a "material fact or circumstance"

2  justifying denial under the Misstated Data exclusion; and (4) there was substantial compliance with

3  any disclosure requirement.

4    For these reasons, and based on the law set forth below, Plaintiff properly seeks discovery of

5  documents showing UOO's/MOO's approvals, denials, analysis, and handling of claims by

6  UOO/MOO where the trigger diagnosis was not disclosed before the policy renewal or issuance

7  date.  Specifically, Plaintiff submits it is entitled to documents in response to requests numbers

8  number 24 (case management files, memorializing UOO's/MOO's analysis of claims that were not

9  disclosed before policy renewal), and 63 (UOO's/MOO's stop loss department's log showing the

10  circumstances under, and claims for, which UOO/MOO made "exceptions" between January 1,

11  2005, and December 31, 2007).[4]

12    As more fully described below, these r equested documents are relevant to the contract

13  interpretation issues and specifically the issue of whether the omission to disclose Patient

14  Employee's diagnosis before the policy renewal date was **material** – based on the law of contract

15  interpretation and on California insurance law.  For example, the documents will likely show

16  (1) how UOO/MOO and/or other California insureds interpreted the phrase in the SRQ "[a]s an

17  alternative to completing Attachment A, the Applicant may attach a report(s) that contain(s) the

18  information requested for Attachment A … within 30 days of the Proposed Effective Date ….";

19  (2) whether UOO/MOO consistently enforced the alleged requirement that the disclosure be

20  submitted before policy renewal; (3) how important UOO/MOO considered the information to be

21  and why; (4) the circumstances under which exceptions were made; and  (5) the probable and

22  reasonable effect that disclosure of the information would have on the insurer.

23    Despite multiple conferences, invitations to conference, and correspondence designed to

24  obtain the requested discovery without Court action, Defendants have refused to produce documents

25  to the subject requests—even with ABSMC's agreement to narrow the scope of the responses—

26  and/or have refused to confirm that they performed a diligent search for responsive documents.

27

28  [4] MLA Dec. Exs. A (UOO's responses) and B ("MOO's responses).

MHA
:Donough Holland & Allen PC
Attorneys at Law

1    Accordingly, ABSMC requests an order compelling production, as narrowed in the meet-and-confer

2    process, of the foregoing documents. Upon receipt of the Court's ruling on this motion, Plaintiff will

3    request reimbursement of the associated expenses, by noticed motion pursuant to Fed. R. Civ. P.

4    37(a)(5).

5                                    **II.    ARGUMENT**

6            The document requests are reasonably calculated to reveal evidence concerning the

7    construction Defendants gave to the alleged contractual provisions, and whether Defendants' asserted

8    interpretation of the contract is consistent with its course of dealing and performance, from 2003

9    through the present. *See, e.g.,* Cal. Code Civ. Proc. §§ 1856(c), 1860. Specifically, the requests

10   properly seek to elicit information revealing how Defendants treated other cases where serious

11   illnesses were not disclosed before the policy commencement date, and to show whether such non-

12   disclosures were truly a "material fact or circumstance concerning the Policy" that may have justified

13   denial. *See, e.g., Southern California Edison Company v. Superior Court*, 37 Cal. App. 4th 839, 851

14   (1995) (*as modified on denial of rehg.*). "The rule is well-settled that in construing the terms of a

15   contract the construction given it by the acts and conduct of the parties with knowledge of its terms,

16   and before any controversy has arisen as to its meaning, is admissible on the issue of the parties'

17   intent." *Id.* The requests are also reasonably calculated to provide information about how

18   Defendants viewed and enforced other terms of the SRQs and policies, which Defendants have

19   represented were identical as to all insureds,[5] which will assist the Court in determining the

20   materiality and enforceability of the alleged requirement or pre-condition at issue. *Id.*

21           The requested information is not only relevant to a contract analysis, but also to the legal

22   inquiries to be made under insurance law. Materiality is not just a contract requirement:  an

23   insurance company may deny coverage depending on the probable and reasonable influence of the

24   undisclosed facts on the particular insurer. *Freeman v. Allstate Life Insurance Company*, 233 F.3d

25   533, 536 (9th Cir. 2001) (materiality determined solely by the probable and reasonable effect which

26   truthful answers would have had upon the insurer). *See also Merchants Fire Assurance Corporation*

27

28   _____

[5] MLA Dec. Ex. I, Response to Request No. 65.

