MARCIA L. AUGSBURGER (SBN 145686)
LESLIE C. MURPHY (SBN 227454)
McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax:   916.444.8989

Attorneys for Plaintiff
Alta Bates Summit Medical Center

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER, | ) ) ) | Case No.  C 07-4224 JSW (EDL) |
| | ) ) | **SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS AS TO DEFENDANT MUTUAL OF OMAHA LIFE INSURANCE COMPANY** |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| UNITED OF OMAHA LIFE INSURANCE COMPANY; MUTUAL OF OMAHA LIFE INSURANCE COMPANY, et al., | ) ) ) | |
| | ) | Date:        September 16, 2008 |
| | ) | Time:        2:00 p.m. |
| Defendants. | ) | Courtroom:   Courtroom E, 15th Floor |
| | ) | 450 Golden Gate Ave. |
| | ) | San Francisco, CA |
| | ) | |
| | ) | Magistrate Judge Elizabeth D. Laporte |
| | ) | |

        Pursuant to Federal Rule of Civil Procedure 10(b), plaintiff, Alta Bates Summit Medical Center ("ABSMC"), hereby set forth the verbatim text of each request for production of documents, the verbatim text of each objection and/or response served by Defendant Mutual of Omaha Life Insurance Company ("MOO"), and a statement of the factual and legal reasons why MOO should be compelled to serve further responses to ABSMC's document requests.

**REQUEST FOR PRODUCTION NO. 24:**

        All Your Case Management file(s) for ABSMC.

///

M·H·A
:Donough Holland & Allen PC
Attorneys at Law

1

1    **MOO RESPONSE TO NO. :24**

2    Responding Party refers to and incorporates by reference the Preliminary Statement and

3    General Objections set forth above.  Responding Party further objects to this request on the grounds

4    that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that responsive

5    documents, if any, would be in United of Omaha's possession, custody or control.  Responding Party

6    objects on the grounds that request is overly broad and seeks documents that are irrelevant and not

7    reasonably calculated to lead to the discovery of admissible evidence.    The request is unduly

8    burdensome and oppressive.    Responding Party objects to the request to the extent it seeks

9    documents that are protected by the attorney-client privilege, the attorney work product doctrine, or

10   any other applicable privilege.    The request seeks documents containing information that is

11   confidential and proprietary and that is protected by state and federal rights to privacy.

12   **FACTUAL AND LEGAL REASONS FOR**

13   **COMPELLING FURTHER RESPONSES TO REQUEST NO. 24**

14   MOO's response to this request number 24 is identical to UOO's except that it states

15   "Responding Party further objects to this request on the grounds that Mutual of Omaha did not issue

16   any stoploss insurance policies to Alta Bates and that responsive documents, if any, would be in

17   United of Omaha's possession, custody or control."  ABSMC contends that MOO and UOO are

18   essentially the same corporation.  The evidence supports ABSMC's position.  Deposition Transcript

19   of Tom Gage ("Gage Dep."), attached to the Declaration of Marcia L. Augsburger, filed herewith

20   ("MLA Dec."), as Ex. C, 9:14-18; id. 175:19-176:5 (Tom Gage of MOO and/or UOO testifying he

21   does not recall seeing United of Omaha letterhead); Deposition Transcript of Carol Tarkowski

22   ("Tarkowski Dep.") attached to MLA Dec. as Ex. D, 4:21-5:2; Deposition of Betty Coyle-Roberts

23   ("Coyle-Roberts Dep."), attached to MLA Dec. as Ex. E, 5:4-21.

24   The person in charge of case management for ABSMC who would have case management

25   files in her possession, custody, or control, Patricia Swank, is employed by MOO.  Deposition of

26   Patricia Swank, 5:9-18, 8:11-14, 17-12:25 attached to MLA Dec. as Exhibit N.  In fact, Ms. Swank

27   testified that all of the information she had on the ABSMC renewal was in the case management file

28   ///

MHA
:Donough Holland & Allen PC
Attorneys at Law

1  that she gave to MOO's counsel.  Declaration of Leslie C. Murphy, filed herewith ("LCM Dec.")

