MARCIA L. AUGSBURGER (SBN 145686)
LESLIE C. MURPHY (SBN 227454)
McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax:   916.444.8989

Attorneys for Plaintiff
Alta Bates Summit Medical Center

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER,<br><br>               Plaintiff,<br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY; MUTUAL OF OMAHA LIFE INSURANCE COMPANY, et al.,<br><br>               Defendants. | Case No. C 07-4224 JSW (EDL)<br><br>**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS AS TO DEFENDANT UNITED OF OMAHA LIFE INSURANCE COMPANY**<br><br>Date:        September 16, 2008<br>Time:        2:00 p.m.<br>Courtroom:   Courtroom E, 15th Floor<br>             450 Golden Gate Ave.<br>             San Francisco, CA<br><br>Magistrate Judge Elizabeth D. Laporte |

Pursuant to Federal Rule of Civil Procedure 10(b), plaintiff, Alta Bates Summit Medical Center ("ABSMC"), hereby set forth the verbatim text of each request for production of documents, the verbatim text of each objection and/or response served by defendants, United of Omaha Life Insurance Company ("UOO") and a statement of the factual and legal reasons why UOO should be compelled to serve further responses to ABSMC's document requests.

**REQUEST FOR PRODUCTION NO. 24:**

All Your Case Management file(s) for ABSMC.

///

**UOO RESPONSE TO NO. :24**

Responding Party refers to and incorporates by reference the Preliminary Statement and General Objections set forth above. Responding Party further Objects on the grounds that request is overly broad and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The request is unduly burdensome and oppressive. Responding Party objects to the request to the extent it seeks documents that are protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. The request seeks documents containing information that is confidential and proprietary and that is protected by state and federal rights to privacy.

**MOO RESPONSE TO NO. :24**

Responding Party refers to and incorporates by reference the Preliminary Statement and General Objections set forth above. Responding Party further objects to this request on the grounds that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that responsive documents, if any, would be in United of Omaha's possession, custody or control. Responding Party objects on the grounds that request is overly broad and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The request is unduly burdensome and oppressive. Responding Party objects to the request to the extent it seeks documents that are protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. The request seeks documents containing information that is confidential and proprietary and that is protected by state and federal rights to privacy.

**FACTUAL AND LEGAL REASONS FOR**

**COMPELLING FURTHER RESPONSES TO REQUEST NO. 24**

ABSMC purchased stop loss insurance from Defendants for the years 2003 through 2006 to cover catastrophic medical expenses for its employees. Declaration of Mary Pelkey filed herewith ("Pelkey Dec.") ¶ 2. During the policy year 2006, ABSMC employee "DJ" was eligible under ABSMC's plan and was covered under the policy, *id.*, but Defendants refused to pay claims for medical services rendered to her, asserting that Plaintiff's third party administrator, Benefit Risk Management Services ("BRMS") "provided inaccurate information or misstated, omitted, concealed



Plaintiff's Separate Statement of Undisputed Material Facts in Support of Motion to Compel 111 9163v4 33802/0004

or misrepresented [a] material fact or circumstance" in that DJ had been diagnosed with renal disease and heart disease in 2005, which diagnoses were not disclosed before the policy renewal date of January 1, 2006. *Id.* ¶¶ 7 – 8, 10, and Ex. D thereto ("Denial Letter"); MLA Dec. Ex. C thereto, 175:19-23; 176:6-20 and ¶ 8, and Ex. G thereto.

The phrase on which Defendants relied in denying the claims at issue was contained in Defendants' disclosure document called a "Select Risk Questionaire" ("SRQ"). Declaration of Mary Pelkey ("Pelkey Dec."), Ex. B. The SRQ states that insureds are to complete and submit an attachment to the SRQ that discloses all plan members who have certain diagnoses "no earlier than 30 days prior to the Proposed Effective Date." *Id.* BRMS relied on another phrase in submitting the SRQ and a subsequent report on January 28, 2006 that disclosed DJ's diagnosis, namely, the phrase stating that "[a]s an alternative to completing Attachment A, the Applicant may attach a report(s) that contain(s) the information requested for Attachment A ... within 30 days of the Proposed Effective Date ...." *Id*; MLA Dec. ¶ 13 and Ex. L thereto.

