1  MARCIA L. AUGSBURGER (SBN 145686)
   LESLIE C. MURPHY (SBN 227454)
2  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
3  555 Capitol Mall, 9th Floor
   Sacramento, CA 95814
4  Phone: 916.444.3900
   Fax:   916.444.8989
5
   Attorneys for Plaintiff
6  Alta Bates Summit Medical Center

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 ALTA BATES SUMMIT MEDICAL         )  Case No. C 07-4224 JSW (EDL)
   CENTER,                           )
12                                   )
                    Plaintiff,       )  **DECLARATION OF MARY PELKEY IN
13    v.                             )  SUPPORT OF MOTION TO COMPEL
                                     )  FURTHER RESPONSES TO PLAINTIFF'S
14 UNITED OF OMAHA LIFE INSURANCE    )  REQUEST FOR PRODUCTION OF
   COMPANY; MUTUAL OF OMAHA LIFE     )  DOCUMENTS.**
15 INSURANCE COMPANY, et al.,        )
                                     )  Date:      September 16, 2008
16                  Defendants.      )  Time:      2:00 p.m.
                                     )  Courtroom: Courtroom E, 15th Floor
17                                   )             450 Golden Gate Ave.
                                     )             San Francisco, CA
18                                   )
                                     )  Magistrate Judge Elizabeth D. Laporte
19                                   )

20

21

22

23

24

25

26

27

28

```
1  MARCIA L. AUGSBURGER (SBN 145686)
   LESLIE C. MURPHY (SBN 227454)
2  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
3  555 Capitol Mall, 9th Floor
   Sacramento, CA  95814
4  Phone: 916.444.3900
   Fax:   916.444.8989
5
   Attorneys for Plaintiff
6  Alta Bates Summit Medical Center
```

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER, <br><br> Plaintiff, <br><br> v. <br><br> UNITED OF OMAHA LIFE INSURANCE COMPANY; MUTUAL OF OMAHA LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Case No. C 07-4224 JSW (EDL) <br><br> **DECLARATION OF MARY PELKEY** <br><br> Complaint Filed: July 19, 2007 |

I, Mary Pelkey, declare:

1. I am the Director of Benefits and Disability Management for Alta Bates Summit Medical Center ("ABSMC"). This declaration is made and based upon facts personally known to me, and if called upon as a witness to do so, I could and would competently testify as to their truth.

2. ABSMC is a non-profit public benefit corporation that operates an acute care hospital. At all times since 2003, ABSMC was self-insured for health care, i.e., ABSMC provided health benefits to its employees through a self-insured plan.

3. ABSMC purchased stop loss insurance to cover catastrophic medical expenses for its employees. For the years 2003 through 2006, ABSMC purchased stop loss insurance from United of Omaha ("United") or Mutual of Omaha ("Mutual"). At all times when I was involved in the purchase of stop loss insurance (for calendar years 2005, and 2006), I believed ABSMC was



Mary Pelkey's Declaration                                                                                          1120050v2 33802/0004

dealing with Mutual of Omaha and that references in the policy to "United of Omaha" indicated only that Mutual and United of Omaha were so closely affiliated as to be essentially the same company. In fact, Mutual of Omaha's name and address is on the documents I reviewed in connection with the 2005 and 2006 policies, and ABSMC's agents and brokers indicated to us that United of Omaha was essentially the same company as Mutual of Omaha.

4. A true and correct copy of the stop loss policy that covered the employee at issue in this case is attached hereto as Exhibit A ("the Policy"). For privacy reasons, I will refer to the employee as "DJ." The policy was not negotiated between ABSMC and United or Mutual – we were only given the option to accept or decline the terms as United/Mutual stated them. At no time did anyone from United or Mutual contact me, or to my knowledge, contact anyone at ABSMC, to discuss policy terms or conditions.

5. The stoploss insurance that is the subject of the Policy was to cover a percentage of ABSMC's costs over a "Specific Deductible" for medical care rendered to ABSMC employees. The monthly premiums for this coverage were calculated by multiplying a per member per month figure times the number of ABSMC employees who were eligible for coverage under ABMSC's self-insured plan and covered under the Policy. During the policy year 2006, ABSMC employee DJ was eligible under ABSMC's self-insured plan, and, as far as ABSMC knew, was also covered under the Policy.

6. ABSMC paid and United/Mutual accepted premium payments attributable to DJ at all times in 2006.

7. Unbeknownst to me until this lawsuit, DJ was diagnosed in 2005 with renal disease.

8. Because of the employer-employee relationship between ABSMC and its insured employees, I make every effort to distance myself from health information about ABSMC employees. That is one reason ABSMC hired a third party administrator ("TPA"), Benefit Risk Management Services ("BRMS"), and broker ABD ("ABD") to handle claim administration and submission and policy renewals. Thus, the information that was provided to United/Mutual regarding ABMSC's employees' health was not generated by ABSMC but by its TPA, and ABMSC had no way of generating information about ABSMC's employees' health or medical conditions.

