Exhibit A

1  J. Russell Stedman (117130), rstedman@barwol.com
   Travis R. Wall (191662), twall@barwol.com
2  BARGER & WOLEN LLP
   650 California Street, 9th Floor
3  San Francisco, California  94108-2713
   Telephone:  (415) 434-2800
4  Facsimile:  (415) 434-2533

5  Attorneys for Defendants
   UNITED OF OMAHA LIFE INSURANCE
6  COMPANY and MUTUAL OF OMAHA
   INSURANCE COMPANY

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  ALTA BATES SUMMIT MEDICAL          )   CASE NO.:  C 07 4224 JSW
    CENTER,                            )
12                                     )   DEFENDANT UNITED OF OMAHA LIFE
                    Plaintiff,         )   INSURANCE COMPANY'S RESPONSES
13                                     )   TO PLAINTIFF'S FIRST SET OF
         vs.                           )   REQUESTS FOR PRODUCTION OF
14                                     )   DOCUMENTS
    UNITED OF OMAHA LIFE INSURANCE     )
15  COMPANY and MUTUAL OF OMAHA        )   Complaint Filed:  July 19, 2007
    INSURANCE COMPANY,                 )
16                                     )
                    Defendants.        )
17  _____   )

18

19  PROPOUNDING PARTY:   Plaintiff ALTA BATES SUMMIT MEDICAL CENTER

20  RESPONDING PARTY:    Defendant UNITED OF OMAHA LIFE INSURANCE COMPANY

21  SET NO.:             One

22              **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

23         Defendant UNITED OF OMAHA LIFE INSURANCE COMPANY (hereinafter

24  "Responding Party") has not fully completed its investigation into the facts relating to this case, has

25  not completed discovery, and has not completed its preparation for trial.  Each of the responses

26  contained herein is based only upon such information and documents that are presently available to

27  and specifically known and available to Responding Party.  Responding Party anticipates that

28

DEFENDANT UNITED OF OMAHA LIFE INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO.:  C 07 4224

1     <u>REQUEST FOR PRODUCTION NO. 24</u>

2        All Your Case Management file(s) for ABSMC.

3     <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 24</u>

4        Responding Party refers to and incorporates by reference the Preliminary Statement and

5     General Objections set forth above.  Responding Party further objects on the grounds that request is

6     overly broad and seeks documents that are irrelevant and not reasonably calculated to lead to the

7     discovery of admissible evidence.  The request is unduly burdensome and oppressive.  Responding

8     Party objects to the request to the extent it seeks documents that are protected by the attorney-client

9     privilege, the attorney work product doctrine, or any other applicable privilege.  The request seeks

10     documents containing information that is confidential and proprietary and that is protected by state

11     and federal rights to privacy.

12     <u>REQUEST FOR PRODUCTION NO. 25</u>

13        All Documents referring or relating to ABSMC, excluding claims documents submitted to

14     You by BRMS.

15     <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 25</u>

16        Responding Party refers to and incorporates by reference the Preliminary Statement and

17     General Objections set forth above.  Responding Party objects on the grounds that the request is

18     vague, ambiguous, and overly broad, seeks documents that are irrelevant and not reasonably

19     calculated to lead to the discovery of admissible evidence, and fails to describe each item or

20     category with reasonable particularity.  The request is unduly burdensome and oppressive.

21     Responding Party also objects to the request to the extent it seeks documents that are protected by

22     the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

23     The request seeks documents containing information that is confidential and proprietary and that is

24     protected by state and federal rights to privacy.

25

26

27

28

-15-

DEFENDANT UNITED OF OMAHA LIFE INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO.:  C 07 4224

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

1  RESPONSE TO REQUEST FOR PRODUCTION NO. 50

2      Responding Party refers to and incorporates by reference the Preliminary Statement and

3  General Objections set forth above.  Responding Party further objects on the grounds that the

4  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

5  admissible evidence.  The request also seeks documents containing information that is confidential

6  and proprietary and that is protected by state and federal rights to privacy.

7  REQUEST FOR PRODUCTION NO. 51

8      All policies of stoploss insurance You extended to self-insured health plans for medical

9  services rendered to the insured's/s' employees in California from 2003 through the present.

10  RESPONSE TO REQUEST FOR PRODUCTION NO. 51

11      Responding Party refers to and incorporates by reference the Preliminary Statement and

12  General Objections set forth above.  Responding Party further objects on the grounds that the

13  request is overly broad and seeks documents that are irrelevant and not reasonably calculated to lead

14  to the discovery of admissible evidence.  The request is unduly burdensome and oppressive.

15  Responding Party also objects on the grounds that the request seeks documents containing

16  information that is confidential and proprietary and that is protected by state and federal rights of

17  privacy.

18  REQUEST FOR PRODUCTION NO. 52

19      All Documents reflecting or constituting denials of stoploss claims by You for California

20  insureds based on failure to timely disclose trigger diagnoses.

21  RESPONSE TO REQUEST FOR PRODUCTION NO. 52

22      Responding Party refers to and incorporates by reference the Preliminary Statement and

23  General Objections set forth above.  Responding Party further objects on the grounds that the

24  request is overly broad and seeks documents that are irrelevant and not reasonably calculated to lead

25  to the discovery of admissible evidence.  The request is unduly burdensome and oppressive.

