Exhibit A

Redacted

## APPEALS

**First Level Appeals:**

When a first appeal is received by MoO and was correctly submitted by the TPA, the original claim analyst who processed the submission will acknowledge receipt of the appeal to the TPA **within 5 working days.** Then that same claim analyst must review the appeal **(within 10 working days)** and determine if the claim should now be paid. If the claim analyst decides to pay the claim, they may issue a draft request. If they decide that the claim is still denied, the appeal must be elevated to the claims supervisor for a second level review.

**Second Level Appeals:**

If the original claim analyst denies a first appeal, the issue should be elevated to the claims supervisor for review. If the supervisor agrees to uphold the denial, the supervisor will handle the denial letter to the TPA. The appeal should be handled within 30 calendar days of receipt at MoO. If the appeal cannot be finalized during that time, a delay letter should be sent to the TPA, with additional delays sent every 30 days until finalized.

Any further appeals by a TPA/group will be reviewed by upper management on a case by case basis.

**Appeal/Complaint Log and Further Clarification**

An appeal/complaint is a communication of dissatisfaction of our handling for something the customer expected to be handled in a different way. The analyst that processed the submission as outlined above should handle the appeal/complaint. The analyst is responsible for completion of the appeal/complaint form. The completed form and corresponding file should be forwarded to

51



DEPOSITION
EXHIBIT
118
PENGAD 800-631-6989
Tarkowski

UNITED-

Confidential                                                                    Redacted

the supervisor for entry into the appeal/complaint log. An error will be charged on any appeals not referred for logging. The appeal complaint form consists of the following information (all appeals need to be logged whatever the outcome/resolution of the review):

- Date Received
- Person or Company that sent complaint
- Group Name/TPA Name
- Policy Number
- Claimant
- Description of Complaint
- Referred to (if applicable)
- Date referred to
- Date Finalized (response mailed)
- Resolution (upheld, overturned, other)

## EXCEPTIONS

The exceptions log will deal with exceptions we make on claims. This does not include items under the TPA special handling section. The log will generally track when we are paying claims we normally would not pay. Perhaps the TPA did not disclose an individual, we deny the claim, and then management makes a decision to allow the claim as an exception...........or we pay 50% of the claim. Most of the items in the exceptions log will be management decisions, and the claims supervisor probably be aware of them. However, if an exception is made on a file you are handling, please refer the file to the claims supervisor with a copy of the documentation. The supervisor will add the information to the exceptions log. An error will be charged on any claim with an exception that is not referred for logging.

52

UNITED-

Exhibit B

CONFIDENTIAL



"Jeanette Davidson"
<JeanetteD@brmsonline.com
>
02/01/2006 05:37 PM

To    "Patricia Swank (E-mail)"
<Patricia.Swank@mutualofomaha.com>

cc

bcc

Subject   Delay in reports

Hello Patricia,
I just wanted to send you a quick email letting you know that we are working on the reinsurance reports, however, sadly Mark's sister has taken a turn for the worse, we are a little bit behind.  Please feel free to contact me...in the interim, I'll be plugging away on those reports. Thanks!

## Jeanette Hinckley Davidson

Medical Management Consultant
Benefit & Risk Management Services
10860 Gold Center Drive #300        ph: 916-858-2950 ext. 220 fax 916-858-3955
Rancho Cordova, CA 95670        email: jenetted@brmsonline.com
United States        web: www.brmsonline.com

*Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information. If you are not one of the intended recipients, please do not duplicate or forward this e-mail message and immediately delete it from you computer. Thank you.*





DEPOSITION
EXHIBIT
78
Swank

20

UNITED-4615

CONFIDENTIAL



| | |
|---|---|
| 182356 | 1/6/2006 |
| 182396 | 1/19/2006 |
| 182479 | 1/13/2006 |
| 182403 | 1/10/2006 |
| 182453 | 1/17/2006 |
| 182497 | 1/18/2006 |
| 182519 | 1/11/2006 |
| 182368 | 1/18/2006 |
| 182461 | 1/19/2006 |
| 182598 | 1/19/2006 |
| 182670 | 1/21/2006 |
| 182518 | 1/19/2006 |
| 182619 | 1/20/2006 |
| 182585 | 1/1/2006 |
| 182664 | 1/31/2006 |
| 182757 | 1/25/2006 |

1/28/2006          02:04:03PM

21

UNITED-4616

**DeAnn Prefling**

| | |
|---|---|
| From: | DeAnn Prefling |
| Sent: | Saturday, January 28, 2006 2:23 PM |
| To: | 'Claudia.Wells@mutualofomaha.com' |
| Subject: | Potential large case notifications |
| Attachments: | altabateslgcasejan06.xls; edenlgcasejan06.xls; stlukeslgcasejan06.xls |

Claudia,

I have attached reports from our Utilization Review database.  These reports will identify any potential large case we have received an authorization request for based on trigger diagnosis' established in our system.  This report does not tie to any claims dollars paid.  Currently these reports will identify by group, an individuals name, authorization number, date of service/admit requested, primary diagnosis and type of service.  This report does not identify any of the information within the authorization (i.e., procedures performed, physician and facility information and any clinical review received)  I think this will be a good report for a start and it will at least give you an idea of a potential case.  What I would like to accomplish with our IT staff as soon as possible is to have all of the information within the authorization dumped into the report.  I don't know how long this may take but I will make this a priority if you feel this will be helpful to your staff.

Take a look at the reports and let me know your thoughts.

Thanks

PS. Congratulations on the new grand baby.

