MARCIA L. AUGSBURGER (SBN 145686)
LESLIE C. MURPHY (SBN 227454)
McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
555 Capitol Mall, 9th Floor
Sacramento, CA 95814
Phone: 916.444.3900
Fax:    916.444.8989

Attorneys for Plaintiff
Alta Bates Summit Medical Center

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY; MUTUAL OF OMAHA LIFE INSURANCE COMPANY, et al.,<br><br>　　　　　　Defendants. | Case No.  C 07-4224 JSW (EDL)<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES**<br><br>Date:　　　　September 16, 2008<br>Time:　　　　2:00 p.m.<br>Courtroom:　Courtroom E, 15th Floor<br>　　　　　　　450 Golden Gate Ave.<br>　　　　　　　San Francisco, CA<br><br>Magistrate Judge Elizabeth D. Laporte |

### I.　INTRODUCTION

Defendants' opposition to this motion ("Opp.") belies the weaknesses of their objections and unreasonableness of their steadfast refusals to produce documents. First, Defendants acknowledge in their opposition that the Court's order dated August 15, 2008, requires Defendants to produce the exception logs. *See* Opp. 2:3-4. However, Defendants continue to voice their relevancy objections. Opp. 4:21-5:5. Presumably Defendants will obey the Court's order and are merely restating their objections to reemphasize that they are not waiving anything. Based on this assumption, Plaintiff will not reargue the issues here, but will reemphasize that the exception logs are reasonably calculated to reveal evidence bearing on what Defendants considered an "exception" and the materiality and enforceability of "requirements" set forth in Defendants' SRQs and Policies.



Second, with regard to request number 24, Defendants' factual arguments are contradicted by their witnesses' testimony. In the final analysis, their only substantive argument is that they should not have to produce documents in response to request number 24 because they have been ordered to produce a subset of those documents. There is no support for such an argument. Accordingly, and for the further reasons discussed below, Alta Bates Summit Medical Center ("ABSMC") is entitled to the documents requested in its request number 24, namely: "[Defendants'] Case Management file(s) for ABSMC."[1] The requested documents are reasonably calculated to show how Defendants' nurses generally handled cases in Case Management compared to how Employee Patient's case was handled, and to reveal evidence bearing on the issue of whether the omission to disclose Patient Employee's diagnosis before the policy renewal date was **material**.

More specifically, again, the requested documents are reasonably calculated to contain relevant evidence on such critical contract and insurance issues as: (1) how Defendants and/or other California insureds interpreted the phrase in the SRQ "[a]s an alternative to completing Attachment A, the Applicant may attach a report(s) that contain(s) the information requested for Attachment A ... within 30 days of the Proposed Effective Date ...."; (2) whether UOO/MOO consistently enforced the alleged requirement that the disclosure be submitted before policy renewal; (3) how important UOO/MOO considered the information to be and why; (4) the circumstances under which exceptions were made; and (5) the probable and reasonable effect that disclosure of the information would have on the insurers. *See, e.g., Southern California Edison Company v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995) (*as modified on denial of rehg.*); *Freeman v. Allstate Life Insurance Company*, 233 F.3d 533, 536 (9th Cir. 2001); *Merchants Fire Assurance Corporation v. Timore*, 263 F.2d 232, 240-241 (9th Cir. 1959); *Thompson v. Occidental Life Insurance Company of California*, 9 Cal. 3d 904, 916 (1973); Cal. Ins. Code §§ 332, 334, 359; *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030, 1045-1046 (1984); *Cohen v. Penn. Mutual Life Ins.*, 48 Cal. 2d 720, 734 (1957); *DiPasqua v. California Western States Life Insurance Company*, 106 Cal. App. 2d 281, 284-285 (1951).

---

[1] Marcia L. Augsburger Declaration in Support of Motion to Compel ("MLA Dec."). Exs. A (UOO's responses) and B ("MOO's responses).



