IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTA BATES SUMMIT MEDICAL CENTER,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY, et al.,<br><br>          Defendants.<br>_____ / | No. 07-04224 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND TO STRIKE** |

Now before the Court is the motion to dismiss and to strike filed by defendants United of Omaha Life Insurance Company ("United") and Mutual of Omaha Insurance Company ("Mutual") (collectively, "Defendants") plaintiff Alta Bates Summit Medical Center's ("Plaintiff") third amended complaint ("TAC"). This motion is fully briefed and ripe for decision. The Court finds this motion is suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 1, 2009, is VACATED. Having carefully considered the parties' arguments and the relevant legal authority, the Court hereby grants Defendants' motion.[1]

///

///

///

---

[1] The Court denies Defendants' request for judicial notice because it did not need to consider the request in order to resolve Defendants' motion to dismiss and to strike.

**BACKGROUND**

In this action, Plaintiff alleges that Defendants wrongfully denied reimbursement for medical benefits under a stop-loss insurance policy. On January 1, 2006, Plaintiff and Defendants entered into a written contract, Policy No. UP-90X4 (the "Policy"), which includes a stop-loss provision. (TAC), ¶ 12.) Pursuant to the Policy, Defendants agreed to reimburse Plaintiff for medical care provided to employees under Plaintiff's employee health plan after a deductible of $250,000 had been satisfied. (*Id*.)

In 2006, one of Plaintiff's employees ("Employee Patient") incurred over $1.7 million in expenses for medical care which Plaintiff's self-insured plan paid. (*Id*., ¶ 15.) Plaintiff submitted claims for reimbursement of these expenses on July 21, August 1, and December 28, 2006, but Defendants have refused to provide any payment. (*Id*., ¶¶ 17, 20.) The claims were submitted by a third party administrator ("TPA"), Benefit Risk Management Services ("BRMS"). (*Id*., ¶ 18.) Defendants consented to BRMS handling Plaintiff's claims and disclosures. (*Id*., ¶ 19.)

Defendants denied the claims based on their contention that BRMS failed to timely disclose trigger diagnosis information, a material fact required by the Select Risk Questionnaire ("SRQ") before the January 1, 2006 effective date of the policy. (*Id*., ¶¶ 23-24.) According to Plaintiff, the SRQ required that such diagnoses be provided within 30 days of the proposed effective date, and that Plaintiff provided such information through a report on January 28, 2006, which was within 30 days of January 1. (*Id*., ¶¶ 25-27.) The report sent by BRMS contained the information about the Employee Patient's diagnoses. (*Id*., ¶ 27.)

Plaintiff further alleges that the requirement to disclose trigger diagnosis information did not apply because the SRQ elicited information regarding individual with "known medical conditions" during the year preceding the policy year and Employee Patient's diagnosis was not "known" to Plaintiff before January 1, 2006. (*Id*., ¶ 29.)

Defendants entered into a written agreement with BRMS to perform work for Defendants, including case management and reporting, with respect to all claims, including

Plaintiff's claims. (*Id*., ¶ 32.) Pursuant to this agreement, Defendants owned all documents in BRMS's possession relating to the claims. Thus, to the extent BRMS had knowledge of Patient Employee's diagnoses in 2005, Defendants did as well. (*Id*., ¶ 34.)

Plaintiff alleges that before January 1, 2006, Defendants led Plaintiff to believe that it did not need to submit trigger diagnosis reports and that such reports were not material through the following conduct and statements:

(1) the statements in the SRQ;

(2) issuing policies in 2003, 2004, and 2005 and paying claims in those years without requiring BRMS and/or Plaintiff to submit trigger diagnosis reports;

(3) failing to disclose to Plaintiff in 2004 and 2005 that BRMS was not producing and/or could not produce trigger diagnosis reports;

(4) failing to disclose that there was any problem with the disclosures and/or BRMS while accepting premium payments and acting as if there was full coverage for Employee Patient;

(5) not asking for a trigger diagnosis report before January 1, 2006 during the underwriting period, but instead, working to get detailed information from BRMS on large dollar claims and claims that were in case management;