1   *v. Timore*, 263 F.2d 232, 240-241 (9th Cir. 1959);  *Thompson v. Occidental Life Insurance Company*

2   *of California*, 9 Cal. 3d 904, 916 (1973);  Cal. Ins. Code §§ 332 (party to insurance contract must

3   communicate to other in good faith all facts within his/her knowledge that are material and not that

4   other does not have means of ascertaining), 334 ("Materiality" is determined by "the probable and

5   reasonable influence of the facts upon the party to whom the communication is due"), 359

6   (rescission of insurance policy available where false representation at issuance of policy was

7   material).  Put differently, the legal issue is whether the information would have made the contract

8   less desirable to the insurer.  *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030, 1045-

9   1046 (1984).  *See also Cohen v. Penn. Mutual Life Ins.*, 48 Cal. 2d 720, 734 (1957) ("Failure to

10  disclose data which would not affect the risk or the making of the insurance contract is

11  immaterial.").  What happened in situations other than the one at issue here is reasonably calculated

12  to be instructive on whether the undisclosed information would have made any substantive

13  difference in the policy terms.  *See, e.g., Cohen*, 48 Cal. 2d at 725 (minor ailment is not material).

14  The information is also reasonably calculated to reveal whether Defendants relied on information of

15  the type they now complain should have been disclosed.  *DiPasqua v. California Western States Life*

16  *Insurance Company*, 106 Cal. App. 2d 281, 284-285 (1951).

17  **A.     Request No. 63:  Plaintiff Is Entitled To Defendants' Stop Loss Claims
            Department's "Exceptions Log" For Claims Submitted Between January 1,**

18          **2005, and December 31, 2007, Because They Are Reasonably Calculated To
            Show The Circumstances Under Which UOO/MOO Made "Exceptions" To,**

19          **Viewed, And Treated The Requirements Set Forth In The SRQ and Policy,
            Which Bears On Materiality and Enforceability.**

20

21          Request number 63 asked for the following from Defendants:  "Your stop loss department's

22  exceptions  log  for  claims  submitted  between  January  1,  2005  and  December  31,  2007."

23  Defendants' "person most knowledgeable" regarding United's policies and procedures with respect to

24  rejecting stop loss claims explained that Defendants recorded the situations in which they paid

25  claims they "could have denied," and these were recorded in an "exception log."  Tarkowski Dep.,

26  MLA Dec. Ex. D, 134:5-18, 137:5-23 (testifying that when Defendants pay a claim that they "could

27  have denied," they log it in the "exception log").  This log is reasonably calculated to reveal evidence

28  bearing on what Defendants considered an "exception" and the materiality and enforceability of

1    "requirements" set forth in Defendants' SRQs and Policies.  For example, the log will contain

2    information regarding cases where nondisclosure was in issue.  Ms. Tarkowski testified that, in

3    situations involving nondisclosure, she recalled "a couple" of cases in 2005 where "exceptions were

4    made" and claims were paid despite nondisclosure, and " a couple" of cases in 2006 and "this year."

5    *Id.*  The log will also show whether Defendants enforced what they have argued is a requirement that

6    all claims be "paid" to providers within a certain period of time.[6]  *Id.* 134:19-135:8 (testifying that a

7    situation in which insured did not pay a claim to the provider within the time required by the policy,

8    Defendants have made an "exception" and paid the claim).

9           Documents other than the exception log are not available to provide the information Plaintiff

10   seeks.  *Id.* 135:9-12 (testifying there are no written policies about what claims or types of claims for

11   which exceptions are made); 136:14-21 (log also shows appeals); 36:10-23; 38:3-39:23; 62:4-15

12   (claims that were paid were for less than $1,000,000); 62:15-65:3; 84:14-25 (whether exceptions are

13   made depends on facts at issue as to each case); 119-17-24 (testifying that whether exceptions would

14   be made depended on if nurse said that in retrospect she would have increased specific deductible

15   had she known before policy renewal).

16          The exception log is also needed to check the accuracy and credibility of Defendants'

17   representations in response to request number 62 that all responsive documents were produced.

18   MLA Dec. Ex. I.  Request number 62 asked Defendants to produce "[a]ll documents relating or

19   referring to [their] review of ABSMC stop loss claims relating to medical conditions that were not

20   disclosed during the renewal periods for policy years 2003 - 2006."  Defendants supplemented their

21   response to request number 62 on August 7, 2008, stating:  "Responding Party refers to and

22   incorporates by reference its initial response and objections and the preliminary statement and

23   general objections above.  Subject to and without waiving the foregoing objections, Responding

24   Party previously produced all responsive documents."  MLA Dec. Ex. I.  Plaintiff is concerned about

25   the accuracy and credibility of this response for several reasons.  First, although the supplemental

26   response states that Defendants already produced all responsive documents the Defendants' initial

27

28   [6] Defendants have argued that for this reason, they are not responsible to pay for some of the claims
     in issue.  MLA Dec. Ex. D, 134:5-136:3.