2  52:2-15.

3       Based on the deposition testimony in this case, ABSMC is also informed and believes that

4  the case management files contain information about "exceptions" that UOO/MOO made to certain

5  alleged disclosure requirements.  MLA Dec. Ex. D (testimony of C. Tarkowsky), 134:5-136:3.  *See*

6  *also id.* at 4:21-24 (Ms. Tarkowsky testifying that she is the Manager of Stop Loss Claims For

7  MOO).  ABSMC is further informed and believes that Defendants' case management notes contain

8  information about patients who were not disclosed during the renewal, so they may be informative

9  about how those cases were handled, whether UOO/MOO breached the policy and the covenant of

10 good faith and fair dealing contained therein by treating DJ's case differently, and whether

11 UOO/MOO acted in accordance with their current interpretation of the SRQ and policy.  MLA Dec.

12 Ex. D (testimony of C. Tarkowsky), 134:5-136:3.  At a minimum, MOO should be compelled to

13 state that it has conducted a diligent search and made a reasonable inquiry in order to locate the

14 requested documents, and statement that the documents never existed, or are not in their possession,

15 custody, or control.  *See, e.g., Kaur v. Alameida*, 2007 U.S. Dist. LEXIS 40138 (E.D. Cal. May 15,

16 2007);  *Waterbury v. Scribner*, 2008 U.S. Dist. LEXIS 53142 (E.D. Cal. May 7, 2008).

17      Because the remainder of MOO's responses to the document requests at issue is identical to

18 UOO's, the remainder of the discussion below regarding request number 24 of this separate

19 statement is identical to the discussion in the Separate Statement of Undisputed Material Facts In

20 Support Of Motion To Compel Further Responses To Plaintiff's Requests For Production Of

21 Documents As To Defendant United of Omaha Life Insurance Company.

22      ABSMC purchased stop loss insurance from Defendants for the years 2003 through 2006 to

23 cover catastrophic medical expenses for its employees.  Declaration of Mary Pelkey filed herewith

24 ("Pelkey Dec.") ¶ 2.  During the policy year 2006, ABSMC employee "DJ" was eligible under

25 ABSMC's plan and was covered under the policy, *id.*, but Defendants refused to pay claims for

26 medical services rendered to her, asserting that Plaintiff's third party administrator, Benefit Risk

27 Management Services ("BRMS") "provided inaccurate information or misstated, omitted, concealed

28 or misrepresented [a] material fact or circumstance" in that DJ had been diagnosed with renal disease

MHA
:Donough Holland & Allen PC
Attorneys at Law

3

1  and heart disease in 2005, which diagnoses were not disclosed before the policy renewal date of

2  January 1, 2006. *Id.* ¶¶ 7 – 8, 10, and Ex. D thereto ("Denial Letter"); MLA Dec. Ex. C thereto,

3  175:19-23; 176:6-20 and ¶ 8, and Ex. G thereto.

4        The phrase on which Defendants relied in denying the claims at issue was contained in

5  Defendants' disclosure document called a "Select Risk Questionaire" ("SRQ"). Pelkey Dec., Ex. B.

6  The SRQ states that insureds are to complete and submit an attachment to the SRQ that discloses all

7  plan members who have certain diagnoses "no earlier than 30 days prior to the Proposed Effective

8  Date." *Id.* BRMS relied on another phrase in submitting the SRQ and a subsequent report on

9  January 28, 2006 that disclosed DJ's diagnosis, namely, the phrase stating that "[a]s an alternative to

10  completing Attachment A, the Applicant may attach a report(s) that contain(s) the information

11  requested for Attachment A … within 30 days of the Proposed Effective Date …." *Id*; MLA Dec. ¶

12  13 and Ex. L thereto.