Plaintiff seeks discovery of documents showing UOO's/MOO's approvals, denials, analysis, and handling of claims by UOO/MOO where diagnoses were not disclosed before the policy renewal or issuance date. These documents are reasonably calculated to assist the Court in determining whether BRMS "provided inaccurate information or misstated, omitted, concealed or misrepresented [a] **material fact or circumstance**" and whether it was sufficient for BRMS to disclose DJ's diagnosis by January 28, 2006 in a separate report. Case management files are reasonably calculated to contain information bearing on all of these in that when Defendants were considering a claim for denial, case managers were consulted to determine what the probable and reasonable influence of the undisclosed facts would have had on policy terms. MLA Dec. ¶ 14 and Ex. M; LCM Ex. A, 139:16-141:25.

The influence undisclosed facts would have had on Defendants is a central issue in the case, because to justify denial of the claims, Defendants must show that the omission to disclose DJ's diagnoses before policy issuance on January 1, 2006 was **material**. *Merchants Fire Assurance Corporation v. Timore*, 263 F.2d 232, 240-241 (9th Cir. 1959); *Thompson v. Occidental Life Insurance Company of California*, 9 Cal. 3d 904, 916 (1973). Whether a nondisclosure is "material"

according to insurance law depends on the probable and reasonable influence of the undisclosed facts on the particular insurer. *Freeman v. Allstate Life Insurance Company*, 233 F.3d 533, 536 (9th Cir. 2001) (materiality determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer); Cal. Ins. Code §§ 332 (party to insurance contract must communicate to other in good faith all facts within his/her knowledge that are material and not that other does not have means of ascertaining), 334 ("Materiality" is determined by "the probable and reasonable influence of the facts upon the party to whom the communication is due"), 359 (rescission of insurance policy available where false representation at issuance of policy was material). Put differently, the legal issue is whether the information would have made the contract less desirable to the insurer. *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030, 1045-1046 (1984). *See also Cohen v. Penn. Mutual Life Ins.*, 48 Cal. 2d 720, 734 (1957) ("Failure to disclose data which would not affect the risk or the making of the insurance contract is immaterial."). Thus, case management documents are relevant to the contract interpretation issues and specifically the issue of whether the omission to disclose Patient Employee's diagnosis before the policy renewal date was inaccurate, a misstatement, omission, concealment, or misrepresentation, and if so, whether it was **material** under general insurance law.

Based on the deposition testimony in this case, ABSMC is also informed and believes that the case management files contain information about "exceptions" that UOO/MOO made to certain alleged disclosure requirements. MLA Dec. Ex. D, 134:5-136:3. ABSMC is further informed and believes that Defendants' case management notes contain information about patients who were not disclosed during the renewal, so they may be informative about how those cases were handled, whether UOO/MOO breached the policy and the covenant of good faith and fair dealing contained therein by treating DJ's case differently, and whether UOO/MOO acted in accordance with their current interpretation of the SRQ and policy. *Id.*

Finally, the case management files are reasonably calculated to reveal evidence bearing on the accuracy and credibility of Defendants' representations in response to request number 62 that other than DJ and CC, Defendants have no "documents relating or referring to [their] review of

///

1 | ABSMC stop loss claims relating to medical conditions that were not disclosed during the renewal
2 | periods for policy years 2003 - 2006."

3 Thus, Plaintiff submits that the requested documents will assist Plaintiff, and ultimately the Court, in determining the meaning of the SRQ and materiality of the alleged requirements set forth in the SRQ as to disclosure and similar "pre-conditions." *See, e.g., Freeman*, 233 F.3d 533, 536 (9th Cir. 2001) (materiality determined by the probable and reasonable effect that truthful answers would have had upon the insurer); *Merchants Fire Assurance Corporation v Timore*, 263 F.2d 232, 240-241 (9th Cir. 1959).