9. I signed the Select Risk Questionnaire ("SRQ") that was submitted to United/Mutual in preparation for the Policy renewal. A copy is attached hereto as Exhibit B. Before I signed and returned the SRQ to BRMS, I contacted BRMS and ABD to confirm that best efforts had been made to address the questions in the SRQ and that it was accurate to the best of their knowledge. I signed and submitted the SRQ when BRMS and ABD provided this confirmation.

10. During the 2006 Policy period, ABSMC paid medical expenses for treatment rendered to DJ in excess of $1,800,000. By July 21, 2006, plan benefits that ABSMC paid on her behalf totaled in excess of $580,000. On or about July 21, 2006, on ABSMC's behalf and at its direction, BRMS sent a Specific Reimbursement Request Form to United/Mutual, requesting reimbursement of United's/Mutual's portion of these payments under the Policy. A copy of the July Specific Reimbursement Request Form that BRMS advised it had sent to United/Mutual is attached hereto as Exhibit C. I am informed that by letter addressed to BRMS dated August 2, 2006, United/Mutual denied coverage, claiming that BRMS "provided inaccurate information or misstated, omitted, concealed or misrepresented [a] material fact or circumstance" in that DJ's 2005 diagnoses of heart and renal disease was not disclosed before the policy was issued. I am further informed and believe that the letter attached here to as Exhibit D is the August 2, 2006 denial letter.

11. When this lawsuit was filed, we did not have knowledge of certain facts that we recently learned through discovery. I am informed that the depositions of Mutual employees Claudia Wells, Patricia Swank, Tom Gage, Carol Tarkowsky, and Betty Coyle Roberts were taken in Omaha, Nebraska beginning June 25, 2008 and concluding on July 24, 2008. I am also informed that the depositions of Deanne Prefling and Matt Schafer were conducted on July 29 and 30, 2008. Upon conclusion of this discovery, to our surprise, we learned various facts that we now believe support a claim against United and Mutual for bad faith, fraud, and unfair business practices.

12. Specifically, we learned after the foregoing depositions were concluded, for the first time, that United/Mutual not only knew about DJ's diagnosis of renal disease on January 28, 2006, and accepted premiums thereafter for her without ever indicating that they would deny coverage for failure to disclose, but that United/Mutual was actively involved in the management of her case by

MHA
nough Holland & Allen PC
Attorneys at Law

Mary Pelkey's Declaration

3

1120050v2 33802/0004

1  February, 2006. Furthermore, we did not understand the extent to which United/Mutual had
2  represented to BRMS that it would not require BRMS to disclose diagnoses of serious illnesses.

3      13. We also learned that United/Mutual arbitrarily, and for pecuniary gain, chose to deny
4  DJ's claim when it paid claims for another ABSMC employee patient, "CC," whose diagnosis was
5  known to BRMS before January 1, 2006 but not disclosed. The arbitrary nature of this decision,
6  and considerations upon which it was based, are still being revealed to us as United/Mutual
7  provides us with information as part of negotiations our attorney is attempting to go through with
8  United/Mutual counsel in an effort to avoid motions to compel.

9      14. In addition, we learned that the individual who denied the claim for medical services
10 rendered to DJ was not with United's/Mutual's stop loss claims department – which ordinarily
11 makes the determination whether to pay or deny stop loss claims – but was part of Mutual's auditing
12 department, which was an active participant in internal efforts at United/Mutual to "fire" ABSMC's
13 TPA, BRMS. After denying the claims, United/Mutual priced renewal of stoploss insurance at such
14 a high amount as to ensure that none of BRMS's clients, including ABMSC, would not renew with
15 United/Mutual.

16     15. We also received the report of the expert ABSMC retained in this case to evaluate the
17 case, and learned that based on the facts recently discovered, in his opinion United/Mutual acted in
18 bad faith in denying the claims for services provided to DJ.

19     16. Finally, as this lawsuit has proceeded, our ability to pursue ABSMC's claims has been
20 hampered by United/Mutual's refusals to produce relevant documents to assist us in discovering the
21 wrongdoing underlying this case, and by United/Mutual's unwillingness to cooperate with
22 reasonable requests for cooperation and professional courtesy. ABSMC considers this conduct to
23 be further evidence of United's/Mutual's bad faith.

24     17. Based on the foregoing newly discovered evidence, we have instructed our counsel to
25 seek to amend the complaint to plead more causes of action than just Breach of Contract. We
26 believe the facts and discovery performed in this case support not only the Breach of Contract cause
27 of action, but also support claims of fraud, unfair business practices, and other claims. Moreover,
28 ABSMC's damages are mounting, and ABMSC believes that punitive damages are warranted in

MHA
Hough Holland & Allen PC
Attorneys at Law

4

Mary Pelkey's Declaration

1120050v2 33802/0004

order to deter United/Mutual from subjecting other self-insured persons and entities to the same treatment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was executed on August 8, 2008, at Sacramento, California.

*Mary Pelkey* (signature)
Mary Pelkey