26  Responding Party also objects on the grounds that the request seeks documents containing

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  J. Russell Stedman (117130), rstedman@barwol.com
   Travis R. Wall (191662), twall@barwol.com
2  Donielle M. Colich (253750), dcolich@barwol.com
   BARGER & WOLEN LLP
3  650 California Street, 9th Floor
   San Francisco, California  94108-2713
4  Telephone:  (415) 434-2800
   Facsimile:  (415) 434-2533
5
6  Attorneys for Defendants
   UNITED OF OMAHA LIFE INSURANCE
7  COMPANY and MUTUAL OF OMAHA
   INSURANCE COMPANY
8
9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  ALTA BATES SUMMIT MEDICAL            )  CASE NO.:  C 07 4224 JSW
    CENTER,                              )
13                                       )  **DEFENDANT UNITED OF OMAHA LIFE
               Plaintiff,                )  INSURANCE COMPANY'S RESPONSES
14                                       )  TO PLAINTIFF'S SECOND SET OF
          vs.                            )  REQUESTS FOR PRODUCTION OF
15                                       )  DOCUMENTS**
    UNITED OF OMAHA LIFE INSURANCE       )
16  COMPANY and MUTUAL OF OMAHA          )  Complaint Filed:  July 19, 2007
    INSURANCE COMPANY,                   )
17                                       )
               Defendants.               )
18  _____)

19

20  PROPOUNDING PARTY:   Plaintiff ALTA BATES SUMMIT MEDICAL CENTER

21  RESPONDING PARTY:    Defendant UNITED OF OMAHA LIFE INSURANCE COMPANY

22  SET NO.:             Two

23         **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

24         Defendant UNITED OF OMAHA LIFE INSURANCE COMPANY (hereinafter

25  "Responding Party") has not fully completed its investigation into the facts relating to this case, has

26  not completed discovery, and has not completed its preparation for trial.  Each of the responses

27  contained herein is based only upon such information and documents that are presently available to

28  and specifically known and available to Responding Party.  Responding Party anticipates that

1  RESPONSE TO REQUEST FOR PRODUCTION NO. 60

2       Responding Party refers to and incorporates by reference the Preliminary Statement and

3  General Objections set forth above.  The request is also vague and ambiguous.  Subject to and

4  without waiving the foregoing objections, Responding Party has not been able to locate any

5  responsive documents.

6  REQUEST FOR PRODUCTION NO. 61

7       All contracts effective January 1, 2004 through December 31, 2007 between You and third

8  party administrators operating within the state of California.

9  RESPONSE TO REQUEST FOR PRODUCTION NO. 61

10      Responding Party refers to and incorporates by reference the Preliminary Statement and

11 General Objections set forth above.  Responding Party further objects on the grounds that the

12 request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

13 admissible evidence.  The request also seeks documents containing information that is confidential

14 and proprietary.

15 REQUEST FOR PRODUCTION NO. 62

16      All documents relating or referring to Your review of ABSMC stop loss claims relating to

17 medical conditions that were not disclosed during the renewal periods for policy years 2003 – 2006.

18 RESPONSE TO REQUEST FOR PRODUCTION NO. 62

19      Responding Party refers to and incorporates by reference the Preliminary Statement and

20 General Objections set forth above.  Responding Party further objects on the grounds that the

21 request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

22 admissible evidence.  The request is a vague and ambiguous and overly broad.  The request also

23 seeks documents containing information that is confidential, proprietary, and protected by state and

24 federal rights of privacy.  The request is also burdensome and oppressive since it would require a

25 manual review of all claims files since 2003.

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT UNITED OF OMAHA LIFE INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO.: C 07 4224

1   REQUEST FOR PRODUCTION NO. 63

2       Your stoploss department's exceptions log for claims submitted between January 1, 2005

3   and December 31, 2007.

4   RESPONSE TO REQUEST FOR PRODUCTION NO. 63

5       Responding Party refers to and incorporates by reference the Preliminary Statement and

6   General Objections set forth above. Responding Party further objects on the grounds that the

7   request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

8   admissible evidence. The request also seeks documents containing information that is confidential

9   and proprietary and that is protected by state and federal rights to privacy.

10  REQUEST FOR PRODUCTION NO. 64

11      All denials of stoploss claims submitted between January 1, 2005 and December 31, 2007

12  by all TPAs operating in California where the denials were based on failure to disclose trigger

13  diagnoses.

14  RESPONSE TO REQUEST FOR PRODUCTION NO. 64

15      Responding Party refers to and incorporates by reference the Preliminary Statement and

16  General Objections set forth above. Responding Party further objects on the grounds that the

17  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

18  admissible evidence. The request also seeks documents containing information that is confidential

19  and proprietary. Subject to and without waiving the foregoing objections, Responding Party has not

20  been able to locate any responsive documents.

21  REQUEST FOR PRODUCTION NO. 65

22      All executed select risk questionnaires, including attachments, submitted to You for the

23  2005-2006 policy years for policy holders in California.

24  RESPONSE TO REQUEST FOR PRODUCTION NO. 65

25      Responding Party refers to and incorporates by reference the Preliminary Statement and

26  General Objections set forth above. Responding Party further objects on the grounds that the

27  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

28

-8-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

Exhibit B

1    J. Russell Stedman (117130), rstedman@barwol.com
     Travis R. Wall (191662), twall@barwol.com
2    BARGER & WOLEN LLP
     650 California Street, 9th Floor
3    San Francisco, California  94108-2713
     Telephone:  (415) 434-2800
4    Facsimile:  (415) 434-2533

5    Attorneys for Defendants
     UNITED OF OMAHA LIFE INSURANCE
6    COMPANY and MUTUAL OF OMAHA
     INSURANCE COMPANY

7

8                 **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11    ALTA BATES SUMMIT MEDICAL      )   CASE NO.:  C 07 4224 JSW
     CENTER,                               )
12                                    )   **DEFENDANT MUTUAL OF OMAHA**
             Plaintiff,            )   **INSURANCE COMPANY'S RESPONSES**
13                                    )   **TO PLAINTIFF'S FIRST SET OF**
        vs.                       )   **REQUESTS FOR PRODUCTION OF**
14                                    )   **DOCUMENTS**
     UNITED OF OMAHA LIFE INSURANCE   )
15    COMPANY and MUTUAL OF OMAHA    )
     INSURANCE COMPANY,          )   Complaint Filed: July 19, 2007
16                                    )
            Defendants.         )
17    _____ )

18

19    PROPOUNDING PARTY:    Plaintiff ALTA BATES SUMMIT MEDICAL CENTER

20    RESPONDING PARTY:      Defendant MUTUAL OF OMAHA INSURANCE COMPANY

21    SET NO.:                 One

22            **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

23          Defendant MUTUAL OF OMAHA INSURANCE COMPANY (hereinafter

24    "Responding Party" or "Mutual of Omaha") has not fully completed its investigation into the facts

25    relating to this case, has not completed discovery, and has not completed its preparation for trial.