DeAnn Prefling
Client Services Manager
Benefit and Risk Management Services
916.858.2950 ext. 227
916.858.2970 fax
deannp@brmsonline.com

6/11/2007

DEPOSITION
EXHIBIT
49
Wells

STR 6050

# Potential Large Cases

Alta Bates Summit Med Center

1/1/2006 to 1/31/2006

Benefit & Risk Management Services
P O Box 2950
Rancho Cordova, CA 95670

| Patient Name | Authorization # | Service Date | Primary Diagnosis | Type of Service |
|---|---|---|---|---|
|  | 181417 | 1/11/2006 | 331.4 | RAD |
| | 182144 | 1/2/2006 | 493 | MED |
| | 182194 | 1/4/2006 | 769 | MED |
| | 182286 | 1/5/2006 | 493 | MED |
| | 182458 | 1/23/2006 | 493.90 | RAD |
| | 181416 | 1/9/2006 | 174.9 | RAD |
| | 181854 | 1/5/2006 | 174.9 | ONC |
| | 182063 | 1/5/2006 | 414.01 | SURG |
| | 181980 | 1/6/2006 | 414.00 | CARD |
| | 182087 | 1/27/2006 | 340 | RAD |
| | 182108 | 1/4/2006 | 200.1 | RAD |
| | 182180 | 1/6/2006 | 162.9 | ONC |
| | 182198 | 1/1/2006 | 416.9 | DME |
| | 182201 | 1/10/2006 | 174.9 | RAD |



| ID | Date | Amount | Dept |
|---|---|---|---|
| 182306 | 1/1/2006 | 296.53 | PSYCH |
| 182347 | 1/10/2006 | 174.9 | RAD |
| 182205 | 1/19/2006 | 710.0 | MED |
| 182212 | 1/5/2006 | 171.9 | PEDM |
| 182229 | 1/5/2006 | 340 | PT |
| 182197 | 1/11/2006 | 174.9 | RAD |
| 182199 | 1/16/2006 | 174.9 | ONC |
| 182356 | 1/6/2006 | 340 | PT |
| 182396 | 1/19/2006 | 233.0 | SURG |
| 182479 | 1/13/2006 | 162.9 | MED |
| 182403 | 1/10/2006 | 644.0 | GYN |
| 182453 | 1/17/2006 | 340 | RAD |
| 182497 | 1/18/2006 | 174.9 | SURG |
| 182519 | 1/11/2006 | 183.0 | CARD |
| 182368 | 1/18/2006 | 410.01 | CARD |
| 182461 | 1/19/2006 | 173.7 | SURG |
| 182598 | 1/19/2006 | 174.9 | MED |
| 182670 | 1/21/2006 | 410 | MED |

Page:

| 182618 | 1/19/2006 | 162.9 | ONC |
| 182619 | 1/20/2006 | 162.9 | ONC |
| 182585 | 1/1/2006 | 147.9 | RAD |
| 182664 | 1/31/2006 | 195.0 | RAD |
| 182757 | 1/25/2006 | 585.6 | MED |



1/28/2006

02:04:03PM

Exhibit C

CONFIDENTIAL



"Mark Lucas"
<MarkL@bmrsonline.com>
02/10/2006 10:38 AM

To    "Patricia Swank (E-mail)"
<Patricia.Swank@mutualofomaha.com>

cc

bcc

Subject    FW: Pls QC...3 down (to include ▓▓▓▓)....3 more to
go... ▓▓▓▓, ▓▓▓▓ and ▓▓▓ left...I'm done for the day

——Original Message——
From:   Jeanette Davidson
Sent:   Wednesday, February 08, 2006 2:51 PM
To:     Mark Lucas
Subject:    Pls QC...3 down (to include ▓▓▓▓)....3 more to go... ▓▓▓, ▓▓▓▓ and ▓▓▓left...I'm done for the day

D▓▓ J▓▓▓ - ESRD - 55 y/o African-American female with a history of end-stage renal disease with AV fistula placement on Sept. 1 who initially presented to the ER with complaints of dyspnea on 25 Jan 2006. Patient was admitted to the ICU and was found to be severely anemic with an admission hemoglobin and hematocrit of 4.5 and 13.5. Patient received significant blood transfusions with improvement in her respiratory status. Mild suggestion of a respiratory tract infection treated with oral Levaquin. Patient's x-ray and clinical findings were suggestive of pulmonary edema secondary to congestive heart failure likely associated with significant anemia as well as renal failure. Patient had a temporary dialysis access placed with hemodialysis. Patient was transferred to ▓▓▓▓▓▓▓Hospital, placed on a split-stream catheter and initiated dialysis. Hemoglobin and hematocrit 10/30.2. Patient was dc'd 31 Jan 2006. Patient had AV port in place on 1 Feb 2006 to cont. with dialysis.

**No indications of transplant workup.**
*************************************************************************************************
******************************************************

▓▓▓▓▓▓ still in-house; making progress.

▓▓▓▓▓▓▓

NICU progress note from 7 Feb 2006:

Interim events: Patient did well overnight, respiratory status seemed to improve after addition of diuretic,- Weight: 1820 grams (4 lbs, 0 oz) no change

EXAM: AF soft, sutures normal, alert, active child with good tone.
RESPIRATORY: clear to auscultation bilaterally
CARDIAC: regular rate and rhythm, no murmur , pulses normal
ABDOMEN: distended but soft, non-tender, no organomegaly