1  Defendants' discussions about the exceptions logs as they relate to the Case Management
2  files that are the subject of request number 24 underscore why the Court should be wary of
3  Defendants' characterizations of the documents, and why it is so important that Plaintiff be afforded
4  the opportunity to personally review the documents at issue. On page 2 lines 18-27 of their
5  opposition, Defendants make the predicate assertion that claims were recorded on the exception logs
6  "only if United initially denied the claim for stoploss benefits and then later paid it as an exception."
7  This statement is contradicted by Defendants' Claims Manager's testimony. *See, e.g.*, MLA Dec. Ex.
8  D (Deposition of Carol Tarkowski, Claims Manager [4:21-24], "Tarkowski Dep."), 134:5-135:8.
9  Defendants' witnesses testified that the exception logs contained information about, for example,
10 cases where a policy or SRQ provision was not fulfilled but Defendants made an exception and paid
11 the claim <u>rather than denying it</u>. *See, e.g., id.* Nonetheless, Defendants assume the truth of their
12 statement to further conclude that the Case Management files contain no information about
13 "exceptions" because Defendants did not pay any ABSMC claims that they initially denied. Opp.
14 2:24-27. This assertion is unsupported by the deposition excerpts attached to Defendants' counsel's
15 declaration and is contradicted by the overwhelming testimony and evidence – the Case
16 Management nurses were consulted on all questioned claims. MLA Dec. Ex. D (Tarkowski Dep.),
17 64:11-65:3; 63:1-18, 137:5-23; MLA Dec. Ex. M; Leslie C. Murphy Declaration in support of
18 Motion to Compel ("LCM Dec.") Ex. A, 139:16-141:25. *See also* Declaration of Leslie C. Murphy
19 in Support of [this Reply] ("LCM Reply Dec."), Exhibit A (additional portions of Tarkowski Dep.),
20 27:3-30:24 (testifying that the claims analysts considering a stoploss claim for reimbursement would
21 "always" go to a nurse to determine whether disclosures were necessary); *id.* at 33:11-23, 36:24-
22 37:11, 39:24-40:21, 76:19-77:9 (testifying that if the person who is the subject of a stoploss claim is
23 not listed on the SRQ, then they "go to the nurse.") & Deposition Exhibit 46, Defendants' Stoploss
24 Claims Manual, which <u>requires</u> that the Case Management nurses be consulted <u>before</u> claims are
25 denied (excerpts attached with deposition testimony as Exhibit B to LCM Reply Dec. Exhibit 46
26 already on file with the Court, attached to Marcia L. Augsburger's Declaration in Support of Motion
27 to Amend, Ex. P.) Thus, ABSMC reasonably expects the exceptions logs to contain a wealth of
28 information not only about exceptions Defendants made for insureds other than ABSMC, but also in


:Donough Holland & Allen PC
Attorneys at Law

Reply to Defendants' Opposition to Plaintiff's Motion to Compel                        1128671v2 33802/0004

other ABSMC cases, and reasonably expects the Case Management files to contain notes, e-mails, and other information about exceptions Defendants made and the materiality on the non-disclosure at issue in this case.

The case involving a patient referred to as "CC" further illustrates the semantic concern arising from Defendants' predicate assertion. CC's diagnosis was known but not disclosed before renewal, but Defendants paid the claims anyway. If it is true that the exceptions log only lists claims that were denied but then paid and CC is not listed on the exceptions log, then Defendants either never denied her claims, or they concluded that the disclosure of her trigger diagnosis was not required under the SRQ or the policy. Either way, this supports ABSMC's argument that Defendants should have handled Employee Patient's claim similarly. If CC is listed, then the exceptions log is also relevant to show that Defendants should have handled Employee Patient's claim similarly. Thus, whether or not a patient is listed and what the exceptions log really records is all relevant to show that Defendants should have paid the claims for Patient Employee.

## II. REQUEST NO. 24: THE CASE MANAGEMENT FILES ARE REASONABLY CALCULATED TO SHOW THE CIRCUMSTANCES UNDER WHICH UOO/MOO MADE "EXCEPTIONS" AND HOW THEY VIEWED AND HANDLED NONCOMPLIANCE WITH SRQ AND POLICY "REQUIREMENTS."

Generally, Defendants assert that ABSMC has "made no attempt in the meet and confer process or in its opening papers to make an individualized showing of relevance" and has not established that the Case Management files are relevant. Opp. 1:3-11. On the contrary, as addressed below, ABSMC has repeatedly articulated not only the relevance of the documents, but their anticipated evidentiary value, and from every angle possible without actually reviewing the documents. Defendants' statements about what is and is not relevant in this case merely reflects their obstinately narrow view of what the case is about.

Specifically, Defendants' opposition initially asserts that request Number 24 is overbroad, implying that Plaintiff sought production of all claims files. Opp. 1:16-21. For the reasons discussed in this motion, Plaintiff probably should have asked for all claims files, at least for all California insureds, but in fact, Plaintiff only requested files relating to ABSMC employees. MLA Dec. Exs. A & B.