(6) purportedly trying to help BRMS develop the kind of reporting that Defendants wanted;

(7) telling BRMS that they knew BRMS could not produce trigger diagnosis reports before January 1, 2006;

(8) acknowledging in the TPA manual that some claims could not be disclosed beforehand and specifying that the result would be management, not denial;

(9) imposing a new term in the 2006 policy without Plaintiff's knowledge or consent that Defendants may deny coverage for failure to disclose trigger diagnoses pre-policy renewal; and

1  (10) failing to provide Plaintiff with a copy of the Policy, and concealing the term that Defendants could deny coverage based on failure to disclose, until late March 2006, three months after its effective date of January 1, 2006.

(*Id*., ¶ 35.)

After Defendants received the January 28, 2006 disclosure with Patient Employee's diagnoses, Defendants continued to accept Plaintiff's premiums on her behalf and did not inform Plaintiffs that they would deny any claims related to her medical care and treatment. (*Id*., ¶¶ 38-39.) Moreover, Defendants monitored and managed Patient Employee's care and treatment as though they would pay her claims after the deductible had been satisfied. (*Id*., ¶ 39.)

Defendants paid claims under an insurance contract in 2005 that was essentially identical to the policy at issue here, despite knowing that BRMS had not disclosed trigger diagnosis codes before renewal or at any time thereafter. BRMS had only disclosed large dollar claims (claims exceeding $62,000). (*Id*., ¶ 57.)

Plaintiff alleges that Defendants owed a duty to disclose the alleged problems with BRMS's disclosures in 2005 and 2006. (*Id*., ¶¶ 74-76.) Plaintiff contends Defendants' conduct amounted to misrepresentations, or in the alternative, Defendants made intentional misrepresentations, that the trigger diagnoses codes were not material and that Defendants would not exercise any right to deny coverage for failure to disclose them. (*Id*., ¶¶ 78, 79.) Plaintiff further alleges that Defendants made express representations throughout 2006 that Patient Employee was covered under the Policy by accepting monthly premiums for her. (*Id*., ¶ 80.)

Defendants move to dismiss Plaintiff's fraud claim and claim under California Business and Professions Code § 17200 and move to strike an allegation of race discrimination.

**ANALYSIS**

**A. Applicable Legal Standards.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6)

4

motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A district court should grant a motion to dismiss if the plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level ..." *Twombly*, 550 U.S. at 556 (citations omitted). In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible. *Id*. at 570.

Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *United States v. Ritchie*, 343 F.3d 903, 908 (9th Cir. 2003).

Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *California Dept. of Toxic Substance Control v. ALCO Pacific, Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations omitted). Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question." *Id*. Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). A

motion to strike should be resorted to only when the matter to be stricken could have no possible bearing on the issues in litigation. *LeDuc v. Kentucky Central Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992).

**B.    Defendants' Motion to Dismiss.**

   **1.    Plaintiff's Fraud Claim.**

To state a claim for fraud based on an affirmative misrepresentation, Plaintiff must allege that: (1) Defendants made a false representation; (2) Defendants knew the representation was false; (3) Defendants intended to induce Plaintiff's reliance on the misrepresentation; (4) Plaintiff justifiably relied on the misrepresentation; and (5) Plaintiff was damaged. *See, e.g. Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 636-37 (9th Cir. 1977); *Engalla v. Permanente Medical Group*, 15 Cal. 4th 951, 974 (1997). To state a claim for fraud based on nondisclosure, Plaintiff must allege "(1) the defendant failed to disclose a material fact which he knew or believed to be true; and (2) the defendant had a duty to disclose that fact. ... The duty to disclose arises when ...: (1) the material fact is known to (or accessible only to) the defendant; and (2) the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact." *San Diego Hospice v. County of San Diego*, 31 Cal. App. 4th 1048, 1055 (1995) (internal citations omitted). Plaintiff must allege the circumstances constituting fraud with particularity. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (9th Cir. 1999); Fed. R. Civ. P. 9(b).