MHA
:Donough Holland & Allen PC
Attorneys at Law

Plaintiff's Motion to Compel                                              1119159v8 33802/0004

1    response, served after Defendants served most of the documents in this case, states that Defendants

2    would need to conduct, in the future, a burdensome search, because there are voluminous claim files

3    to review.  The initial responses state that "[t]he request is vague and ambiguous and overly broad . .

4    . [and] also burdensome and oppressive since it would require a manual review of all claims files

5    since 2003."  MLA Dec. Ex. K.

6          Second, the preamble to Defendants' supplemental response states that the responses are

7    based on "known facts" and are "made in a good faith effort to supply as much factual information . .

8    . as are presently known, but do not in any way prejudice Responding Party in relation to further

9    discovery, research, or analysis."  Defendants are required to conduct a <u>diligent search and make a</u>

10   <u>reasonable inquiry in order to locate the requested documents, and then state that the document never</u>

11   <u>existed, or is not in their possession, custody, or control.</u>  *See, e.g., Kaur v. Alameida*, 2007 U.S.

12   Dist. LEXIS 40138 (E.D. Cal. May 15, 2007) ("Defendants are ordered to conduct a further search

13   for responsive documents and produce further documents within 30 days of this order.  In doing so,

14   defendants and counsel are reminded of their duty under Rule 34 to conduct a diligent search and

15   reasonable inquiry in effort to obtain responsive documents. Defendants are obligated to produce all

16   specified relevant and non-privileged documents which are in their possession, custody or control."),

17   citing Fed. R. Civ. P. 34(a);  *Waterbury v. Scribner*, 2008 U.S. Dist. LEXIS 53142 (E.D. Cal. May 7,

18   2008) ("Defendants' objection does not demonstrate that a diligent search and reasonable inquiry has

19   been made in an effort to locate the requested documents.  Plaintiff's motion to compel Request

20   Eight is granted, and defendants are ordered to either produce the documents, or amend their

21   response to state that a diligent search and reasonable inquiry have been conducted, and to state the

22   reason they are unable to comply (e.g., the document never existed; or not in their possession,

23   custody or control).").  On August 11, 2008, the date this motion is to be filed, Defendants' counsel

24   e-mailed Ms. Augsburger stating that his client had performed a diligent search.  MLA Dec. ¶ 11 and

25   Ex. J thereto.  The only way Plaintiff can check the credibility of this representation now is to review

26   the exception log and case management files addressed below.

27          Third, it is very difficult to believe that Defendants "previously produced all responsive

28   documents."  For one thing, Defendants refused to produce any case management files in response to



7

1   request number 24.  LCM Dec. ¶ 2-8.  Additionally, although the testimony indicates that all case

2   management notes were in hard copy documents, Defendants produced only a few case management

3   documents on the patient at issue, DJ, and on another patient whose condition was not disclosed

4   before renewal but whose claims were paid, "CC."  LCM Dec. ¶ 10.  Furthermore, the documents on

5   CC were produced in response to Plaintiff's specific request for such documents, not in response to

6   requests numbers 24 or 62.  It is simply hard to believe that other than the claims involving DJ and

7   CC, Defendants have no "documents relating or referring to [their] review of ABSMC stop loss

8   claims relating to medical conditions that were not disclosed during the renewal periods for policy

9   years 2003 - 2006."  If true, the only logical conclusions to be drawn is that Defendants did not

10   review such claims, that they never documented anything about such review, or that no claims were

11   tendered relating to medical conditions that were not disclosed during the renewal periods.  Given all

12   the evidence discovered in this case and described in this and Plaintiff's earlier motion to compel,

13   these conclusions are highly unlikely.

14          Accordingly, Plaintiff requests that the Court order Defendants to produce the exception log

15   on the grounds that it is reasonably calculated to reveal evidence bearing on what Defendants

16   considered an "exception" and the materiality and enforceability of "requirements" set forth in

17   Defendants' SRQs and Policies, and on the accuracy and credibility of Defendants' representations in

18   response to request number 62.

19   **B.      Request No. 24:  Plaintiff Is Entitled To Defendants' Case Management Files**
            **Because They Are Reasonably Calculated To Show The Circumstances Under**
20          **Which UOO/MOO Made "Exceptions" To Their Disclosure Requirements And**
            **How They Viewed And Handled Noncompliance With SRQ and Policy**
21          **"Requirements," Which Bears On Materiality And The Enforceability Of The**
            **Provisions At Issue.**
22

23          Request number 24 seeks the following:  "All Your Case Management file(s) for ABSMC."

24   UOO/MOO managed the care and treatment from 2003 through 2006 for some of ABSMC's

25   employees who had serious illnesses or injuries.  MLA Dec.¶ 3 and Exs. A and B thereto.  ABSMC

26   seeks an order that Defendants must produce documents in response to request number 24.

27          ABSMC was informed, and believed until July 18, 2008, that Defendants had produced all

28   responsive documents, based on statements by Defendants' counsel, Travis Wall, during the June 25,

MHA
sDonough Holland & Allen PC
Attorneys at Law

8

1    2008, deposition of MOO employee Patricia Swank.  Declaration of Leslie C. Murphy filed herewith

2    ("LCM Dec.") ¶ 2-3.  After the deposition, however, Mr. Wall told ABSMC's counsel that all of the

3    case management files had not been produced, and would not be.  *Id.* ¶ 2-3.  After many meet-and-

4    confer attempts, it became clear that Defendants would not even search for responsive documents

5    without order from the Court.  *Id.* ¶ 4-8.

6           ABSMC is informed and believes, and seeks to establish, that Defendants did not act in

7    accordance with their current interpretation of the SRQ and policy.  ABSMC is aware that

8    Defendants paid stop loss claims in 2006 for at least one other employee who had a serious illness

9    and who was only disclosed on the January 28, 2006, report ("Patient CC").  Pelkey Dec. ¶ 13.

10   However, to ABSMC's knowledge, the complete case management file relating to this employee or

11   other ABSMC patient/employee, with the exception of "DJ," have not been produced by

12   United/Mutual.  LCM Dec. ¶ 10.

13          Based on the deposition testimony in this case, ABSMC is also informed and believes that

14   the case management files contain information about "exceptions" that UOO/MOO made to certain

15   alleged disclosure requirements, as described above with regard to request number 63.  MLA Dec.

16   Ex. D, 134:5-136:3.  ABSMC is further informed and believes that Defendants' case management

17   notes contain information about patients who were not disclosed during the renewal, so they may be

18   informative about how those cases were handled and whether UOO/MOO breached the policy and

19   the covenant of good faith and fair dealing contained therein by treating Employee Patient's case

20   differently.  *Id.*  Case management files are reasonably calculated to contain information bearing on

21   all of these in that when Defendants were considering a claim for denial, case managers were

22   consulted to determine what the probable and reasonable influence of the undisclosed facts would

23   have had on policy terms. MLA Dec. ¶ 14 and Ex. M;  LCM Ex. A, 139:16-141:25.

24          For the reasons described above with respect to request number 63, Plaintiff submits that the

25   requested documents will assist Plaintiff, and ultimately the Court, in determining the meaning of the

26   SRQ and materiality of the alleged requirements set forth in the SRQ as to disclosure and similar

27   "pre-conditions."  *See, e.g., Freeman*, 233 F.3d 533, 536 (9th Cir. 2001) (materiality determined by

28   the probable and reasonable effect that truthful answers would have had upon the insurer);

1 | *Merchants Fire Assurance Corporation v. Timore*, 263 F.2d 232, 240-241 (9th Cir. 1959). In

2 | addition, as also addressed above, the case management files are reasonably calculated to reveal

3 | evidence bearing on the accuracy and credibility of Defendants' representations in response to

4 | request number 62 that other than DJ and CC, Defendants have no "documents relating or referring

5 | to [their] review of ABSMC stop loss claims relating to medical conditions that were not disclosed

6 | during the renewal periods for policy years 2003 - 2006."

7 |     Defendants' objections to the request on grounds of overbreadth and oppression is

8 | unfounded:  Defendants have refused to provide even an estimate of the number of files at issue.

9 | LCM Dec. ¶ 6.  Moreover, the only lists ABSMC has been able to find (documents labeled "United-

10 | 3524 and 3532") indicate that only 21 patients were in case management as of August 2005 (LCM

11 | Dec. ¶ 9 and Ex. G attached thereto), and ABSMC has offered to narrow the scope of the request to

12 | the time period of 2005 and 2006.  LCM Dec. ¶ 6.

13 |     Defendants have refused to produce documents to these requests.  Accordingly, ABSMC

14 | requests an order compelling production of the foregoing documents or responses.

### III.    CONCLUSION

16 |     For the foregoing reasons, Plaintiff respectfully requests the Court grant this Motion to

17 | Compel and order that Defendants produce forthwith all documents responsive to Plaintiff's requests

18 | for documents numbers 24 and 63.

20 | DATED:  August 11, 2008             McDONOUGH HOLLAND & ALLEN PC
                                         Attorneys at Law

                                         By: _____
                                              Marcia L. Augsburger

                                         Attorneys for Alta Bates Summit Medical Center



Plaintiff's Motion to Compel                                                    1119159v8 33802/0004