13        Plaintiff seeks discovery of documents showing UOO's/MOO's approvals, denials, analysis,

14  and handling of claims by UOO/MOO where diagnoses were not disclosed before the policy renewal

15  or issuance date. These documents are reasonably calculated to assist the Court in determining

16  whether BRMS "provided inaccurate information or misstated, omitted, concealed or misrepresented

17  [a] **material fact or circumstance**" and whether it was sufficient for BRMS to disclose DJ's

18  diagnosis by January 28, 2006 in a separate report. Case management files are reasonably calculated

19  to contain information bearing on all of these in that when Defendants were considering a claim for

20  denial, case managers were consulted to determine what the probable and reasonable influence of the

21  undisclosed facts would have had on policy terms. MLA Dec. ¶ 14 and Ex. M; LCM Dec., Ex. A,

22  139:16-141:25.

23        The influence undisclosed facts would have had on Defendants is a central issue in the case,

24  because to justify denial of the claims, Defendants must show that the omission to disclose DJ's

25  diagnoses before policy issuance on January 1, 2006 was **material**. *Merchants Fire Assurance*

26  *Corporation*, 263 F.2d 232, 240-241 (9th Cir. 1959); *Thompson v. Occidental Life Insurance*

27  *Company of California*, 9 Cal. 3d 904, 916 (1973). Whether a nondisclosure is "material" according

28  to insurance law depends on the probable and reasonable influence of the undisclosed facts on the

**MHA**
:Donough Holland & Allen PC
Attorneys at Law

1   particular insurer. *Freeman v. Allstate Life Insurance Company*, 233 F.3d 533, 536 (9th Cir. 2001)

2   (materiality determined solely by the probable and reasonable effect which truthful answers would

3   have had upon the insurer);  Cal. Ins. Code §§ 332 (party to insurance contract must communicate to

4   other in good faith all facts within his/her knowledge that are material and not that other does not

5   have means of ascertaining), 334 ("Materiality" is determined by "the probable and reasonable

6   influence of the facts upon the party to whom the communication is due"), 359 (rescission of

7   insurance policy available where false representation at issuance of policy was material).   Put

8   differently, the legal issue is whether the information would have made the contract less desirable to

9   the insurer. *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030, 1045-1046 (1984). *See*

10  *also Cohen v. Penn. Mutual Life Ins.*, 48 Cal. 2d 720, 734 (1957) ("Failure to disclose data which

11  would not affect the risk or the making of the insurance contract is immaterial.").   Thus, case

12  management documents are relevant to the contract interpretation issues and specifically the issue of

13  whether the omission to disclose Patient Employee's diagnosis before the policy renewal date was

14  inaccurate, a misstatement, omission, concealment, or misrepresentation, and if so, whether it was

15  **material** under general insurance law.

16        Based on the deposition testimony in this case, ABSMC is also informed and believes that

17  the case management files contain information about "exceptions" that UOO/MOO made to certain

18  alleged disclosure requirements.  MLA Dec. Ex. D, 134:5-136:3.  ABSMC is further informed and

19  believes that Defendants' case management notes contain information about patients who were not

20  disclosed during the renewal, so they may be informative about how those cases were handled,

21  whether UOO/MOO breached the policy and the covenant of good faith and fair dealing contained

22  therein by treating DJ's case differently, and whether UOO/MOO acted in accordance with their

23  current interpretation of the SRQ and policy.  *Id.*

24        Finally, the case management files are reasonably calculated to reveal evidence bearing on

25  the accuracy and credibility of Defendants' representations in response to request number 62 that

26  other than DJ and CC, Defendants have no "documents relating or referring to [their] review of

27  ABSMC stop loss claims relating to medical conditions that were not disclosed during the renewal

28  periods for policy years 2003 - 2006."

MHA

:Donough Holland & Allen PC
Attorneys at Law

1    Thus, Plaintiff submits that the requested documents will assist Plaintiff, and ultimately the

2    Court, in determining the meaning of the SRQ and materiality of the alleged requirements set forth

3    in the SRQ as to disclosure and similar "pre-conditions." *See, e.g., Freeman*, 233 F.3d 533, 536 (9th

4    Cir. 2001) (materiality determined by the probable and reasonable effect that truthful answers would

5    have had upon the insurer); *Merchants Fire Assurance Corporation*, 263 F.2d 232, 240-241 (9th Cir.

6    1959).

7    Defendants' objections to the request on grounds of overbreadth and oppression is

8    unfounded:  Defendants have refused to provide even an estimate of the number of files at issue.

9    LCM Dec. ¶ 6. Moreover, the only lists ABSMC has been able to find (documents labeled "United-

10   3524 and 3532") indicate that only 21 patients were in case management at Mutual/United as of

11   August 2005 (LCM Dec. ¶ 9 and Ex. G attached thereto), and ABSMC has offered to narrow the

12   scope of the request to the time period of 2005 and 2006.  LCM Dec. ¶ 6.

13   Defendants have refused to produce documents to these requests.  Accordingly, ABSMC

14   requests an order compelling production of the foregoing documents or responses.

15   **REQUEST FOR PRODUCTION NO. 63:**

16   Your stoploss department's exceptions log for claims submitted between January 1, 2005 and

17   December 31, 2007.

18   **MOO RESPONSE TO NO. :63**

19   Responding Party refers to and incorporates by reference the Preliminary Statement and

20   General Objections set forth above.  Responding Party further objects on the grounds that the request

21   seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

22   admissible evidence.  The request is vague and ambiguous and overly broad.  The request also seeks

23   documents containing information that is confidential, proprietary, and protected by state and federal

24   rights of privacy.

25                            **FACTUAL AND LEGAL REASONS FOR**

26                **COMPELLING FURTHER RESPONSES TO REQUEST NO. 63**

27   MOO's response to request number 63 is identical to UOO's.  To the extent that MOO intends

28   to argue that it "did not issue any stoploss insurance policies to Alta Bates and that responsive

6

MHA

:Donough Holland & Allen PC
Attorneys at Law

1  documents, if any, would be in United of Omaha's possession, custody or control," as it argued in

2  response to number 24 above, ABSMC notes that MOO and UOO are essentially the same

3  corporation. Deposition Transcript of Tom Gage ("Gage Dep."), attached to MLA Dec. as Ex. C,

4  9:14-18; *id.* 175:19-176:5 (Tom Gage of MOO and/or UOO testifying he does not recall seeing

5  United of Omaha letterhead); Deposition Transcript of Carol Tarkowski ("Tarkowski Dep.")

6  attached to MLA Dec. as Ex. D, 4:21-5:2; Deposition of Betty Coyle-Roberts ("Coyle-Roberts

7  Dep."), attached to MLA Dec. as Ex. E, 5:4-21.

8       Moreover, the person who apparently has possession, custody, or control of the exception

9  logs requested is Carol Tarkowski, Defendants' "person most knowledgeable" regarding

10  UOO's/MOO's policies and procedures with respect to rejecting stop loss claims, **who is an**

11  **employee of MOO**. Ex. D to MLA Dec., 4:21-5:2; Tarkowski Dep., MLA Dec. Ex. E, 134:5-18,

12  137:5-23  (testifying that when MOO pays a claim that it "could have denied," MOO employees

13  record it in the "exception log"). At a minimum, MOO should be compelled to state that it has

14  conducted a diligent search and made a reasonable inquiry in order to locate the requested

15  documents, and statement that the documents never existed, or are not in their possession, custody,

16  or control. *See, e.g., Kaur v. Alameida*, 2007 U.S. Dist. LEXIS 40138 (E.D. Cal. May 15, 2007);

17  *Waterbury v. Scribner*, 2008 U.S. Dist. LEXIS 53142 (E.D. Cal. May 7, 2008).

18       Because the remainder of MOO's responses to the document requests at issue is identical to

19  UOO's, the remainder of the discussion below regarding request number 63 of this separate

20  statement is identical to the discussion in the Separate Statement of Undisputed Material Facts In

21  Support Of Motion To Compel Further Responses To Plaintiff's Requests For Production Of

22  Documents As To Defendant United of Omaha Life Insurance Company.

23       ABSMC purchased stop loss insurance from Defendants for the years 2003 through 2006 to

24  cover catastrophic medical expenses for its employees. Pelkey Dec. ¶ 2. [1]  During the policy year

---

25

26  [1]  MOO contends that United of Omaha ("UOO"), not MOO, issued the stop loss policy at issue.
ABSMC contends that MOO and UOO are essentially the same corporation. The evidence supports
27  ABSMC's position.  Deposition Transcript of Tom Gage ("Gage Dep."), attached to MLA Dec. as
Ex. C, 9:14-18; *id.* 175:19-176:5 (Tom Gage of MOO and/or UOO testifying he does not recall
28  seeing United of Omaha letterhead); Deposition Transcript of Carol Tarkowski ("Tarkowski Dep.")
attached to MLA Dec. as Ex. D, 4:21-5:2; Deposition of Betty Coyle-Roberts ("Coyle-Roberts
Dep."), attached to MLA Dec. as Ex. E, 5:4-21.

1  2006, ABSMC employee "DJ" was eligible under ABSMC's plan and was covered under the policy,

2  *id.*, but Defendants refused to pay claims for medical services rendered to her, asserting that BRMS

3  "provided inaccurate information or misstated, omitted, concealed or misrepresented [a] material fact

4  or circumstance" in that DJ had been diagnosed with renal disease and heart disease in 2005, which

5  diagnoses were not disclosed before the policy renewal date of January 1, 2006. *Id.* ¶¶ 7 – 8, 10,

6  and Ex. D thereto ("Denial Letter"); MLA Dec. and Ex. C thereto, 175:19-23; 176:6-20 and ¶ 8, and

7  Ex. G thereto.

8        Plaintiff seeks discovery of documents showing UOO's/MOO's approvals, denials, analysis,

9  and handling of claims by UOO/MOO where the trigger diagnosis was not disclosed before the

10  policy renewal or issuance date. In general, the requested documents are relevant to the contract

11  interpretation issues and specifically the issue of whether the omission to disclose Patient

12  Employee's diagnosis before the policy renewal date was inaccurate, a misstatement, omission,

13  concealment, or misrepresentation, and if so, whether it was **material**. "Materiality" in this case is

14  not only in issue under the express terms of the policy, Defendants must prove that the undisclosed

15  information was material as a matter of general insurance law. *Merchants Fire Assurance*

16  *Corporation*, 263 F.2d 232, 240-241 (9th Cir. 1959); *Thompson v. Occidental Life Insurance*

17  *Company of California*, 9 Cal. 3d 904, 916 (1973). Whether a nondisclosure is "material" according

18  to insurance law depends on the probable and reasonable influence of the undisclosed facts on the

19  particular insurer. *Freeman v. Allstate Life Insurance Company*, 233 F.3d 533, 536 (9th Cir. 2001)

20  (materiality determined solely by the probable and reasonable effect which truthful answers would

21  have had upon the insurer); Cal. Ins. Code §§ 332 (party to insurance contract must communicate to

22  other in good faith all facts within his/her knowledge that are material and not that other does not

23  have means of ascertaining), 334 ("Materiality" is determined by "the probable and reasonable

24  influence of the facts upon the party to whom the communication is due"), 359 (rescission of

25  insurance policy available where false representation at issuance of policy was material). Put

26  differently, the legal issue is whether the information would have made the contract less desirable to

27  the insurer. *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030, 1045-1046 (1984). *See*

28  *also Cohen v. Penn. Mutual Life Ins.*, 48 Cal. 2d 720, 734 (1957) ("Failure to disclose data which

1    would not affect the risk or the making of the insurance contract is immaterial.").

2    Defendants' "person most knowledgeable" regarding United's policies and procedures with

3    respect to rejecting stop loss claims explained that Defendants recorded the situations in which they

4    paid claims they "could have denied," and these were recorded in an "exception log." Tarkowski

5    Dep., MLA Dec. Ex. E, 134:5-18, 137:5-23  (testifying that when Defendants pay a claim that they

6    "could have denied," they log it in the "exception log").  Accordingly, this log is reasonably

7    calculated to reveal evidence bearing on what Defendants considered an "exception" and the

8    materiality and enforceability of "requirements" set forth in Defendants' SRQs and Policies.  MOO

9    employee Carol Tarkowski testified that, in situations involving nondisclosure, she recalled "a

10    couple" of cases in 2005 where "exceptions were made" and claims were paid despite nondisclosure,

11    and " a couple" of cases in 2006 and "this year." MLA Dec. Ex. D., 38:3-39:23.

12    The log is reasonably calculated to show other exceptions that may, by analogy, reflect on

13    the materiality of the disclosure at issue here, or rebut other arguments Defendants have made.  For

14    example, an issue Defendants have raised having to do with when DJ's claims were paid to

15    providers.  The log is reasonably calculated to show whether Defendants enforced what they have

16    argued is a requirement that all claims be "paid" to providers within a certain period of time.[2]  *Id.*

17    134:19-135:8 (testifying that a situation in which insured did not pay a claim to the provider within

18    the time required by the policy, Defendants have made an "exception" and paid the claim).

19    Presumably, entries on the exception log will relate to insureds who are not parties to this

20    lawsuit.  Information about how Defendants handled other insureds' claims is relevant to how

21    Defendants and viewed and enforced the SRQ and policy because, as Defendants have confirmed

22    and represented, the SRQs and policy terms related to the SRQs were identical as to all insureds.[3]

23    Therefore, more specifically, the documents will likely show the following:

24    (1)    How UOO/MOO and/or other California insureds interpreted the phrase on which

25    Defendants relied in denying the claims at issue, i.e., that insureds are to complete and submit an

26    ///

27

---

28    [2]  Defendants have argued that for this reason, they are not responsible to pay for some of the claims in issue. MLA Dec. Ex. D, 134:5-136:3.
     [3]  MLA Dec. Ex. A, B and I.

MHA
:Donough Holland & Allen PC
Attorneys at Law

1    attachment to the SRQ that discloses all plan members who have certain diagnoses "no earlier than

2    30 days prior to the Proposed Effective Date";

3        (2)   How BRMS and/or other California insureds interpreted the phrase on which BRMS

4    relied in submitting a report on January 28, 2006 that disclosed DJ's diagnosis, i.e.,, the phrase

5    stating that "[a]s an alternative to completing Attachment A, the Applicant may attach a report(s)

6    that contain(s) the information requested for Attachment A ... within 30 days of the Proposed

7    Effective Date ....";

8        (3)   Whether UOO/MOO consistently enforced the alleged requirement that the disclosure

9    be submitted before policy renewal;

10        (4)  How important UOO/MOO considered the information to be and why;

11        (5)  The circumstances under which exceptions were made; and

12        (6)  The probable and reasonable effect that disclosure of the information would have on the

13   insurer.

14        What happened in situations other than the one at issue here is reasonably calculated to be

15   instructive on whether the undisclosed information would have made any substantive difference in

16   the policy terms.  *See, e.g., Cohen*, 48 Cal. 2d at 725 (minor ailment is not material).   The

17   information is also reasonably calculated to reveal whether Defendants relied on information of the

18   type they now complain should have been disclosed.  *DiPasqua v. California Western States Life*

19   *Insurance Company*, 106 Cal. App. 2d 281, 284-285 (1951).   Defendants' and other insureds'

20   conduct and statements are, of course, also relevant under general contract interpretation principals.

21   "The rule is well-settled that in construing the terms of a contract the construction given it by the

22   acts and conduct of the parties with knowledge of its terms, and before any controversy has arisen as

23   to its meaning, is admissible on the issue of the parties' intent."    *Southern California Edison*

24   *Company v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995) (*as modified on denial of rehg.*).

25        Furthermore, documents other than the exception log are not available to provide the

26   information Plaintiff seeks.  *Id.* 135:9-12 (testifying there are no written policies about what claims

27   or types of claims for which exceptions are made); 136:14-21 (log also shows appeals); 36:10-23;

28   38:3-39:23; 62:4-15 (claims that were paid were for less than $1,000,000); 62:15-65:3; 84:14-25

MHA
:Donough Holland & Allen PC
Attorneys at Law

10

1    (whether exceptions are made depends on facts at issue as to each case); 110:21-19:24 (testifying

2    that whether exceptions would be made depended on if nurse said that in retrospect she would have

3    increased specific deductible had she known before policy renewal).

4        The exception log is also needed to check the accuracy and credibility of Defendants'

5    representations in response to request number 62 that all responsive documents were produced.

6    MLA Dec. Ex. K.  Request number 62 asked Defendants to produce "[a]ll documents relating or

7    referring to [their] review of ABSMC stop loss claims relating to medical conditions that were not

8    disclosed during the renewal periods for policy years 2003 - 2006."  Defendants supplemented their

9    response to request number 62 on August 7, 2008, stating:  "Responding Party refers to and

10    incorporates by reference its initial response and objections and the preliminary statement and

11    general objections above.  Subject to and without waiving the foregoing objections, Responding

12    Party previously produced all responsive documents."  MLA Dec. Ex. I.  Plaintiff is concerned about

13    the accuracy and credibility of this response for the following reasons:

14        (1)  Although the supplemental response states that Defendants already produced all

15    responsive documents the Defendants' initial response, served after Defendants served most of the

16    documents in this case, states that Defendants would need to conduct, in the future, a burdensome

17    search, because there are voluminous claim files to review;

18        (2)  The preamble to Defendants' supplemental response states that the responses are based

19    on "known facts" and are "made in a good faith effort to supply as much factual information . . . as

20    are presently known, but do not in any way prejudice Responding Party in relation to further

21    discovery, research, or analysis," whereas Defendants are required to conduct a diligent search and

22    make a reasonable inquiry in order to locate the requested documents, and then state that the

23    document never existed, or is not in their possession, custody, or control, *see, e.g., Kaur v. Alameida*,

24    2007 U.S. Dist. LEXIS 40138 (E.D. Cal. May 15, 2007);  *Waterbury v. Scribner*, 2008 U.S. Dist.

25    LEXIS 53142 (E.D. Cal. May 7, 2008);

26        (3)  It is difficult to believe that Defendants "previously produced all responsive documents"

27    because Defendants refused to produce any case management files in response to request number 24,

28    LCM Dec. ¶ 2-8, although the testimony indicates that all case management notes were in hard copy

1   documents, Defendants produced only a few case management documents on the patient at issue,

2   DJ, and on another patient whose condition was not disclosed before renewal but whose claims were

3   paid, "CC,"  LCM Dec. ¶ 10;

4        (4)  It is difficult to believe that Defendants "previously produced all responsive documents"

5   because the documents on CC were produced in response to Plaintiff's specific request for such

6   documents, not in response to requests numbers 24 or 62,

7        (5)  It is difficult to believe that Defendants "previously produced all responsive documents"

8   because other than the claims involving DJ and CC, Defendants have no "documents relating or

9   referring to [their] review of ABSMC stop loss claims relating to medical conditions that were not

10  disclosed during the renewal periods for policy years 2003 - 2006"  and if true, the only logical

11  conclusions to be drawn is that Defendants did not review such claims, that they never documented

12  anything about such review, or that no claims were tendered relating to medical conditions that were

13  not disclosed during the renewal periods – conclusions that are highly unlikely given all the evidence

14  discovered in this case and described in this and Plaintiff's earlier motion to compel.

15       Accordingly, Plaintiff requests that the Court order Defendants to produce the exception log

16  on the grounds that it is reasonably calculated to reveal evidence bearing on what Defendants

17  considered an "exception" and the materiality and enforceability of "requirements" set forth in

18  Defendants' SRQs and Policies, and on the accuracy and credibility of Defendants' representations in

19  response to request number 62.

21  DATED:  August 11, 2008                    McDONOUGH HOLLAND & ALLEN PC
                                               Attorneys at Law

24                                       By: _____
                                               Marcia L. Augsburger