Defendants' objections to the request on grounds of overbreadth and oppression is unfounded: Defendants have refused to provide even an estimate of the number of files at issue. LCM Dec. ¶ 6. Moreover, the only lists ABSMC has been able to find (documents labeled "United-3524 and 3532") indicate that only 21 patients were in case management at Mutual/United as of August 2005 (LCM Dec. ¶ 9 and Ex. G attached thereto), and ABSMC has offered to narrow the scope of the request to the time period of 2005 and 2006. LCM Dec. ¶ 6.

Defendants have refused to produce documents to these requests. Accordingly, ABSMC requests an order compelling production of the foregoing documents or responses.

**REQUEST FOR PRODUCTION NO. 63:**

Your stoploss department's exceptions log for claims submitted between January 1, 2005 and December 31, 2007.

**UOO RESPONSE TO NO. :63**

Responding Party refers to and incorporates by reference the Preliminary Statement and General Objections set forth above. Responding Party further objects on the grounds that the request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The request is vague and ambiguous and overly broad. The request also seeks documents containing information that is confidential, proprietary, and protected by state and federal rights of privacy.

**MOO RESPONSE TO NO. :63**

Responding Party refers to and incorporates by reference the Preliminary Statement and


:Donough Holland & Allen PC
Attorneys at Law

Plaintiff's Separate Statement of Undisputed Material Facts in Support of Motion to Compel 111 9163v4 33802/0004

1  General Objections set forth above. Responding Party further objects on the grounds that the request
2  seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of
3  admissible evidence. The request is vague and ambiguous and overly broad. The request also seeks
4  documents containing information that is confidential, proprietary, and protected by state and federal
5  rights of privacy.

## FACTUAL AND LEGAL REASONS FOR COMPELLING FURTHER RESPONSES TO REQUEST NO. 63

ABSMC purchased stop loss insurance from Defendants for the years 2003 through 2006 to cover catastrophic medical expenses for its employees. Pelkey Dec. ¶ 2. During the policy year 2006, ABSMC employee "DJ" was eligible under ABSMC's plan and was covered under the policy, *id.*, but Defendants refused to pay claims for medical services rendered to her, asserting that BRMS "provided inaccurate information or misstated, omitted, concealed or misrepresented [a] material fact or circumstance" in that DJ had been diagnosed with renal disease and heart disease in 2005, which diagnoses were not disclosed before the policy renewal date of January 1, 2006. *Id.* ¶¶ 7 – 8, 10, and Ex. D thereto ("Denial Letter"); MLA Dec. and Ex. C thereto, 175:19-23; 176:6-20 and ¶ 8, and Ex. G thereto.

Plaintiff seeks discovery of documents showing UOO's/MOO's approvals, denials, analysis, and handling of claims by UOO/MOO where the trigger diagnosis was not disclosed before the policy renewal or issuance date. In general, the requested documents are relevant to the contract interpretation issues and specifically the issue of whether the omission to disclose Patient Employee's diagnosis before the policy renewal date was inaccurate, a misstatement, omission, concealment, or misrepresentation, and if so, whether it was **material**. "Materiality" in this case is not only in issue under the express terms of the policy, Defendants must prove that the undisclosed information was material as a matter of general insurance law. *Merchants Fire Assurance Corporation v. Timore*, 263 F.2d 232, 240-241 (9th Cir. 1959); *Thompson v. Occidental Life Insurance Company of California*, 9 Cal. 3d 904, 916 (1973). Whether a nondisclosure is "material" according to insurance law depends on the probable and reasonable influence of the undisclosed facts on the particular insurer. *Freeman v. Allstate Life Insurance Company*, 233 F.3d 533, 536 (9th

Cir. 2001) (materiality determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer); Cal. Ins. Code §§ 332 (party to insurance contract must communicate to other in good faith all facts within his/her knowledge that are material and not that other does not have means of ascertaining), 334 ("Materiality" is determined by "the probable and reasonable influence of the facts upon the party to whom the communication is due"), 359 (rescission of insurance policy available where false representation at issuance of policy was material). Put differently, the legal issue is whether the information would have made the contract less desirable to the insurer. *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030, 1045-1046 (1984). *See also Cohen v. Penn. Mutual Life Ins.*, 48 Cal. 2d 720, 734 (1957) ("Failure to disclose data which would not affect the risk or the making of the insurance contract is immaterial.").

    Defendants' "person most knowledgeable" regarding United's policies and procedures with respect to rejecting stop loss claims explained that Defendants recorded the situations in which they paid claims they "could have denied," and these were recorded in an "exception log." Tarkowski Dep., MLA Dec. Ex. E, 134:5-18, 137:5-23 (testifying that when Defendants pay a claim that they "could have denied," they log it in the "exception log"). Accordingly, this log is reasonably calculated to reveal evidence bearing on what Defendants considered an "exception" and the materiality and enforceability of "requirements" set forth in Defendants' SRQs and Policies. MOO employee Carol Tarkowski testified that, in situations involving nondisclosure, she recalled "a couple" of cases in 2005 where "exceptions were made" and claims were paid despite nondisclosure, and " a couple" of cases in 2006 and "this year." MLA Dec. Ex. D., 38:3-39:23.

    The log is reasonably calculated to show other exceptions that may, by analogy, reflect on the materiality of the disclosure at issue here, or rebut other arguments Defendants have made. For example, an issue Defendants have raised having to do with when DJ's claims were paid to providers. The log is reasonably calculated to show whether Defendants enforced what they have argued is a requirement that all claims be "paid" to providers within a certain period of time.[1] *Id.*

---

[1] Defendants have argued that for this reason, they are not responsible to pay for some of the claims in issue. MLA Dec. Ex. D, 134:5-136:3.

Plaintiff's Separate Statement of Undisputed Material Facts in Support of Motion to Compel 111 9163v4 33802/0004

134:19-135:8 (testifying that a situation in which insured did not pay a claim to the provider within the time required by the policy, Defendants have made an "exception" and paid the claim).

Presumably, entries on the exception log will relate to insureds who are not parties to this lawsuit. Information about how Defendants handled other insureds' claims is relevant to how Defendants and viewed and enforced the SRQ and policy because, as Defendants have confirmed and represented, the SRQs and policy terms related to the SRQs were identical as to all insureds.[2] Therefore, more specifically, the documents will likely show the following:

(1) How UOO/MOO and/or other California insureds interpreted the phrase on which Defendants relied in denying the claims at issue, i.e., that insureds are to complete and submit an attachment to the SRQ that discloses all plan members who have certain diagnoses "no earlier than 30 days prior to the Proposed Effective Date";

(2) How BRMS and/or other California insureds interpreted the phrase on which BRMS relied in submitting a report on January 28, 2006 that disclosed DJ's diagnosis, i.e.,, the phrase stating that "[a]s an alternative to completing Attachment A, the Applicant may attach a report(s) that contain(s) the information requested for Attachment A ... within 30 days of the Proposed Effective Date ....";

(3) Whether UOO/MOO consistently enforced the alleged requirement that the disclosure be submitted before policy renewal;

(4) How important UOO/MOO considered the information to be and why;

(5) The circumstances under which exceptions were made; and

(6) The probable and reasonable effect that disclosure of the information would have on the insurer.

What happened in situations other than the one at issue here is reasonably calculated to be instructive on whether the undisclosed information would have made any substantive difference in the policy terms. *See, e.g., Cohen*, 48 Cal. 2d at 725 (minor ailment is not material). The information is also reasonably calculated to reveal whether Defendants relied on information of the

---

[2] MLA Dec. Ex. A, B and I.

type they now complain should have been disclosed. *DiPasqua v. California Western States Life Insurance Company*, 106 Cal. App. 2d 281, 284-285 (1951). Defendants' and other insureds' conduct and statements are, of course, also relevant under general contract interpretation principals. "The rule is well-settled that in construing the terms of a contract the construction given it by the acts and conduct of the parties with knowledge of its terms, and before any controversy has arisen as to its meaning, is admissible on the issue of the parties' intent." *Southern California Edison Company v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995) (*as modified on denial of rehg.*).

Furthermore, documents other than the exception log are not available to provide the information Plaintiff seeks. *Id.* 135:9-12 (testifying there are no written policies about what claims or types of claims for which exceptions are made); 136:14-21 (log also shows appeals); 36:10-23; 38:3-39:23; 62:4-15 (claims that were paid were for less than $1,000,000); 62:15-65:3; 84:14-25 (whether exceptions are made depends on facts at issue as to each case); 110:21-19:24 (testifying that whether exceptions would be made depended on if nurse said that in retrospect she would have increased specific deductible had she known before policy renewal).

The exception log is also needed to check the accuracy and credibility of Defendants' representations in response to request number 62 that all responsive documents were produced. MLA Dec. Ex. K. Request number 62 asked Defendants to produce "[a]ll documents relating or referring to [their] review of ABSMC stop loss claims relating to medical conditions that were not disclosed during the renewal periods for policy years 2003 - 2006." Defendants supplemented their response to request number 62 on August 7, 2008, stating: "Responding Party refers to and incorporates by reference its initial response and objections and the preliminary statement and general objections above. Subject to and without waiving the foregoing objections, Responding Party previously produced all responsive documents." MLA Dec. Ex. I. Plaintiff is concerned about the accuracy and credibility of this response for the following reasons:

(1) Although the supplemental response states that Defendants already produced all responsive documents the Defendants' initial response, served after Defendants served most of the documents in this case, states that Defendants would need to conduct, in the future, a burdensome search, because there are voluminous claim files to review;

(2) The preamble to Defendants' supplemental response states that the responses are based on "known facts" and are "made in a good faith effort to supply as much factual information . . . as are presently known, but do not in any way prejudice Responding Party in relation to further discovery, research, or analysis," whereas Defendants are required to conduct a <u>diligent search and make a reasonable inquiry in order to locate the requested documents, and then state that the document never existed, or is not in their possession, custody, or control</u>, *see, e.g., Kaur v. Alameida*, 2007 U.S. Dist. LEXIS 40138 (E.D. Cal. May 15, 2007); *Waterbury v. Scribner*, 2008 U.S. Dist. LEXIS 53142 (E.D. Cal. May 7, 2008;

(3) It is difficult to believe that Defendants "previously produced all responsive documents" because Defendants refused to produce any case management files in response to request number 24, LCM Dec. ¶ 2-8, although the testimony indicates that all case management notes were in hard copy documents, Defendants produced only a few case management documents on the patient at issue, DJ, and on another patient whose condition was not disclosed before renewal but whose claims were paid, "CC," LCM Dec. ¶ 10;

(4) It is difficult to believe that Defendants "previously produced all responsive documents" because the documents on CC were produced in response to Plaintiff's specific request for such documents, not in response to requests numbers 24 or 62,

(5) It is difficult to believe that Defendants "previously produced all responsive documents" because other than the claims involving DJ and CC, Defendants have no "documents relating or referring to [their] review of ABSMC stop loss claims relating to medical conditions that were not disclosed during the renewal periods for policy years 2003 - 2006" and if true, the only logical conclusions to be drawn is that Defendants did not review such claims, that they never documented anything about such review, or that no claims were tendered relating to medical conditions that were not disclosed during the renewal periods – conclusions that are highly unlikely given all the evidence discovered in this case and described in this and Plaintiff's earlier motion to compel.

Accordingly, Plaintiff requests that the Court order Defendants to produce the exception log on the grounds that it is reasonably calculated to reveal evidence bearing on what Defendants considered an "exception" and the materiality and enforceability of "requirements" set forth in

Defendants' SRQs and Policies, and on the accuracy and credibility of Defendants' representations in response to request number 62.

DATED: August 11, 2008

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law

By: _____
Marcia L. Augsburger