26    Each of the responses contained herein is based only upon such information and documents that are

27    presently available to and specifically known and available to Responding Party.  Responding Party

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO.: C 07 4224

1  item or category with reasonable particularity.  As phrased, the request is unduly burdensome and

2  oppressive.  Responding Party objects to the request to the extent it seeks documents that are

3  protected by the attorney-client privilege, the attorney work product doctrine, or any other

4  applicable privilege.  The request seeks documents containing information that is confidential and

5  proprietary and that is protected by state and federal rights to privacy.

6  REQUEST FOR PRODUCTION NO. 24

7      All Your Case Management file(s) for ABSMC.

8  RESPONSE TO REQUEST FOR PRODUCTION NO. 24

9      Responding Party refers to and incorporates by reference the Preliminary Statement and

10  General Objections set forth above.  Responding Party further objects to this request on the grounds

11  that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that

12  responsive documents, if any, would be in United of Omaha's possession, custody or control.

13  Responding Party objects on the grounds that request is overly broad and seeks documents that are

14  irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The

15  request is unduly burdensome and oppressive.  Responding Party objects to the request to the extent

16  it seeks documents that are protected by the attorney-client privilege, the attorney work product

17  doctrine, or any other applicable privilege.  The request seeks documents containing information

18  that is confidential and proprietary and that is protected by state and federal rights to privacy.

19  REQUEST FOR PRODUCTION NO. 25

20      All Documents referring or relating to ABSMC, excluding claims documents submitted to

21  You by BRMS.

22  RESPONSE TO REQUEST FOR PRODUCTION NO. 25

23      Responding Party refers to and incorporates by reference the Preliminary Statement and

24  General Objections set forth above.  Responding Party further objects to this request on the grounds

25  that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that

26  responsive documents, if any, would be in United of Omaha's possession, custody or control.

27  Responding Party objects on the grounds that the request is vague, ambiguous, and overly broad,

28

-15-

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that

2   responsive documents, if any, would be in United of Omaha's possession, custody or control.

3   Responding Party objects on the grounds that the request seeks documents that are irrelevant and

4   not reasonably calculated to lead to the discovery of admissible evidence.  The request also seeks

5   documents containing information that is confidential and proprietary and that is protected by

6   federal and state rights to privacy.

7   <u>REQUEST FOR PRODUCTION NO. 50</u>

8       All financial statements, including but not limited to profit and loss statements, relating to

9   the '06 SL Policy.

10   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 50</u>

11       Responding Party refers to and incorporates by reference the Preliminary Statement and

12   General Objections set forth above.  Responding Party further objects to this request on the grounds

13   that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that

14   responsive documents, if any, would be in United of Omaha's possession, custody or control.

15   Responding Party objects on the grounds that the request seeks documents that are irrelevant and

16   not reasonably calculated to lead to the discovery of admissible evidence.  The request also seeks

17   documents containing information that is confidential and proprietary and that is protected by

18   federal and state rights to privacy.

19   <u>REQUEST FOR PRODUCTION NO. 51</u>

20       All policies of stoploss insurance You extended to self-insured health plans for medical

21   services rendered to the insured's/s' employees in California from 2003 through the present.

22   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 51</u>

23       Responding Party refers to and incorporates by reference the Preliminary Statement and

24   General Objections set forth above.  Responding Party further objects to this request on the grounds

25   that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates.  Responding Party

26   objects on the grounds that the request is overly broad and seeks documents that are irrelevant and

27   not reasonably calculated to lead to the discovery of admissible evidence.  The request is unduly

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   burdensome and oppressive.  Responding Party also objects on the grounds that the request seeks

2   documents containing information that is confidential and proprietary and that is protected by state

3   and federal rights of privacy.  Mutual of Omaha did not extend any stoploss policies to self-insured

4   health plans for medical services rendered to the insured's/s' employees in California from 2003

5   through the present.  Subject to and without waiving the foregoing objections, there are no

6   responsive documents.

7   REQUEST FOR PRODUCTION NO. 52

8        All Documents reflecting or constituting denials of stoploss claims by You for California

9   insureds based on failure to timely disclose trigger diagnoses.

10   RESPONSE TO REQUEST FOR PRODUCTION NO. 52

11        Responding Party refers to and incorporates by reference the Preliminary Statement and

12   General Objections set forth above.  Responding Party further objects to this request on the grounds

13   that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates.  Responding Party

14   objects on the grounds that the request is overly broad and seeks documents that are irrelevant and

15   not reasonably calculated to lead to the discovery of admissible evidence.  The request is unduly

16   burdensome and oppressive.  Responding Party also objects on the grounds that the request seeks

17   documents containing information that is confidential and proprietary and that is protected by state

18   and federal rights of privacy.

19   REQUEST FOR PRODUCTION NO. 53

20        All Documents reflecting, constituting, or evidencing Your internal policies and procedures

21   for processing ABSMC stoploss claims in 2003-2006, including but not limited to claim approval,

22   claim denial, review and handling of claims relating to patients with end-stage renal disease, and

23   application of policy exclusions.

24   RESPONSE TO REQUEST FOR PRODUCTION NO. 53

25        Responding Party refers to and incorporates by reference the Preliminary Statement and

26   General Objections set forth above.  Responding Party further objects to this request on the grounds

27   that Mutual of Omaha did not issue any stoploss insurance policies to Alta Bates and that

28                                         -27-

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO.:  C 07 4224

J. Russell Stedman (117130), rstedman@barwol.com
Travis R. Wall (191662), twall@barwol.com
Donielle M. Colich (253750), dcolich@barwol.com
BARGER & WOLEN LLP
650 California Street, 9th Floor
San Francisco, California  94108-2713
Telephone:  (415) 434-2800
Facsimile:  (415) 434-2533

Attorneys for Defendants
UNITED OF OMAHA LIFE INSURANCE
COMPANY and MUTUAL OF OMAHA
INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED OF OMAHA LIFE INSURANCE COMPANY and MUTUAL OF OMAHA INSURANCE COMPANY, <br><br> Defendants. | CASE NO.:  C 07 4224 JSW <br><br> **DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** <br><br> Complaint Filed:  July 19, 2007 |

PROPOUNDING PARTY:   Plaintiff ALTA BATES SUMMIT MEDICAL CENTER

RESPONDING PARTY:    Defendant MUTUAL OF OMAHA INSURANCE COMPANY

SET NO.:          Two

### PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

Defendant MUTUAL OF OMAHA INSURANCE COMPANY (hereinafter "Responding Party") has not fully completed its investigation into the facts relating to this case, has not completed discovery, and has not completed its preparation for trial.  Each of the responses contained herein is based only upon such information and documents that are presently available to and specifically known and available to Responding Party.  Responding Party anticipates that

1  REQUEST FOR PRODUCTION NO. 60

2      All documents relating or referring to appointments of BRMS as a third party administrator.

3  RESPONSE TO REQUEST FOR PRODUCTION NO. 60

4      Responding Party refers to and incorporates by reference the Preliminary Statement and

5  General Objections set forth above.  The request is also vague and ambiguous.  Subject to and

6  without waiving the foregoing objections, Responding Party has not been able to locate any

7  responsive documents.

8  REQUEST FOR PRODUCTION NO. 61

9      All contracts effective January 1, 2004 through December 31, 2007 between You and third

10  party administrators operating within the state of California.

11  RESPONSE TO REQUEST FOR PRODUCTION NO. 61

12      Responding Party refers to and incorporates by reference the Preliminary Statement and

13  General Objections set forth above.  Responding Party further objects on the grounds that the

14  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

15  admissible evidence.  The request also seeks documents containing information that is confidential

16  and proprietary.

17  REQUEST FOR PRODUCTION NO. 62

18      All documents relating or referring to Your review of ABSMC stop loss claims relating to

19  medical conditions that were not disclosed during the renewal periods for policy years 2003 – 2006.

20  RESPONSE TO REQUEST FOR PRODUCTION NO. 62

21      Responding Party refers to and incorporates by reference the Preliminary Statement and

22  General Objections set forth above.  Responding Party further objects on the grounds that the

23  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

24  admissible evidence.  The request is a vague and ambiguous and overly broad.  The request also

25  seeks documents containing information that is confidential, proprietary, and protected by state and

26  federal rights of privacy.  The request is also burdensome and oppressive as it would require the

27  manual review of claims files since 2003.

28

JARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

DEFENDANT MUTUAL OF OMAHA INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S
SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
CASE NO.:  C 07 4224

1   REQUEST FOR PRODUCTION NO. 63

2       Your stoploss department's exceptions log for claims submitted between January 1, 2005

3   and December 31, 2007.

4   RESPONSE TO REQUEST FOR PRODUCTION NO. 63

5       Responding Party refers to and incorporates by reference the Preliminary Statement and

6   General Objections set forth above. Responding Party further objects on the grounds that the

7   request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

8   admissible evidence. The request also seeks documents containing information that is confidential

9   and proprietary and that is protected by state and federal rights to privacy.

10  REQUEST FOR PRODUCTION NO. 64

11      All denials of stoploss claims submitted between January 1, 2005 and December 31, 2007

12  by all TPAs operating in California where the denials were based on failure to disclose trigger

13  diagnoses.

14  RESPONSE TO REQUEST FOR PRODUCTION NO. 64

15      Responding Party refers to and incorporates by reference the Preliminary Statement and

16  General Objections set forth above. Responding Party further objects on the grounds that the

17  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

18  admissible evidence. The request also seeks documents containing information that is confidential

19  and proprietary. Subject to and without waiving the foregoing objections, Responding Party has not

20  been able to locate any responsive documents.

21  REQUEST FOR PRODUCTION NO. 65

22      All executed select risk questionnaires, including attachments, submitted to You for the

23  2005-2006 policy years for policy holders in California.

24  RESPONSE TO REQUEST FOR PRODUCTION NO. 65

25      Responding Party refers to and incorporates by reference the Preliminary Statement and

26  General Objections set forth above. Responding Party further objects on the grounds that the

27  request seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of

28

-8-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

Exhibit C

```
1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
2

3    ALTA BATES SUMMIT MEDICAL      )
     CENTER,                        )
4                                   )
          Plaintiff,                )
5                                   )
               -vs-                 )Case#C07-4224 JSW
6                                   )
     UNITED OF OMAHA LIFE           )
7    INSURANCE COMPANY, et al.,     )
                                    )        DEPOSITION
8         Defendants.               )
                                    )
9    _____)

10

11            *** CONFIDENTIAL ***

12

13            DEPOSITION OF TOM GAGE

14

15            Deposition of TOM GAGE, taken on

16   behalf of the Plaintiff, at Erickson &

17   Sederstrom, 10330 Regency Parkway Drive,

18   Suite 100, Omaha, Nebraska, beginning at

19   8:26 a.m., Thursday, June 26, 2008, before

20   Bobbi M. Randall, RPR, CSR, a General Notary

21   Public within and for the State of Nebraska,

22   pursuant to Notice.

23
              BOBBI M. RANDALL, RPR, CSR
24       MATHESON-TAULBORG-DENNEY-SCHLEIFE
            7602 Pacific Street, LL101
25             Omaha, NE  68114
               (402) 397-9669          ORIGINAL
```

APPEARANCES

For the Plaintiff:

MARCIA L. AUGSBURGER
LESLIE C. MURPHY
Attorneys at Law
Ninth Floor
555 Capitol Mall
Sacramento, CA  95814

For the Defendants:

TRAVIS WALL
Attorney at Law
Ninth Floor
650 California Street
San Francisco, CA  94108

DAVID A. BARRON
Attorney at Law
Mutual of Omaha Plaza
Omaha, NE  68175

INDEX

TOM GAGE                                              Page

Direct Examination by Ms. Augsburger            4

Certificate                                          221

EXHIBITS:                                         Marked
44 - January 29, 2003, email from
     J. Mueller
                                                  124

89 - Report of Evaluation of Benefit &
     Risk Management Services (Tantara)   117

90 - February 8, 2001, letter to S. Reid   117

91 - March 2004 email string                 126

92 - June 2004 email string                    133

93 - August 17, 2005, email from J. Moore   135

94 - August 2005 email string               158

95 - Handwritten notes                         167

DIRECT - T. GAGE (Augsburger) - CONFIDENTIAL          9

1      A    Actually, special risk is another area

2  under the umbrella of special markets of which

3  stoploss is also part of that.  We had some

4  changes back in 2004 that necessitated my also

5  assuming the responsibilities of stoploss -- or

6  special risk.

7      Q    What kind of changes were those?

8      A    Terminations, people moving on, blending

9  of departments.

10     Q    When was United of Omaha created?

11     A    I don't know.

12     Q    Was it there when you arrived at MoO?

13     A    Yes.

14     Q    Do you also work for United?

15     A    My paycheck comes from Mutual of Omaha.

16     Q    Do you know whether United has any

17 employees?

18     A    I don't know.

19     Q    In your role as vice president of sales

20 and marketing, do you travel around and meet with

21 TPAs?

22     A    Yes.

23     Q    Are you sort of a -- well, what kinds of

24 things do you do when you meet with TPAs?

25     A    We meet with TPAs on a prospective

DIRECT - T. GAGE (Augsburger) - CONFIDENTIAL    175

```
 1          A      Yes.

 2          Q      And this was also for BRMS; correct?

 3          A      Correct.

 4                 (Exhibit No. 98 was marked for

 5          identification.)

 6          Q      (By Ms. Augsburger)  This is another

 7    specific reimbursement request form relating to

 8    Debra Jones; correct?

 9          A      Yes.

10          Q      And this is, like the last one, this

11    request relates to the policy period of January

12    of '06 through December of '06; right?

13          A      Correct.

14          Q      And this was also submitted by BRMS;

15    correct?

16          A      Yes.

17          Q      And this was for $33,066?

18          A      Yes.

19                 (Exhibit No. 99 was marked for

20          identification.)

21          Q      (By Ms. Augsburger)  Do you recognize

22    the Mutual of Omaha symbol up there at the top?

23          A      Yes.

24          Q      Have you ever seen any stationery that

25    just has United of Omaha Life Insurance Company on
```

1    it as opposed to what you see on this document in

2    the top left-hand corner, where it has Mutual and

3    United?

4         A    I don't recall.  I don't recall seeing

5    United of Omaha letterhead.

6         Q    This is addressed to Ralph Herrera at

7    BRMS, and it says, I have completed my review of

8    your submission dated 7/21/06 for the

9    above-referenced individual totaling 331,371.80.

10   The following determination has been made.  And

11   then there are some quotations, and if you go to

12   the second page, the second paragraph says, Review

13   of the claim documentation submitted indicates

14   that the claimant incurred services on May 24th,

15   2005, and so on and so on, and ultimately in the

16   last sentence, it says, Based on this

17   documentation, we are applying provision misstated

18   data and denying reimbursement for the stoploss

19   claim submitted; right?

20        A    Yes.

21             (Exhibit No. 100 was marked for

22        identification.)

23        Q    (By Ms. Augsburger)  Exhibit 100 is a

24   denial of the $33,066 claim that we looked at

25   earlier; right?

1                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
2

3      ALTA BATES SUMMIT MEDICAL  )
       CENTER,                    )
                                  )
4           Plaintiff,            )
                                  )
5                      -vs-       ) Case#C07-4224 JSW
                                  )
6      UNITED OF OMAHA LIFE       )
       INSURANCE COMPANY, et al., )
7                                 )       CERTIFICATE
            Defendants.           )
8      _____)

9


10          CERTIFICATE OF DEPOSITION OF TOM GAGE

11


12                          Taken in behalf of
                            the Plaintiff.
13

14     Date:  June 26, 2008

15     The Original Deposition is
       in the possession of:

16

17     MARCIA L. AUGSBURGER
       Attorney at Law
       Ninth Floor
18     555 Capitol Mall
       Sacramento, CA  95814
19

20     Costs:  $1562.00

21     _____
       BOBBI M. RANDALL, RPR, CSR
22     GENERAL NOTARY PUBLIC

23     DATE:  July 14, 2008

24

25                        GENERAL NOTARY-State of Nebraska
                          BOBBI M. RANDALL
                          My Comm. Exp. April 12, 2012

Exhibit D

```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2

 3     ALTA BATES SUMMIT MEDICAL    )
       CENTER,                      )
 4                                  )
             Plaintiff,             )
 5                                  )
                        -vs-        ) Case#C07-4224 JSW
 6                                  )
       UNITED OF OMAHA LIFE         )
 7     INSURANCE COMPANY, et al.,   )
                                    )      DEPOSITION
 8           Defendants.            )
       _____)
 9


10


11             *** CONFIDENTIAL ***

12


13         DEPOSITION OF CAROL TARKOWSKI

14


15             Deposition of CAROL TARKOWSKI,

16     taken on behalf of the Plaintiff, at

17     Erickson & Sederstrom, 10330 Regency Parkway

18     Drive, Suite 100, Omaha, Nebraska, beginning

19     at 8:30 a.m., Friday, June 27, 2008, before

20     Bobbi M. Randall, RPR, CSR, a General Notary

21     Public within and for the State of Nebraska,

22     pursuant to Notice.

23
                   BOBBI M. RANDALL, RPR, CSR
24          MATHESON-TAULBORG-DENNEY-SCHLEIFE
                 7602 Pacific Street, LL101
25                    Omaha, NE  68114
                      (402) 397-9669
```

ORIGINAL

```
 1                        APPEARANCES

 2          For the Plaintiff:

 3          MARCIA L. AUGSBURGER
            LESLIE C. MURPHY
 4          Attorneys at Law
            Ninth Floor
 5          555 Capitol Mall
            Sacramento, CA  95814
 6
            For the Defendants:
 7
            TRAVIS WALL
 8          Attorney at Law
            Ninth Floor
 9          650 California Street
            San Francisco, CA  94108
10
            DAVID A. BARRON
11          Attorney at Law
            Mutual of Omaha Plaza
12          Omaha, NE  68175

13                           INDEX

14
            CAROL TARKOWSKI                        Page
15
            Direct Examination by Ms. Murphy          3
16
            Certificate                             144
17

18          EXHIBITS:                             Marked

19          116- 1500 Form                          123

20          117- Stop Loss Contract & Plan Document
                 Information                         123
21
            118- Appeals                            123
22

23

24

25
```

1    or talk to your counsel, just let me know and

2    that's fine.  In addition, if you have any -- if

3    you are not understanding my questions, just feel

4    free to tell me what you're not understanding, and

5    I'll try to rephrase so we're both on the same

6    page.  Is there any reason why you can't give your

7    full and complete testimony today?

8        A    No.

9        Q    Did you review any documents in

10   preparation for the depo today?

11       A    Yes.

12       Q    What did you review?

13       A    I reviewed the claims training manual.

14   I reviewed some information in the claim file, my

15   denial letter, and the letter of appeal that had

16   come in at that time.

17       Q    And when you said the claims training

18   manual, is that the manual for the stoploss

19   department at Mutual of Omaha?

20       A    Yes, it is.

21       Q    What is your job title?

22       A    It's manager of stoploss claims.

23       Q    For what company?

24       A    Mutual of Omaha.

25       Q    Are you employed by United of Omaha?

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL     5

1      A      I'm employed by Mutual of Omaha.  United

2    is part of Mutual of Omaha.

3      Q      How many direct reports do you have?

4      A      There are eight claim analysts.  There's

5    a lead analyst.  There are two senior claim

6    auditors and a contract premium of three people.

7      Q      The three people are the --

8      A      One is premium and then two contract --

9    contracts, compliance.

10     Q      Aside from the people who directly

11   report to you, how many people are in your claims

12   department?

13     A      In the claims department there are the

14   eight analysts, myself, and the lead analyst.

15     Q      In addition to the eight claim analysts,

16   there's an additional analyst -- that's the senior

17   analyst?

18     A      The lead analyst, yes.

19     Q      And then there are two claims auditors

20   in your department as well?

21     A      They're the TPA auditors, but they're

22   part -- I control -- I have control of that area.

23     Q      Okay.  Do you consider yourself the

24   person most knowledgeable about United of Omaha's

25   policies and practices with respect to rejecting

1    everything up.  So you have done your due

2    diligence, you've looked at disclosure, you find

3    there might be an issue, you don't think this

4    person was disclosed, now you need to put together

5    information so that we can begin the process of

6    discussing this.

7        Q    At this point would you expect your

8    claims analysts to notify you?

9        A    Usually, yes.

10        Q    Are you notified about all of the claims

11    that have disclosure issues?

12        A    Normally.  I don't know that I was

13    notified of all.

14        Q    Can you give me a general sense, for

15    example, in 2005, how many claims had disclosure

16    issues?

17        A    I don't recall.

18        Q    Do you think it was over a thousand?

19        A    No.  It would be a small number.

20        Q    Over 50?

21        A    No.

22        Q    Less than ten?

23        A    Yes.

24        Q    Okay.  The next paragraph says, Once all

25    of this information is gathered, the claims

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL     38

1      Q     Okay.

2      A     And, yes, they would come to me.

3      Q     Do you recall ever paying a claim that

4   was not disclosed during the underwriting process?

5      A     Yes.

6      Q     Can you tell me about that?

7      A     What do you mean?

8      Q     Can you tell me what the circumstance

9   was of one of those claims that were paid?

10     A     I know that there have been claims that

11  have been paid that were not disclosed.  I don't

12  know that I remember specifics.  I know that there

13  had been discussions, and in some cases there were

14  a couple of claims that I recall that we made an

15  exception, and we -- we reimbursed the claim and

16  then a certain amount of that was taken out of the

17  TPA comp.

18     Q     And that process was essentially in the

19  process that we just kind of went over, where all

20  of the different groups at Mutual underwriting,

21  the case managers and the claims department and

22  the claims supervisor sat down and kind of

23  reviewed the information that you had on that

24  particular patient?

25     A     The information or additional

1    information from the TPA.  Usually that is a part

2    of it as well, that they're going to explain why

3    this was not disclosed.

4         Q    In the couple of instances that you

5    generally recall, do you recall why -- what

6    information that you had received that resulted in

7    an exception being made?

8         A    I can't recall their specifics of it, to

9    tell you the truth.

10        Q    Okay.  Do you recall generally what time

11   frame that was?

12        A    What do you mean?

13        Q    The claims that there was an exception

14   made, was that something that happened this year?

15   Last year?

16        A    I know there were a couple in 2005 and

17   2006.  There was one this year.

18        Q    Aside from the process that we just

19   walked through on these two pages there, is this

20   the general guideline that you expect your claims

21   analysts to follow when reviewing a stoploss

22   claim?

23        A    Yes.

24        Q    Okay.  On the next page it says,

25   Disclosure and Laser Issues with Underwriting.

1    was involved with the initial denial of Debra

2    Jones's claim?

3         A    I don't know.

4         Q    We talked earlier about you said that

5    you recalled a couple of times where exceptions

6    were made to -- where claims were paid when they

7    were not disclosed.  Do you remember that?

8         A    Yes.

9         Q    Do you recall the amount of the claims

10   that were paid and the exception to the rule that

11   they must be disclosed?

12        A    I don't remember the specific amounts.

13        Q    Do you remember generally?  Was it a

14   million dollar claim?

15        A    Less than a million.

16        Q    Did the amount of the claim submitted

17   have any bearing on the decision to make an

18   exception?

19        A    No.

20        Q    You also indicated, when we talked about

21   claims that were denied for lack of disclosure,

22   you said that you thought there were probably

23   about less than ten.  Do you remember that?

24        A    Yes.

25        Q    I want to make sure I understood that.

1    Were there less than ten claims that were

2    submitted that had disclosure issues, or were they

3    denied for nondisclosure?

4         A    By disclosure issues, we would have to

5    define disclosure issues.

6         Q    How would you define it?

7         A    We look at disclosure on every claim,

8    and when an analyst may wonder if it's disclosure,

9    that's why they go to the nurse.  And they may go

10   to the nurse, and the nurse will say, We have had

11   instances where it was right at the beginning of

12   when the disclosure was signed, maybe a day

13   before.  Technically that was before the

14   disclosure was signed, but it is right on that

15   cusp of -- so generally in those instances, we may

16   review and say, It would be very difficult for

17   them to disclose that one, continue through

18   processing.

19        Q    So the typical case that there's a

20   disclosure issue is when there is a claim that

21   arises around the time of the disclosure period,

22   for example, late in the calendar year, early in

23   the following year?

24        A    Most disclosure issues are those that we

25   see that are much before the effective date.

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL    64

1    There can be those that are, yes, a cusp one, and

2    then is it or is it not.

3        Q    Can you give me an example of one of

4    those that would be well before the disclosure

5    date?

6        A    D████ J████ is one that they had

7    received precertifications.  She was diagnosed in

8    June or in that time frame, June and August.

9    There was treatment several months before the

10   effective date of the contract.

11       Q    And in those circumstances where you

12   described that the disclosure issue was much

13   before -- I think those were your words -- of

14   those ones, are those typically denied for

15   nondisclosure?

16       A    It would be reviewed for possible

17   denial.  One of the things we would look at is,

18   yes, if it's not disclosed, it can be denied for

19   misstated data.  It's excluded under the contract

20   if it's not on that select risk questionnaire and

21   it should have been.  So yes, it can be denied.

22       Q    So it's not automatic?

23       A    We go through our normal review process.

24       Q    And that's the process we walked through

25   earlier where you go back to the files, you

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL    65

1    discuss it with the nurse case manager, the

2    underwriter, the managers, and yourself?

3        A    Yes.

4        Q    Can you look at Exhibit 111?

5        A    (Witness obliged.)

6        Q    And if you could turn to the last page

7    there, marked 4006.  This is an email from Julie

8    Moore to you and other -- some other people, and

9    it says, Ed indicated yesterday that we have

10   received a claim for one of the Lebe twins.

11   That's a little surprising given Care Assist

12   hasn't completed their hospital review yet.  Do

13   you see that part?

14       A    Yes.

15       Q    Do you know why Ms. Moore was surprised?

16       A    She was surprised because the bills --

17   the TPA sent the bills to Care Assist for the

18   review, and at the same time, they sent in the

19   reimbursement request for the bills without that

20   review having been completed.

21       Q    But was the Care Assist review a

22   suggestion?

23       A    Yes.

24       Q    So what if Care Assist never gave you

25   their audit review of those claims?  What would

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL    84

1      Q    Did you assign him the D███ J███ case?

2      A    I either assigned it to him or -- I'll

3  look at the inventory and usually say, What

4  analyst needs help?  So it's a matter of he goes

5  to that analyst and then takes the next old -- the

6  oldest work from that individual.

7      Q    Do you know whether or not Mr. Brewer

8  was involved in audits of BRMS?

9      A    I'm not certain.  I know Claudia was.

10     Q    How long has he been a senior claim

11  auditor?

12     A    Since before I started at Mutual in

13  2003.

14     Q    When you are reviewing stoploss claims

15  that have a disclosure issue, do you have any

16  policy or procedure that requires a team meeting

17  or a meeting of certain people before making a

18  final decision on that claim?

19     A    We don't have a process or a procedure

20  that says certain people have to review a

21  disclosure issue.

22     Q    Would you agree that it's done on a

23  case-by-case basis, that it depends on the facts

24  of the case at issue?

25     A    Yes.

1   to see on a disclosure statement.  So we review

2   disclosure on every case.

3        Q    Okay.  But what about if the -- if the

4   case was you reviewed the group plan document and

5   the policy document, now, the only thing that you

6   found that was not disclosed was the trigger

7   diagnosis, just assume that.

8        A    Then it's a disclosure issue.

9        Q    Right.  And then you go back to all of

10  the policy manual that we went through, you go and

11  talk to the case manager, you look at the file and

12  all of that stuff.  When you do all of that,

13  you're still only looking for whether or not that

14  particular trigger diagnosis was in existence

15  prior to the disclosure; correct?

16       A    Yes.

17       Q    Based on the policies and practices in

18  place at United and Mutual, what factors do you

19  consider in deciding whether or not to make an

20  exception to the rule that you deny claims that

21  are not disclosed?

22       A    That's on a case-by-case basis.  There

23  aren't any set factors.  You have to review the

24  case on hand.

25       Q    So we looked at the stoploss or a



DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL  134

1    completion of that form?

2          A     Probably Mark or Ed.

3          Q     But you don't know for sure?

4          A     I'm not certain.

5          Q     Okay.  On the next page there, it says

6    Exceptions.  The next -- it says, The exceptions

7    log will deal with exceptions we make on claims.

8    This does not include items under the TPA special

9    handling section.  What is the exceptions log?

10         A     The exceptions log is a log we have that

11   if we make an exception, we could have denied the

12   claim.  We make an exception to allow a claim, we

13   log that in our log.  So we went outside either --

14   it could be out of our contract we make the

15   exception or they didn't pay correctly according

16   to the group plan document, but we made the

17   exception to reimburse it under the specific

18   reimbursement.

19         Q     Can you give me an example of a claim

20   that you recall that was paid as an exception?

21         A     There's a claim that the PPO repriced

22   the claim, and they repriced the claim according

23   to their contract, and at some point they realized

24   they made a mistake.  It was no longer within our

25   loss claim basis.  Maybe the claim just for Alta

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL    135

1    Bates 11/06 up to 11/07, they didn't pay the claim

2    until 11/08 but it was a claim we originally

3    reimbursed.  Now they owe some additional and it's

4    not covered under the new stoploss contract, so

5    they come to us and say, Will you make an

6    exception and pay under that old contract because

7    it was your original claim.  And that's one we

8    have made an exception on.

9        Q    Are there any written policies about

10   what claims or types of claims that exceptions are

11   acceptable for?

12       A    No, it's case-by-case.

13       Q    Where it says the TPA special handling

14   section.  What is that referring to?

15       A    We have some special handling for each

16   of our TPAs.  One example, one of our TPAs may

17   indicate that although the plan doc generally says

18   they investigate all accidents before reimbursing

19   the claim, they actually pay the first $500 and

20   then hold anything beyond that for investigation,

21   because if it's a real small accident claim, they

22   don't want to hold them up.  So we agree, although

23   the group plan document says you're going to

24   investigate all of them before you pay them, we'll

25   agree, to say, Okay, if we see up to $500

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL   136

1    reimbursed in a claim that comes in with other

2    portions of that claim, we will reimburse up to

3    that $500, too.

4        Q    Okay.  Do you know how Mutual of Omaha

5    or United of Omaha comes to the agreement with the

6    TPA on the special handling?

7        A    The TPA would generally contact me or

8    someone within the organization, and you know,

9    say, Hey, you know, there's this going on or this

10   is causing a lot of rework or whatever the case

11   may be.  They will contact someone in management,

12   underwriting, and talk about that specific part of

13   the --

14       Q    The next sentence says, The log will

15   generally track when we are paying claims we

16   normally would not pay.  Do you know why you track

17   those claims?

18       A    This was a requirement from our internal

19   audit, that we have a log that not only shows any

20   exceptions, but also appeals, because internal

21   audit wanted us to have that information.

22       Q    Do you have any idea about the dollar

23   amount that United or Mutual of Omaha paid on

24   claims they would not normally pay in, for

25   example, 2006?

DIRECT - C. TARKOWSKI (Murphy) - CONFIDENTIAL  137

1        A    I can't recall specific dollar amounts.

2        Q    Do you have a general idea of a dollar

3   amount?

4        A    No.

5        Q    The next sentence says, Perhaps the TPA

6   did not disclose an individual, we deny the claim,

7   and then management makes a decision to allow the

8   claim as an exception -- or we pay 50 percent of

9   the claim.  The portion of the sentence here where

10  it says management makes the decision, what does

11  that refer to?

12       A    As we discussed, when we get to the

13  disclosure and we find it's still not a disclosure

14  after the analyst has reviewed it, the nurse has

15  reviewed it, the underwriter has reviewed it, then

16  upper management will usually look at the case.

17       Q    Where it says, or we pay 50 percent of

18  the claim, what is that referencing?

19       A    There have been a couple of claims where

20  we have reimbursed it and then 50 percent of the

21  comp is taken out of TPA's -- 50 percent of the

22  claim is taken out of the TPA comp.  So that is

23  just one example.

24       Q    So in that one example, how much money

25  was taken out of that particular TPA's comp?

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
 2
          ALTA BATES SUMMIT MEDICAL  )
 3        CENTER,                     )
                                      )
 4             Plaintiff,             )
                                      )
 5                       -vs-         )Case#C07-4224 JSW
                                      )
 6        UNITED OF OMAHA LIFE        )
          INSURANCE COMPANY, et al., )
 7                                    )          CERTIFICATE
               Defendants.            )
 8        _____)

 9

10        CERTIFICATE OF DEPOSITION OF CAROL TARKOWSKI

11

12                              Taken in behalf of
                                the Plaintiff.
13
          Date:  June 27, 2008
14
          The Original Deposition is
15        in the possession of:

16
          MARCIA L. AUGSBURGER
17        Attorney at Law
          Ninth Floor
18        555 Capitol Mall
          Sacramento, CA  95814
19
          Costs:  $1,026.00
20

21        _____
          BOBBI M. RANDALL, RPR, CSR
22        GENERAL NOTARY PUBLIC

23        DATE:  July 14, 2008

24

25
```

GENERAL NOTARY-State of Nebraska
BOBBI M. RANDALL
My Comm. Exp. April 12, 2012