DEPOSITION
EXHIBIT
79
Swank
PENGAD 800-631-6989

changes
interim but c UB92s, physician review
of babies.    57

UNITED-3982

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2006
Underwriter B Coyle/jm

| Date | Employer Group Effective Date   Specific Ded. | TPA | Claimant | Diagnosis    Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|------|-----------------------------------------------|-----|----------|---------------------------------------|----------------------------------------------|
| 08/11/2005 | Alta Bates Summit Medical Center    takeover: 15/12 effective date: 1/1/06   stop loss level: $280,000 | BRMS    addl 9/7/05   addl 9/15/05 addl 11/21/05 | | lumbar disc degen surg 3/05, PT 3/05-6/05; esophageal ulcer, bx - no malignanc, currently receiving epidural inf, $270,462 | no expected stop loss |
| 08/23/2005 | Renewal | addl 9/7/05   addl 9/15/05 addl 11/21/05 | | T1 N2B squamous cell carcinoma L tonsil, s/p chemo; DM, 11/05 scan to r/o recurrence of ca $161,150 | no expected stop loss |
| 09/07/2005 | | | | lipidoses | termed 9/1/04 |
| 09/15/2005 | | addl 9/15/05  addl 9/21/05   addl 11/21/05 | | inpt 5/12 - 6/6/05  alcoholic cirrhosis of liver, hepatorenal syndrome $305,319 | expired 6/6/05 |
| 09/21/2005 | | addl 9/7/05   addl 11/21/05 | | preterm infant inpt 3/14-5/3/05, well baby check 5/05 $185,936 ptd | no expected stop loss |
| 10/03/2005 | | addl 9/15/05  addl 9/21/05   addl 11/21/05 | | nasopharyngeal ca w/bone mets, chemo/rads $99,129 | no expected stop loss |
| 10/04/2005 | | addl 9/15/05 addl 10/17/05 addl 11/21/05 | | craniosynostosis, sx mgmt w/new onset papilledema,potential extensive cranial remodeling in future $101,371 | no expected stop loss |
| 10/05/2005 | | addl 9/15/05  addl 9/21/05   addl 11/21/05 | | breast ca, mets to lung 3/05, uterine leiomyoma $86,729 | no expected stop loss |
| 10/17/2005 | | addl 9/21/05 | | HIV $7720 | no expected stop loss |
| 10/20/2005 | | addl 9/15/05  addl 9/21/05   addl 11/21/05 | | lung ca 3/28-4/11/05, xrt, chemo, 5/16-20/05 chemo, 8/2-10/05 n/v, 6/23-24/05 chemo, 8/22/26/05 pneumonia, 11/10/05 scans $166,331 | no expected stop loss |
| 10/26/2005 | | addl 9/7/05   addl 9/15/05   addl 9/21/05 | | multiple myeloma, malig neop bone - several inpt stays, 8/12-14/05, dcd w/hhc,ongoing $186,583 | Medicare prime as of 9/1/05 |
| 11/02/2005 | | addl 9/15/05  addl 9/21/05   addl 11/21/05 | | lung ca $165,685 | expired 7/9/05 |
| 11/21/2005 | final disclosure | addl 9/21/05  addl 11/2/05  addl 11/21/05 | | ovarian ca Stage 2 5/05, TAH 7/05, chemo started 8/05, to cont. for 6 mos to 1yr $130,578 | no expected stop loss |
| 11/22/2005 | | addl 9/7/05   addl 9/15/05 addl 11/21/05 | | renal failure, dialysis, inpt for 26 days 3/05 fo rbronchopulmonary fibrosis, inpt 9/05 renal failure emphysema $194,341 | project $275k w/o transplant and $350k w/transplant |

*5⁷*

UNITED-3983

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2005
Underwriter: B Coyle/jm

| Date | Employer Group Effective Date   Specific Ded. | TPA | Claimant | Diagnosis        Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|---|---|---|---|---|---|
| 11/28/2005 | | addl 9/21/05  addl 11/2/05 | | breast ca 11/04, bilateral mastectomies 4/05 $73,028 | no expected stop loss |
| 11/28/2005 | | addl 9/21/05  addl 10/17/05 | | new onset multiple myeloma rt femur 6/05, rt hip hemiarthroplasty for path fx 6/05, plan rads to rt hip/femur, Velcade, admitted 10/8/05 acute TIA, still inpt as of 10/13/05, receiving rads $103,841 | project $275,000 |
| | | addl 9/21/05  addl 10/5/05  addl 11/21/05 | | ESRD/transplant list, dialysis appears to be ~$22-$40k/mo $191,589 | project $350k w/o transplant and $425k w/transplant |
| | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | preterm infant inpt 3/17-5/27/05, laser sx for ROP, bilateral inguinal hernia repair $448,426 | no expected stop loss |
| | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | preterm infant - twin mate $563,488 | expired 4/11/05 |
| | | addl 9/7/05  addl 9/15/05  addl 11/21/05 | | preterm infant - twin mate, dob 1/31/05, dod 6/3/05 $812,633 | no expected stop loss |
| | | addl 9/21/05 | | spinal tumor rsxn 7/05, hhc, PT $7992 pd | no expected stop loss |
| | | addl 9/15/05  addl 9/21/05  addl 11/21/05 | | recto sigmoid ca 6/05, chemo started 7/05; also taking Tamoxifen $69,464 | no expected stop loss |
| | | addl 9/21/05  addl 10/20/05  addl 11/21/05 | | CRF, dialysis started 8/05, to discuss poss transplant in future w/MD, eval on 9/29/05 $14,089 | project $275,000 w/o transplant and $350,000 w/transplant |
| | | addl 9/21/05  addl 10/4/05 | | chronic Hepatitis C - liver transplant list -CPMC, renal insufficiency, to be seen by nephrologist for possible listing for 2 organs, case rate $92k, if total bill under $210k, then pd at case rate of $92k. If bill is over $210k, pd at 80%. Prof. services $23.5k, if over $46k, pd @ 50%; $1245 | no expected stop loss |
| | | new 9/21/05  addl 10/3/05 | | dob 8/23/05 @ 33wks, inpt 8/23-9/2/05, dod home | no expected stop loss |
| | | new 9/21/05 | | dob 8/23/05 @ 33wks, inpt 8/23-9/2/05, dod home | no expected stop loss |
| | | new 10/3/05 | | inpt 8/23-27/05 csxn - twins-pre-term, both babies dod 9/2/05 $70,351 | no expected stop loss |

63

UNITED-3984

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2008
Underwriter: B Coyle/jm

| Date | Employer Group Effective Date  Specific Ded. | TPA | Claimant | Diagnosis        Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|---|---|---|---|---|---|
| | | new 10/17/05 addl 11/21/05 | | 10/4-11/05, chr leukemia, parietal lesion consistent w/meningioma, stereotactic crani done w/partial rxn $51,642 | no expected stop loss |
| | | new 10/17/05 | | 9/26-10/3/05 CHF, COPD, dcd w/o hhc | no expected stop loss |
| | | new 10/17/05 | | s/p-vag hyster 9/13/05, 9/19-10/7/05 anterior abd wall hematoma, dcd w/hhc | no expected stop loss |
| | | new 10/17/05 | | s/p gastric bypass, 3 inpt stays since sx, pneumonia 9/27-10/3/05 | no expected stop loss |
| | | new 10/28/2005 addl 11/21/05 | | prostate ca w/mets $27,094 | expired 10/25/05 |
| | | new 11/2/05 addl 11/21/05 | | mal neo uterus, ovarian ca, inpt 9/1-29/0, chemo, xrt $137,025 | no expected stop loss |
| | | new 11/21/05 | | 5/05 MI, hrt cath $120,510 | no expected stop loss |
| | | new 11/21/05 new 11/22/05 | | ESRD, dialysis started 7/05, transplant eval done 7/25/05 @ CPMC - notified 11/15/05 $62,545 | w/o transplant project $275,000, w/transplant project $350,000 |
| | | new 11/21/05 | | 1/05 kidney stones, lithotripsy, 1/05,3/05 $101,488 | no expected stop loss |
| | | new 11/21/05 | | s/p radical mastectomy, 5/05 xrt, chemo $83,178 | no expected stop loss |
| | | new 11/21/05 new 11/29/05 | | 7/21-28/05 chf, bi-vent ICD, cardiac cath, 10/31-11/4/05 CHF, 11/13-present inpt, dcd 11/16/05, recurrent biventricular rt heart failure w/pneumonitis, sleep apnea, Levaquin, CPAP at home, last EF 35% $76,397 | no expected stop loss |
| | | new 11/21/05 | | 6/05 AMI, snf, PT $124,903 | no expected stop loss |
| | | new 11/21/05 | | 8/05 repair lap incisional hernia $87,473 | no expected stop loss |
| | | new 11/21/05 | | 6/05 spondylosis, sx 6/05 PT $124,794 | no expected stop loss |
| | | new 11/21/05 | | 6/05 sx on finger, PT $53,950 | no expected stop loss |
| | | new 11/21/05 | | frontal lesion, ICU, crani $84,613 | expired 4/16/05 |
| | | new 11/21/05 new 11/22/05 | | intractable low back and bilateral leg pain, 3/05 intrathecal analgesia, cardiac pacemaker, 8/05 permanent Medtronic intrathecal pump, 10/05-bid rt humerus upon falling from bed - ORIF, $84485 | no expected stop loss |

*54*

CONFIDENTIAL

Mutual of Omaha
Large Claim Review 2006
Underwriter: B Coyle/jim

| Date | Employer Group Effective Date  Specific Ded. | TPA | Claimant | Diagnosis        Claims Paid 1/05 to 7/05 | Estimated Risk for the Plan Year (Bottom Up) |
|------|---|---|---|---|---|
|  |  | new 11/21/05 |  | lumbar disc degen, fusion 2/05 - lami $119,482 | no expected stop loss |
|  |  | new 11/21/05 |  | CHF 11/04 $87,443 | no expected stop loss |
|  |  | new 11/21/05 |  | aortic valve stenosis, 12/04 cath, 12/05 11 day inpt stay for AV repair, rehab $117,829 | no expected stop loss |
|  |  | new 11/21/05 |  | 2/05 cath $76,822 | no expected stop loss |
|  |  | new 11/21/05 |  | ac pancreatitis, several inpt admits - 1/31-2/8/05, 4/9-15/05, 11/5-current $109,671 | no expected stop loss |
|  |  | new 11/21/05 |  | 7/05 systemic inflamm dz; sepsis, ex, osteomyelitis w/6 wks IVAB, snf, PT, inpt 8/3-31/05 for persistent inf $161,021 | no expected stop loss |
|  |  | new 11/21/05 |  | back inj at work 2004, poss third party liability $83,747 | no expected stop loss |
|  |  | new 11/21/05 |  | motorcycle acc 5/05, poss third party liability $72,842 | no expected stop loss |
|  |  | new 11/21/05 new 11/28/05 |  | 5/05 malignant lymphoma B cell in lt ethmoid, frontal sinus, and lt orbit, xrt completed 6/05, chemo (Rituxan) started 6/05 - to finish 11/05, MRI 10/05 wnl, to flu w/scans after chemo $115,419 | no expected stop loss....but if she does relapse and goes for transplant - she would be $300k or over |
|  |  | new 11/21/05 new 11/22/05 |  | medial meniscus tear rt knee, sx 1/05 $85427 | no expected stop loss |
|  |  | new 11/21/05 |  | 3/05 severe abd pain, 14 day inpt $85,796 | no expected stop loss |
|  |  | new 11/21/05 |  | lupus, dwarfism, inpt 9/05 $70,582 | no expected stop loss |
|  |  | new 11/21/05 |  | 4/05 rp, alb $67,633 | no expected stop loss |
|  |  | new 11/21/05 |  | 4/05 PE, 5/05 cath $67,666 | no expected stop loss |
|  |  | new 11/21/05 |  | 3/05 pre-term twins, one expired 7/05 ac chole, dural sinus thrombosis 7/27-8/5/05 $58,851 | no expected stop loss |

.55

UNITED-3986

CONFIDENTIAL



56

CONFIDENTIAL



CONFIDENTIAL



www.brmsonline.com

UNITED-3989

CONFIDENTIAL

 **Patricia Swank/MutualOMA**
02/15/2006 07:35 AM

To   Betty Coyle/MutualOMA@Mutual of Omaha
cc
bcc
Subject   Fw: info

Betty, I believe you wanted to see this one as well.

Patricia Swank RN, BSN
Mutual of Omaha Stop/Loss
Case Management
402-351-5258
402-351-1914 (fax)
Patricia.Swank@MutualofOmaha.com

---- Forwarded by Patricia Swank/MutualOMA on 02/15/2006 07:32 AM ----

 Patricia Swank/MutualOMA
02/13/2006 09:59 AM

To   MarkL@brmsonline.com, JeanetteD@brmsonline.com
cc
Subject   info

Ok, I emailed you too soon. On Debra Jones, do you know where she is going for dialysis and how much the discount is? Also, on the Lebe babies (per Peggy) we need the charges to date on them - we need to see the interim bill w/the UB92's and she would like to know if you have had a physician review of the babies plan of care?  Peggy would like you to hold on paying the bills on the claimants that we've received info on, until we've had a chance to see the bills, as we may want to send them for outside review.  This is alot of info, and I appreciate your help!

Patricia Swank RN, BSN
Mutual of Omaha Stop/Loss
Case Management
402-351-5258
402-351-1914 (fax)
Patricia.Swank@MutualofOmaha.com



DEPOSITION
EXHIBIT
80
Swank
PENGAD 800-631-6989
6-25-08 PZ

CONFIDENTIAL

| | | |
|---|---|---|
| Freed, Nancy | 182356 | 1/6/2006 |
| Steinhaus, Nancy | 182396 | 1/19/2006 |
| Wilson, Cynthia | 182479 | 1/13/2006 |
| Joseph, Mateena | 182403 | 1/10/2006 |
| TAYLOR, SR. JAMES | 182453 | 1/17/2006 |
| Burnett, Sheryl | 182497 | 1/18/2006 |
| Kingsbury, Yolanda | 182519 | 1/11/2006 |
| SAUNEUF, WILLIAM | 182368 | 1/18/2008 |
| Davlin, Elizabeth | 182461 | 1/19/2006 |
| Nelson, Kimberly | 182598 | 1/19/2006 |
| Pasternak, Peggy | 182670 | 1/21/2006 |
| Crosby, Teresa | 182618 | 1/19/2006 |
| Crosby, Teresa | 182619 | 1/20/2006 |
| MOSS, HENRY | 182585 | 1/1/2006 |
| MOSS, HENRY | 182664 | 1/31/2006 |
| Jones, Debra | 182757 | 1/25/2006 |

1/28/2006          02:04:03PM

CONFIDENTIAL

22   340   *MD*   PT
23   233.0   *breast gla*   SURG
24   162.9   *mal neo lung*   MED → *Claim $*
25   644.0   *threat labor*   GYN
26   340   *ms*   RAD
27   174.9   *mal neo breast*   SURG   *Claim $*
28   183.0   *mal neo ovar*   CARD   *Claim $*
29   410.01   *ami*   CARD
30   173.7   *mal neo skin*   SURG
31   174.9   *mal neo breast*   MED
32   410   *ami*   MED
33   162.9   *mal neo lung*   ONC   *Claim $*
34   162.9   *lc*   ONC
35   147.9   *mal neo nasophar*   RAD
36   195.0   *mal neo oral cav*   RAD
37   585.6   *esrd*   MED   — *checking 40*

Page: 1

Exhibit D

1            IN THE UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA

3   ALTA BATES SUMMIT MEDICAL  )
    CENTER,                 )
4                     )
       Plaintiff,      )
5                     )
           -vs-       )Case#C07-4224 JSW
6                     )
    UNITED OF OMAHA LIFE     )
7   INSURANCE COMPANY, et al., )
                    )    DEPOSITION
8       Defendants.     )
    _____)
9

10

11          *** CONFIDENTIAL ***

12

13     DEPOSITION OF PATRICIA SWANK

14        Deposition of PATRICIA SWANK, taken

15  on behalf of the Plaintiff, at Erickson &

16  Sederstrom, 10330 Regency Parkway Drive,

17  Suite 100, Omaha, Nebraska, beginning at

18  3:05 p.m., Wednesday, June 25, 2008, before

19  Bobbi M. Randall, RPR, CSR, a General Notary

20  Public within and for the State of Nebraska,

21  pursuant to Notice.

22

23        BOBBI M. RANDALL, RPR, CSR
     MATHESON-TAULBORG-DENNEY-SCHLEIFE
24       7602 Pacific Street, LL101
         Omaha, NE  68114
25        (402) 397-9669    *ORIGINAL*

1          APPEARANCES

2     For the Plaintiff:

3     MARCIA L. AUGSBURGER
      LESLIE C. MURPHY
4     Attorneys at Law
      Ninth Floor
5     555 Capitol Mall
      Sacramento, CA  95814

6
      For the Defendants:

7
      TRAVIS WALL
8     Attorney at Law
      Ninth Floor
9     650 California Street
      San Francisco, CA  94108

10
      DAVID A. BARRON
11    Attorney at Law
      Mutual of Omaha Plaza
12    Omaha, NE  68175

13          INDEX

14
      PATRICIA SWANK                              Page
15
      Direct Examination by Ms. Murphy              4
16
      Certificate                                 143
17

18    EXHIBITS:                                 Marked

19    66 - August 23, 2005, email from J. Mumm    41

20    67 - August 23, 2005, email from J. Mumm    44

21    68 - August 2005 email string               46

22    69 - August 23, 2005, email from B. Coyle   48

23    70 - September 2005 email string            49

24    71 - September 2005 email string            53

25    72 - September 15, 2005, email from
           P. Swank                               56

1          MR. WALL:  Incomplete hypothetical.

2          MS. MURPHY:  I'm not quite finished, so

3     let me try it again.

4     Q    (By Ms. Murphy)  If you had a patient

5     who had -- for BRMS, it's a hypothetical -- you

6     had a patient with renal disease, they had an

7     office visit, and that was the only information

8     that you had on that patient.  You didn't have any

9     case management notes and you didn't have any

10    other claims information.  What would you do to

11    make a projection?

12         MR. WALL:  Calls for speculation.

13    Incomplete hypothetical.

14    Q    (By Ms. Murphy)  Go ahead and answer.

15    A    I would request more information with

16    the TPA.

17    Q    So if you were limited to just a single

18    claim or a claim -- a couple of claims with a

19    trigger diagnosis on it, would you typically

20    request additional information?

21    A    It would depend on the stage of the

22    renal failure, if that was on there.

23    Q    Okay.  So if a patient had acute renal

24    disease, would you request additional information?

25    A    For acute renal failure, no.

1      Q      For end stage renal failure?

2      A      Yes.

3             (Exhibit No. 75 was marked for

4      identification.)

5      Q      (By Ms. Murphy)   This is an email from

6      Betty Coyle to Matt Schafer at BRMS and other

7      people, and I can see that you're not one of the

8      people cc'ed on it, so I'm just going to read the

9      first couple of sentences.   It says, Just to keep

10     you in the loop, I received an updated claim

11     review for Alta Bates renewal from our nurse and

12     it's looking ugly.   Do you see that?

13     A      Yes.

14     Q      Do you know what she's talking about,

15     it's looking ugly?

16     A      The large claim review.

17     Q      Can you explain that a little bit?   Does

18     that mean there's a lot of large dollar claims?

19     What does that mean?

20     A      I can't speak to what Betty was

21     referring to.   I was assuming she's talking about

22     the review.

23     Q      Okay.  Can you give me your general

24     understanding of the review that we were looking

25     at?   Is it typical to have this many high-dollar

1    A    They did.

2    Q    Can I have you turn -- it's in your pile

3    there, Exhibit 49.

4    A    (Witness obliged.)

5    Q    Do you have Exhibit 49?

6    A    Yes.

7    Q    Exhibit 49 is an email from DeAnn

8    Prefling to Claudia Wells dated January 28th.

9    Have you seen this email before?

10   A    No.

11   Q    The email says, Claudia, I have attached

12   reports from our utilization review database.

13   These reports will identify any large claim case

14   we have received an authorization request for

15   based on trigger diagnosis established in our

16   system.  Do you see that?

17   A    Yes.

18   Q    Do you recall receiving large case

19   reports that triggered diagnosis information from

20   BRMS?

21   A    Yes.

22   Q    And if you turn the page, this is the

23   one that we don't have the Bates numbers on.  It

24   has a three-page report and it's called potential

25   large cases.  Do you recognize this document?

DIRECT - P. SWANK (Murphy) - CONFIDENTIAL          99

1          A      In general.

2          Q      Is this a trigger diagnosis report?

3          A      They do have the diagnoses listed on

4    here, the primary diagnoses.

5          Q      What would you do as case manager if you

6    received this report?

7          A      I would look at all of these diagnoses

8    and decide if there was anybody I need to request

9    any information on.

10         Q      What about in the renewal process?  What

11   would you do if you received this report?

12         A      Same; I would go through and add them if

13   necessary.

14         Q      And if you needed information, who would

15   you request that information from?

16         A      BRMS.

17         Q      Would you contact them directly?

18         A      Yes.

19         Q      And when you requested -- in general

20   terms in 2005 when you requested information from

21   them, did you typically receive it?

22         A      Yes.  It was at times slow getting the

23   information, but yes, we received it.

24         Q      Okay.  Do you recall receiving this

25   trigger diagnosis report in early 2006?

```
 1       A    No.

 2            (Exhibit No. 79 was marked for

 3       identification.)

 4       Q    (By Ms. Murphy)  All right.  This is an

 5  email in the beginning from Jeanette Davidson

 6  dated February 8th, 2006, to Mark Lucas, and it

 7  looks like Mark Lucas forwarded the email to you

 8  on February 10th.  Do you see that?

 9       A    Yes, I see the date up there.

10       Q    Okay.  And then in the email that

11  Jeanette Davidson sent to Mark Lucas, the first

12  thing listed there is D▇▇▇ J▇▇▇, and then it has

13  a little paragraph.  Do you see that?

14       A    Yes.

15       Q    Do you recall receiving this information

16  on D▇▇▇ J▇▇▇ around February 10th, 2006?

17       A    Not specifically, no.

18       Q    Generally do you remember it?

19       A    Yes.

20       Q    So you do remember receiving information

21  on D▇▇▇ J▇▇▇ in early 2006.  Do you recall what

22  you did when you found out about▇▇ J▇▇?

23       A    I would have entered the information

24  into the claims system to the journal.

25       Q    Okay.  That's the SLIIC system?
```

1       A    Correct.

2       Q    Okay.  Have you seen any documents that

3    we've reviewed today that was a printout from the

4    SLIIC system?

5       A    Actually, this one is.  This page right

6    here is.

7       Q    What's the number down at the bottom?

8       A    3987.

9       Q    So when you receive information from

10    BRMS, do you always enter it into there -- into

11    the SLIIC system?

12       A    If it's somebody that we're concerned

13    about.

14       Q    And that would be somebody that you

15    wanted to follow?

16       A    Correct.

17       Q    If you look at the February 8th

18    paragraph on D█████ J█████ that Jeanette Davis sent

19    to Mark Lucas, does it generally look like what we

20    just looked at in the prior report?

21       A    Yes.

22       Q    The following documents, 3983, 3984

23    through 86, look like the large claim review

24    report that we looked at earlier, but this one

25    says 2006; correct?

1    STATE OF NEBRASKA              )
                                    )    ss
2    COUNTY OF DOUGLAS              )

3         I, Bobbi M. Randall, RPR, CSR a General

4    Notary Public in and for the State of Nebraska, do

5    hereby certify:

6         That prior to being examined, the

7    witness named in the foregoing deposition,

8    PATRICIA SWANK, was by me duly sworn to testify

9    the truth, the whole truth, and nothing but the

10   truth;

11        That said deposition was taken before me

12   at the time and place set forth and was taken down

13   by me in shorthand and thereafter reduced to

14   computerized transcription under my direction and

15   supervision, and I hereby certify the foregoing

16   deposition is a full, true, and correct transcript

17   of my shorthand notes so taken.

18        I further certify that I am neither

19   counsel for nor related to any party to said

20   action nor in any way interested in the outcome

21   thereof.

22        IN WITNESS WHEREOF, I have hereunto

23   subscribed my name this July 14th, 2008.

24

25   _____
     Bobbi M. Randall, CSR
     General Notary

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ALTA BATES SUMMIT MEDICAL    )
CENTER,                      )
                             )
        Plaintiff,           )
                             )
            -vs-             ) Case#C07-4224 JSW
                             )
UNITED OF OMAHA LIFE         )
INSURANCE COMPANY, et al.,   )
                             )            CERTIFICATE
        Defendants.          )
_____  )

CERTIFICATE OF DEPOSITION OF PATRICIA SWANK

                        Taken in behalf of
                        the Plaintiff.

Date:  June 25, 2008

The Original Deposition is
in the possession of:

MARCIA L. AUGSBURGER
Attorney at Law
Ninth Floor
555 Capitol Mall
Sacramento, CA  95814

Costs:  $994.00


                  _____
                  BOBBI M. RANDALL, RPR, CSR
                  GENERAL NOTARY PUBLIC

                  DATE:  July 14, 2008

GENERAL NOTARY-State of Nebraska
BOBBI M. RANDALL
My Comm. Exp. April 12, 2012

Exhibit E



**INSURANCE SERVICES, INC.**
"A Proud Name in Insurance Since 1880"
BROKERS • CONSULTANTS

July 17, 2008

Marcia L. Augsburger
McDonough Holland & Allen PC
555 Capital Mall, 9th Floor
Sacramento, CA 95814

Re: Alta Bates Summit Medical Center v. United of Omaha Life Insurance Company;
Mutual of Omaha Life insurance Company
Case No. RG07336672

Dear Ms. Augsburger,

The purpose of this letter is to express my opinion with regard to the above case in reference. This case involves a claim by the Plaintiff, Alta Bates Summit Medical Center ("ABSMC") that United of Omaha Life Insurance Company and Mutual of Omaha Life Insurance Company ("United of Omaha & MOO"). as Defendants, failed to comply with their contractual stop-loss re-insurance obligations to reimburse ABSMC for certain claims submitted under policy No. UP-90X4 ("Policy") from January 1, 2005 to January 1, 2007 policy term.

The Complaint alleges that United of Omaha & MOO failed and refused to make any payments for services provided to an ABSMC Employee Patient in breach of the Policy and the covenant of good faith and fair dealing contained therein. As a result of the action taken by United of Omaha & MOO, ABSMC has suffered great financial loss.

In an effort to access the merits of the Complaint, the following documents were reviewed:

- First Amended Complaint for Breach of Contract, dated July 27, 2007
- Select Risk Questionnaire for Stop Loss Insurance, dated December 7, 2005
- Email from De Ann Prefling to Claudia Wells, dated January 28, 2006
- Stipulated Protective Order, dated November 19, 2007
- TPA Report, dated March 2004
- TPA Report, dated June 2005
- Letter to De Ann Prefling from Claudia Wells, dated July 25, 2005
- Mutual of Omaha internal email to Mark Brewer from John Lenagh, dated August 2, 2006
- Letter to Ralph Herrera from Mark Brewer, dated August 2, 2006
- Stop Loss Contract & Plan Document Information Sheet and Disclosure Information, regarding ████████, undated
- Stop Loss Contract & Plan Document information Sheet and Disclosure Information. regarding ████████, undated

1

- United of Omaha Life Insurance Company Stop Loss Policy #UP-90X4, effective January 1, 2006
- Third Party Administration Agreement and Amendments, effective January 1, 2003
- Plan Supervisor Agreement, undated
- United of Omaha Life Insurance Company Internal Audit Review, dated October 2005

The United of Omaha & MOO denial of the stop-loss claim at issue ("the Claim") was not consistent with either industry standards or United of Omaha & MOO historical handling with respects to claims denials. As one with over 40 years of experience in the insurance industry, 25 of which specifically involved stop-loss adjudication, third-party health plan administration and the underwriting and rate-setting of self-funded medical plans, I will offer testimony that the processes applied by Mutual of Omaha & MOO were inconsistent with processes I have experienced industry-wide; and, inconsistent with their own internal processes as evidenced in documents reviewed relevant to the claim. In the process of handling a claim for reimbursement under a stop-loss contract, a number of considerations are applied. Historical relationships with the Policyholder and the Third Party Administrator ("TPA") are considered. Class of business, number of insured lives, premiums generated, claims experience, trends related to the account and industry; and, of course, the documentation supporting the claim itself are all important as well. However, contrary to industry customs and practice, United of Omaha & MOO denied the Claim solely based on the TPA and ABSMC failing to comply with the provisions of the Policy, specifically "Misstated Data", totally disregarding the fact that the ABSMC Employee Patient's potential large case notification was properly filed within the allowable window to do so. Internal and external supporting documents clearly reflect actions taken by United of Omaha & MOO set the Claim up for immediate denial.

Non-disclosure of the potential large claim was not material to the underwriting process and underwriting concerns did not dictate that the Claim be denied. In over 4 decades of working with underwriters, claims processors, actuaries, etc. seldom does the final decision come as a result of applying the "table rate" to determine final premium or acceptance of a risk. Many factors apply. It is not simply a matter of data provided (i.e.: age of employee, sex, marital status, claims history, large ongoing claims, etc.). Final determinations are reached through personal interaction between the TPA or the Client and the underwriter. Certainly, the Select Risk Questionnaire and other documents are important. However, relationships and personalities lend significantly to the final determinations as to final rates, factors, deductibles, etc. In the case of ABSMC, United of Omaha & MOO offered the 2006 / 2007 renewal at acceptable rates and premiums, even though claims experience was not favorable, because they wanted the business! The Select Risk Questionnaire and supporting documents reflected a number of large on-going claims, several of which were lasered at renewal. Additional documentation submitted in January 2006 further supported the potential large case inventory based in part on trigger diagnosis. The Claim at issue was listed on this report, and, caused no reaction from underwriting. Why? Because they wanted the business! And, the underwriter admitted she would have accepted the risk and lasered the Employee Patient at a higher specific deductible.

The late disclosure of the Claim was not material, as reflected, for example, by United of Omaha's & MOO's handling of information and claims from its TPA, Benefit Risk Management Services ("BRMS"), which deviated from industry practices. Standard practice in the industry in managing TPA relationships focuses on "accuracy" and "timelines" of reports that reflect detailed claims payment activity, premium remittance reports, on-going large claims reports, potential large claims reports (50% reports) and necessary trigger diagnosis reports, among others. Contrary to industry expected standards of care, United of Omaha & MOO, as fiduciaries, failed to maintain the records required to document the accuracy of underwriting and claims decisions. Repeatedly, United of Omaha & MOO field auditors discovered that BRMS failed to meet the processing and reporting standards set forth in the company's

2

TPA Guide and yet the contract between them remained in force. For two years, the BRMS audit by United of Omaha & MOO field auditors resulted in the same observations: BRMS was not turning claims around in a timely manner; trigger diagnosis claims were not being reported; potential large claims were not being reported; and, funds were being co-mingled. United of Omaha & Moo believed and concluded that BRMS was underperforming and yet failed to enforce the TPA contract and allowed the relationship to continue on a basis they considered "successful". Obviously, had United of Omaha & MOO held BRMS to the standards of their TPA Guide, the Claim at issue would have been paid. However, as a result of the carrier's negligence and inability (or willingness) to hold to industry standards of care, ABSMC has suffered substantial financial loss.

In the process of forming my opinions regarding this matter and reaching my determinations, I reviewed the filed legal documents, contractual documents, faxes, exhibits, emails, etc. However, due to the lack of adequate time to do so, I will not represent that the above noted is exhaustive. Additional analysis will need to be conducted to further confirm my expressed opinions. I therefore reserve my right to continue to conduct my research of the documents already provided; and, additional documents as they become available to me, including, but not limited to, completed deposition transcripts and exhibits. Following my review of these, and other documents, this report will be supplemented.

A brief summary of my education and professional background is described as follows:

- I began my undergraduate studies at Ohio State University in 1953; and, after a six-year interruption in my studies at Ohio State to serve in the United States Navy, I graduated in 1962. I also studied at the Unites States Armed Forces Institute of Japan in Osaka during my service in the Navy.

- Early in my career, I was an insurance agent in the State of Florida. In 1973 I was appointed by Governor Reuben Askew to the Florida Insurance Study Commission, which developed the FAIR windstorm insurance plan, and to the Florida Reparations Reform Committee, which developed the Florida "no fault" automobile insurance plan.

- From 1974 through 1976, I served as a two-term President of the Professional Insurance Agents Association, after having served on the Association's Board of Directors since 1968.

- I was named the Professional Insurance Agents Association "Agent of the Year" in 1976.

- From 1992 through 1994, I served as a two-term President of the Health Care Administrators Association, after having served on the Association's Board since 1987.

- I currently am a member of the Contra Costa County Board of Supervisors Business Leaders Alliance, having served on that Board since 1997.

- I also have received a number of awards and served on a number of other boards in the course of my career.

- From 1986 to 2000, I was President and Chief Executive Officer of Anchor Pacific Underwriters ("Anchor"), a public company that provides insurance brokerage, third-party claims administration, employee benefits consulting, and underwriting and risk administration to small and middle market companies, groups, trusts, individual consumers and governmental agencies primarily in California, Arizona, and Oregon. Anchor also helped clients design and develop health and other commercial products and services, performed risk analysis, determined benefit

3

and funding levels for insurance programs, and conducted loss control studies for insurance companies and self-insured employers. Anchor marketed the services of many insurance companies, and in 1999 was ranked by Business Insurance Magazine as the 8th largest insurance brokerage/administration company in the country.

- I hold insurance licenses in California and other States for Life & Health, Property Casualty, Surplus Lines, and Special Lines Surplus Lines.

- I have authored various articles on insurance topics, which have been published in insurance, business, employee benefits, and Indian Gaming magazines and trade publications.

- As president of Shelby Insurance Services, Inc., I currently perform insurance consulting, risk management, broker, and expert witness services for commercial insurance clients, tribal governments and the legal community.

- I have been qualified as an expert witness in Federal Court in California.

Attached as Exhibit 1 is a recap of my Expert Witness Assignments and Publications that have published articles I have written over the past 10 years.  Exhibit 2 represents my current Fee Schedule.

The above stated expressed opinions have been determined by my own evaluation of the documents provided and in no way reflect the observations or opinions of others.

Respectively submitted,

James R. Dunathan
President

4

Exhibit F

**Leslie Murphy**

| | |
|---|---|
| **From:** | Leslie Murphy |
| **Sent:** | Tuesday, July 08, 2008 5:09 PM |
| **To:** | 'Wall, Travis R.' |
| **Cc:** | Marcia L. Augsburger; Corene Rodder |
| **Subject:** | ABSMC v. MOO/UOO |

Travis:

Do you have Betty Coyle Roberts availability for her continued deposition? Also, we were recently informed that Mary Pelkey is on a criminal jury trial. We understand the trial is expected to end the week of July 21st. At this point, we do not believe we need to reschedule her deposition, but we wanted you to be aware of the possibility if the trial lasts longer than expected.

On another matter that may affect scheduling, we are considering whether to seek leave to amend the complaint, as we now believe, based on the deposition testimony, there is evidence of bad faith. This will require leave from the Court's scheduling order regarding amendment of pleadings. We assume you will not stipulate, but if that is incorrect, please advise. Of course, we believe that it would be much more efficient if you would stipulate to the amendment and to moving the discovery deadline off. Please let us know if you are willing to do so.

Thank you,

Leslie C. Murphy, Esq.
McDonough Holland & Allen PC
555 Capitol Mall, 9th Floor
Sacramento, California 95814
Telephone: 916/325-4510
Fax: 916/444-8989

Confidentiality Notice: This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication. If you have received this communication in error, please contact our IT Department by email at helpdesk@mhalaw.com, or by telephone at (916) 444-3900. Thank you.

Exhibit G

**Tina Gravel**

| | |
|---|---|
| **From:** | Leslie Murphy |
| **Sent:** | Wednesday, July 16, 2008 11:49 AM |
| **To:** | Tina Gravel; Corene Rodder |
| **Subject:** | FW: Alta Bates -- Amendment |

---

**From:** Wall, Travis R. [mailto:twall@barwol.com]
**Sent:** Wednesday, July 16, 2008 10:00 AM
**To:** Leslie Murphy; Marcia L. Augsburger
**Cc:** Kiel, Linda
**Subject:** Alta Bates -- Amendment

Marcia and Leslie:

Please be advised that my client will not stipulate to allow an amendment of the complaint. I will be prepared to discuss this matter in more detail during our call later today.

Thanks,

Travis

**Travis R. Wall**
BARGER & WOLEN LLP
650 California Street, 9th Floor
San Francisco, California 94108-2713
Tel. (415) 743-3738 (direct)
Tel. (415) 434-2800 (main operator)
Fax. (415) 434-2533
email:  twall@barwol.com

**The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.**

8/7/2008