:Donough Holland & Allen PC
Attorneys at Law

4

Then Defendants disingenuously imply that the request violates a prior Court order, stating that the court "refused to order the production of claim files related to individuals who were not diagnosed with a trigger diagnosis prior to the final disclosure." Opp. 1:20-22. <u>The Court did not refuse any request for such an order</u> – the Court merely noted that "**Plaintiff does not now seek** and is not entitled to information about claims in which medical conditions first arose after the policy renewal had been completed." August 15, 2008, Order, p. 2:10-11 (emphasis added).

Based on this comment by the Court on a totally different request and issue, Defendants argue that the Court should not order production of all Case Management files **for ABSMC employees** because the request is not limited to employees who had an undisclosed trigger diagnosis prior to the final disclosure. However, ABSMC seeks to review the files to determine, *inter alia*, how Defendants handled cases where trigger diagnoses **were disclosed** and all other cases so that ABSMC can show that Defendants did not view or handle Employee Patient's case any differently <u>until</u> they denied her claims. ABSMC anticipates that such a review of all Case Management files will show that any nondisclosure of Patient Employees' diagnosis was immaterial, and that Defendants are estopped to deny the claims. MLA Dec. Ex. D 64:11-65:3; 63:1-18, 137:5-23; MLA Dec. ¶ 14 and Ex. M; LCM Ex. A, 139:16-141:25. *See also* LCM Reply Dec., Exhibit A (additional portions of Tarkowski Dep.), 27:3-30:24, 33:11-23, 36:24-37:11, 39:24-40:21, 76:19-77:9 and excerpts of Deposition Exhibit 46 attached as Exhibit B.

Specifically, as addressed in ABSMC's opening brief, the Case Management files are reasonably calculated to contain not only information about claims decisions, but also information bearing on whether Employee Patient's case was treated differently; according to Defendants' own testimony, when Defendants were considering a claim for denial, **the case managers were consulted to determine what the probable and reasonable influence of the undisclosed facts would have had on policy terms.** MLA Dec. ¶ 14 and Ex. M; LCM Ex. A, 139:16-141:25; MLA Dec. Ex. D, Tarkowski Dep., 64:11-65:3; 63:1-18, 137:5-23; LCM Reply Dec., Exhibit A (additional portions of Tarkowski Dep.), 27:3-30:24 (testifying about Defendants' Stoploss Claims Manual, Deposition Exhibit 46 [excerpts attached with deposition testimony] and specifically that the claims analysts considering a stoploss claim for reimbursement would "always" go to a nurse to determine

whether disclosures were necessary); *id.* at 33:11-23, 36:24-37:11, 39:24-40:21, 76:19-77:9 (testifying that if the person who is the subject of a stoploss claim is not listed on the SRQ, then they "go to the nurse.").

Defendants' witnesses testified that the Case Management nurses are regularly consulted by the claims department regarding disclosure issues and the claims department relies on information from the Case Management nurses to make claims determinations. *See, e.g.,* MLA Dec. D, 63:7-18, ("We look at disclosure on ever claim, and when an analyst may wonder if it's disclosure, that's why they go to the nurse."); LCM Reply Dec., Ex. A (additional portions of Tarkowski Dep.), 33:11-23 (testifying that when there is a disclosure issue the "first step would be to go to Case Management nurses."). The initial claims examiner for Employee Patient's claim contacted the nurse case manager for information, and relied on the information from the nurse to make the determination to deny the stoploss claim. *See e.g.* LCM Dec., Ex. A, p. 140:4-141:11. The case manager confirmed that she reviewed her Case Management files when discussing Employee Patient's claim with the claims analyst. *Id.* Thus, the case managers are involved in the claims processes and ABSMC properly seeks production of the Case Management information upon which Defendants regularly rely, in the ordinary course of business, to make claims determinations, which will evidence how Defendants interpreted the contract in processing stoploss claims.

Nonetheless, Defendants assert that the Case Management files "do not contain any information regarding the claims decision."[2] Opp. 2:13-27. This assertion is utterly unsupported by the testimony attached to Mr. Wall's declaration, and the relevant substantive testimony cited above is to the contrary. Indeed, Defendants concede on page three of their opposition that "[c]laims analysts do consult with Case Management nurses in limited situations – such as when there is a failure to disclose and the nurse is asked to determine whether she would have projected an

---

[2] Defendants' discussions about the exceptions log makes nothing more than the same point, and adds a new nonsequitur description of the exception log that is contradicted by the evidence, namely, that claims were recorded on the exception logs "only if United initially denied the claim for stoploss benefits and then later paid it as an exception." The opposition then assumes the truth of this statement to conclude that the Case Management files contain no information on "exceptions" because United did not pay any claims that it initially denied." As discussed in the Introduction above, this is misleading in the extreme, and certainly says nothing about what Case Management notes may or may not say.

Reply to Defendants' Opposition to Plaintiff's Motion to Compel                    1128671v2 33802/0004

employee's medical expenses above the specific deductible." Opp. 3:1-3.

Accordingly, Defendants' discussion on page 2 is misplaced. At lines 1 through 12, Defendants assert that ABSMC's papers give an "impression" that the files relate to claims made for stoploss benefits, which "impression" is, Defendants argue, a "mischaracterization." However, ABMSC certainly did not intentionally give such an "impression" because it makes no difference whether the Case Management files relate to claims made for stoploss benefits. Again, the documents are reasonably calculated to reveal evidence bearing on how material pre-renewal disclosures or non-disclosures were to policy renewal terms, and whether Defendants handled Case Management for Patient Employee differently than other cases, why or why not, and if so, how. If an argument appears from the documents that non-disclosure made no difference in the Case Management, then ABSMC may argue that the nondisclosure was immaterial at least as to Case Management. Whether a stoploss claim was or was not made in other cases does not change this. In fact, it is hard to imagine why that would be a relevant inquiry at all.

Given the semantic solitaire Defendants have repeatedly played about the documents, ABSMC submits that it should not be forced to accept Defendants' characterizations of what the Case Management files relate to or contain. ABSMC's attorneys should be permitted to review all documents <u>from ABSMC's own insurer relating to ABSMC's own employees</u> to determine first-hand whether the files include claims for patients who were not diagnosed prior to disclosure, and those who were disclosed as having minimal treatment pre-policy renewal. Such files are reasonably calculated to reveal how those cases were handled and whether UOO/MOO breached the policy and the covenant of good faith and fair dealing by treating Employee Patient's case differently.

In the end, Defendants conclude that they should not be ordered to produce the requested documents for one simple reason: because they are already producing <u>some</u> responsive documents pursuant to <u>other</u> requests. *Id.* 3:3-11. Specifically, Defendants complain that since the Court ordered Defendants to produce claims files for all California residents whose trigger diagnosis occurred *before* the final disclosure, ABSMC should be required to "explain why the disclosure of the entire claims files for these individuals is insufficient," to satisfy Defendants' obligation to produce documents in response to Request No. 24. Opp. 7-11. Defendants are apparently arguing



Reply to Defendants' Opposition to Plaintiff's Motion to Compel    1128671v2 33802/0004

that they should not have to produce documents responsive to request number 63 because they were ordered to produce documents in response to request number 17. *Id.* The Order requiring Defendants to produce documents in response to request 17 has no bearing on Defendants' obligation to produce Case Management documents. Defendants have no authority to support their selective response to the requests.

Defendants also argue that the Case Management files contain "confidential personal health information that should not be disclosed absent a heightened showed of relevance." Opp. 3:12-14. Defendants do not cite any authority for the proposition that a "heightened showing of relevance" is required before the Case Management notes are produced in this litigation. Opp. 3:12-13. Under the Health Insurance Portability and Accountability Act ("HIPAA"), the disclosure of "protected health information" (or "PHI") may be disclosed for purposes of litigation as part of ABSMC's health plan's "health care operations." *See* 45 CFR § 164.501 ("health care operations" includes a covered entity's activities of conducting or arranging for legal services to the extent such activities are related to the a health plan functions). When a disclosure is made, HIPPA merely requires that the parties undertake reasonable efforts to limit the uses and disclosures to the minimum necessary to accomplish the intended purpose. *See* 45 CFR § 164.502(b), § 164.514(d). The parties have undertaken such efforts by limiting the scope of the documents requested and producing them under cover of the Protective Order. Thus, permitting ABSMC to review the Case Management files for the litigation purposes identified on this motion is within the contemplation of HIPAA. ABMSC will then make every effort to comply with its obligations to limit its use and disclosures to the minimum necessary, which may include the redaction of patient names if and when any of the documents produced are filed with the Court. Once the names are so redacted, there is no concern about PHI whatsoever.

///
///
///
///
///



### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant this Motion to Compel and order that Defendants produce all responsive documents forthwith.

DATED: September 8, 2008

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law

By: _____
Marcia L. Augsburger

Attorneys for Alta Bates Summit Medical Center