Plaintiff alleges that the Policy did not require the disclosure of trigger diagnoses and that such disclosures were not were not necessary or material. In opposition to the motion to dismiss the fraud claim, Plaintiff predominately argues how the contract should be interpreted and that Plaintiff adequately performed under its interpretation. Plaintiff alleges in the alternative, to the extent the Policy did require the disclosure of trigger diagnoses, that Defendants' misled Plaintiff and BRMS through conduct and statements that such disclosures were not required or material. However, to the extent the policy did require the disclosure of trigger diagnoses, then any reliance on conduct and/or statements indicating otherwise would not have been reasonable. "Reasonable reliance under California law ordinarily cannot be

6

1 shown when written documents contradict alleged oral misrepresentations." *Omni Home*
2 *Financing, Inc. v. Hartford Life and Annuity Ins. Co.*, 2008 WL 1925248, *4 (S.D. Cal. April
3 29, 2008); *see also Hadland v. NN Investors Life Ins. Co.*, 24 Cal. App. 4th 1578, 1587-89
4 (1994) (finding reliance on representations that contradicted the express terms of the contract
5 was unreasonable as a matter of law); *In re Lau Capital Funding, Inc.*, 321 B.R. 287, 303
6 (Bkrtcy C.D. Cal. 2005) (finding reliance on alleged misrepresentation was unreasonable in
7 light of the contractual provisions); *Baymiller v. Guarantee Mutual Life Co.,* 2000 WL
8 33774562 (C.D. Cal. Aug. 3, 2000) ("there cannot be reasonable reliance upon
9 misrepresentations or a failure to disclose that are contradicted by the express language of the
10 insurance contracts.")

11     Plaintiff's reliance on *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090 (1996) and
12 *Butcher v. Truck Insurance Exchange*, 77 Cal. App. 4th 1442 (2000) is misplaced. In both of
13 these cases, the court held that insurance agents could be held liable for negligent
14 misrepresentations where the agents misled insureds into believing the policies provided
15 coverage they did not. *See Paper Savers*, 51 Cal. App. 4th at 1096-1104 (holding that an
16 insurance agent could assume a special duty towards an insured by misrepresenting the policy
17 terms); *Butcher*, 77 Cal. App. 4th at 1461-64 (distinguishing *Hadland* and other California
18 cases on the basis that they did not involve an insured being misled by the negligence of an
19 insurance agent). Here, Plaintiff does not allege that an insurance agent misled it. Rather,
20 Plaintiff merely asserts claims directly the insurer.

21     Because reasonable reliance is an essential element of Plaintiff's fraud claim, the Court
22 finds that Plaintiff has not alleged a fraud claim against Defendants. Accordingly, the Court
23 grants Defendants' motion to dismiss Plaintiff's fraud claim.

24     **3.**    **Plaintiff's Section 17200 Claim.**

25     In essence, Plaintiff's claim under California's Unfair Competition Law, California
26 Business & Professions Code § 17200 ("section 17200") mirrors its fraud claim. Because the
27 Court finds that Plaintiff has not sufficiently alleged a fraud claim, the Court similarly finds that
28

Plaintiff has not alleged a claim under section 17200. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's section 17200 claim.

**C.     Defendants' Motion to Strike.**

The Court provided Plaintiff leave to amend to cure the defects raised by Defendants' motion to dismiss the Second Amended Complaint. Without leave of Court, Plaintiff included an allegation its TAC that "Defendants' [*sic*] chose to pay the claims for services rendered to a young white girl, but to deny the claims for Employee Patient, who was a 55 year old African American woman. This was discriminatory and unfair." (TAC, ¶ 63(a).) The fact that Plaintiff amended its complaint in this manner without seeking leave of Court provides independent grounds to strike this new allegation of race discrimination. Moreover, Defendants argue that this allegation is extraneous to this insurance coverage dispute and would be prejudicial to Defendants if it remained. The Court agrees and thus strikes this allegation from the TAC. This Order is without prejudice to Plaintiff moving to amend if Plaintiff later discovers evidence of racial discrimination.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and to strike.

**IT IS SO ORDERED.**

Dated: April 28, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE