1

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   ALTA BATES SUMMIT MEDICAL
    CENTER,
10                                                No. 07-04224 JSW
            Plaintiff,
11                                                **ORDER GRANTING**
      v.                                          **DEFENDANTS' MOTION FOR**
12                                                **SUMMARY JUDGMENT**
    UNITED OF OMAHA LIFE INSURANCE
13  COMPANY, et al.,

14          Defendants.

15  _____/

16

17          Now before the Court is the motion for summary judgment or for partial summary

18  judgment filed by defendants United of Omaha Life Insurance Company ("United") and Mutual

19  of Omaha Insurance Company ("Mutual") (collectively, "Defendants").  This motion is fully

20  briefed and ripe for decision.  The Court finds this motion is suitable for disposition without

21  oral argument.  *See* N.D. Civ. L.R. 7-1(b).  Accordingly, the hearing set for August 14, 2009, is

22  VACATED.  Having carefully considered the parties' arguments and the relevant legal

23  authority, the Court hereby grants Defendants' motion for summary judgment.[1]  As the parties

24  are familiar with the facts and procedural history of this case, there is no need to recite them

25  here, except where useful in reaching the disposition.

26                                    **ANALYSIS**

27  **A.     Legal Standard.**

28          Summary judgment is proper when the "pleadings, depositions, answers to

_____

[1] Defendants' request for judicial notice are granted.  *See* Fed. R. Evid. 201.

**United States District Court**
For the Northern District of California

1   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

2   genuine issue as to any material fact and that the moving party is entitled to judgment as a

3   matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence

4   for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

5   477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case.

6   *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the

7   evidence or make credibility determinations, and is required to draw all inferences in a light

8   most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

9   1997). A principal purpose of the summary judgment procedure is to identify and dispose of

10  factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The

11  party moving for summary judgment bears the initial burden of identifying those portions of the

12  pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

13  material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at

14  trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

15  the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party

16  must go beyond the pleadings and by its own evidence "set forth specific facts showing that

17  there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify

18  with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,

19  91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

20  (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a

21  genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving

22  party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

23  **B.    Defendants' Motion for Summary Judgment.**

24          **1.    Breach of Contract Claim.**

25          Plaintiff Alta Bates Summit Medical Center's ("Alta Bates") contends that Defendants

26  breached the insurance policy by denying coverage for claims regarding an Alta Bates

27  employee ("Employee Patient"), even though neither Benefit Risk Management Services

28  ("BRMS") nor Alta Bates disclosed that she had been diagnosed with and treated for chronic

2

United States District Court

For the Northern District of California

1  renal failure in 2005.  Defendants present evidence demonstrating that Alta Bates was required,

2  but failed, to disclose that the Employee Patient had been diagnosed with chronic renal failure

3  before the effective date of the policy, January 1, 2006.  Defendants further show that Plaintiff's

4  failure to disclose this information was material in that Defendants would have altered the terms

5  of the policy had they been aware of such information at the time.

6        Alta Bates make a number of arguments in response, none of which are persuasive.  The

7  Court will address each one in turn.  First, Alta Bates argues that Defendants waived their right

8  to require disclosure of Employee Patient's trigger diagnosis.  Under California law, "[t]he right

9  to information of material facts may be waived, either (a) by the terms of insurance or (b) by

10  neglect to make inquiries as to such facts, where they are distinctly implied in other facts of

11  which information is communicated."  Cal. Ins. Code § 336.  "Waiver always rests upon intent.

12  Waiver is the intentional relinquishment of a known right after knowledge of the facts .... The

13  burden, moreover, is on the party claiming a waiver of a right to prove it by clear and

14  convincing evidence that does not leave the matter to speculation, and doubtful cases will be

15  decided against a waiver."  *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107-108 (1966) (internal

16  citations and quotations omitted); *see also Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31

17  (1995).  Based on the evidence in the record, the Court finds that Alta Bates has not submitted

18  any evidence, let alone clear and convincing evidence, that Defendants *intentionally*

19  *relinquished* their right to receive information on trigger diagnoses of serious illnesses listed on

20  the Select Risk Questionnaire ("SRQ") before the effective date of the policy.

21        Second, Alta Bates argues that the SRQ only requires that neither it nor BMRS

22  knowingly or intentionally omitted required disclosures and that Alta Bates did not know of the

23  Employee Patient's diagnoses until 2006.  However, the Court finds that the evidence

24  demonstrates that Alta Bates did have knowledge of the Employee Patient's condition in 2005.

25  Atla Bates's own records show that the Employee Patient was diagnosed with and treated for

26

27

28

United States District Court

For the Northern District of California

1  chronic renal failure in 2005.[2]  Therefore, Alta Bates had an obligation to disclose this

2  information.  Moreover, the SRQ, which was signed by a representative of Alta Bates on

3  December 7, 2005, states: "As an authorized representative of the Applicant, I hereby warrant

4  and represent that the information included on Attachment A or reports supplied is complete

5  and accurate and that nothing has been knowingly or intentionally omitted."  If the Court were

6  to accept Alta Bates' proposed interpretation of this sentence, Alta Bates could review none of

7  its records, provide no information, and claim that nothing was "knowingly and intentionally"

8  omitted.  The Court finds that the phase "I hereby warrant and represent that the information

9  included on Attachment A or reports supplied is complete and accurate" must also have some

10  meaning.  In other words, by certifying that the information provided was complete and

11  accurate, Alta Bates had some obligation to ensure that the information provide was actually

12  complete and accurate.  Otherwise, these words would become meaningless.  Therefore, the

13  Court finds that Alta Bates' proposed construction of this language in the SRQ is not

14  reasonable.

15          Third and relatedly, Alta Bates argues that BRMS lacked knowledge of the Employee

16  Patient's diagnoses and of the falsity, if any, of the required disclosures.  Again, the documents

17  in the record belie Alta Bates' argument.  A draft report created by BRMS in 2005 lists the

18  Employee Patient's diagnoses.

19          Fourth, Alta Bates argues that there is a question of fact regarding whether the

20  Employee Patient's diagnoses in 2005 were serious illnesses as defined by the SRQ.  However,

21  the SRQ explicitly provides that Attachment A had to be completed for any individual

22  diagnosed with any serious illness "including but not limited to the following diagnoses."  IDC-

23  9 Code 582-588 Renal Disease/Failure/Dialysis are among the fourteen diagnoses specifically

24  delineated on the SRQ.  Alta Bates argues, without any supporting evidence, that Defendants

25  ───────────────

26          [2] In light of the evidence of the Employee Patient's treatment in 2005, including the
preauthorization of medical procedures, the Court finds that the one sentence by Mary

27  Pelkey, the Director of Benefits and Disability Management for Alta Bates, in her declaration
that she was personally not aware of the Employee Patient's diagnosis with renal disease

28  until this lawsuit was filed, is insufficient to create a question of fact precluding summary
judgment on this issue.  (Declaration of Marcia L. Augsburger Declaration ("Augsburger
Decl."), Tab 1 at ¶ 7.)

4

1   never suggested that the SRQ required disclosure of all diagnoses listed on the form.  In the

2   absence of such evidence, Alta Bates fails to demonstrate that it was not required to disclose

3   individuals that had been diagnosed with IDC-9 codes 582 through 588 for renal disease, renal

4   failure and dialysis.

5           Fifth, Alta Bates contends that BMRS substantially complied with the disclosure

6   requirements and had plausible explanations for any failure to comply.  According to Alta

7   Bates, neither it nor BMRS were required to disclose the Employee Patient's trigger diagnoses

8   because they substantially complied by submitting Large Claim Reports, because BMRS did not

9   have the technological ability to run diagnosis reports, and because the SRQ was ambiguous in

10  what it required to be disclosed.  As noted above, the SRQ required Attachment A to be

11  completed for any individual diagnoses with any serious illness such as renal disease or renal

12  failure.  The SRQ provided the following explanation:

13          To assist in identifying individuals who satisfy any of the criteria noted above
            when completing Attachment A, the Applicant should review and analyze,
14          without limitation, pending claim reports, large claim reports, precertification,
            large case management and other utilization review/management reports,
15          subrogation reports, employee attendance records, sick leave and disability
            reports.  As an alternative in completing Attachment A, the Applicant may attach
16          a report(s) that contain(s) the information requested for Attachment A.

17  The SRQ makes clear that Alta Bates was required to disclose the information requested,

18  including individuals with the trigger diagnoses listed on the form.  To assist in gathering the

19  required information, Alta Bates, or BMRS on behalf of Alta Bates, could reference the

20  suggested reports.  But according to the plain language of the SRQ, merely providing Large

21  Claims Reports was not sufficient to comply with the SRQ unless this report provided the all

22  information required by the SRQ.  Alta Bates has not demonstrated that the SRQ was

23  ambiguous in what was required to be disclosed.  *E.M.M.I. v. Zurich American Ins. Co.*, 32 Cal.

24  4th 465, 470 (2004) ("A policy provision is ambiguous when it is susceptible to two or more

25  reasonable constructions.").

26          Sixth, Alta Bates argues that the omitted information was not material.  "Materiality is

27  to be determined not by the event, but solely by the probable and reasonable influence of the

28  facts upon the party to whom the communication is due, in forming his estimate of the

United States District Court

For the Northern District of California

disadvantages of the proposed contract, or in making his inquiries."  Cal. Ins. Code § 334.

Materiality is determined solely by the probable and reasonable effect which truthful answers

would have had upon the insurer. ... The fact that the insurer has demanded answers to specific

questions in an application for insurance is in itself usually sufficient to establish materiality as

a matter of law." *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 916 (1973) (internal

citation omitted).  "The misrepresentation need not relate to the loss ultimately claimed by the

insured." *Mitchell v. United Nat. Ins. Co.*, 127 Cal. App. 4th 457, 474 (2005); *see also*

*Torbensen v. Family Life Ins. Co.*, 163 Cal. App. 2d 401, 405 (1958).  Rather, "[t]he test for

materiality is whether the information would have caused the underwriter to reject the

application, charge a higher premium, or amend the policy terms, had the underwriter known

the true facts." *Mitchell*, 127 Cal. App. 4th at 474; *see also Old Line Life Ins. Co. v. Superior*

*Court*, 229 Cal. App. 3d 1600, 1604 (1991) ("The most generally accepted test of materiality is

whether or not the matter misstated could reasonably be considered material in affecting the

insurer's decision as to whether or not to enter into the contract, in estimating the degree or

character of the risk, *or in fixing the premium rate thereon*.") (citation omitted) (emphasis in

original).  Defendants have demonstrated that had they been aware of the Employee Patient's

diagnoses in 2005 of congestive heart failure and chronic renal failure, and that she was being

prepared for dialysis, they would have increased the Alta Bates' premium or placed special

underwriting conditions on the Employee Patient such as a higher deductible.[3]  Therefore,

Defendants have shown that the failure to disclose the Employee Patient's diagnoses and

treatment in 2005 was material.        Seventh, Alta Bates argues that Defendants could have

ascertained the information regarding the Employee Patient's diagnoses.  In 2003, Mutual

signed an agreement with BRMS which provides Mutual with the right to inspect and audit any

---

[3] The deposition testimony cited by Alta Bates does not contradict Patricia Swank's declaration or create a question of fact regarding materiality.  In her deposition, Ms. Swank testified about a hypothetical patient with *acute* renal failure, not *chronic* renal failure.  Nor does the treatment of another claim in which the prior diagnosis had not been disclosed create a question of fact.  In that instance, the nurse testified that had she known about the prior diagnosis, she would not have projected costs over the $250,000 specific deductible for that patient.  Therefore, the failure to disclose in that instance was not material.  In contrast, here, Nurse Swank states that, had she been aware of the Employee Patient's diagnoses in 2005, she would have projected costs of at least $350,000.

United States District Court
For the Northern District of California

1    books or records maintained by BMRS.  (Augsburger Declaration, Tab 33.)  The agreement

2    further provides that Mutual owns all files, books, and records generated or obtained by BRMS

3    that relate to Mutual, policyholders, policy premiums, insured persons and policies.  (*Id.*)

4    Based on this agreement, Alta Bates contends that it had no obligation to disclose the Employee

5    Patient's trigger diagnosis because Defendants could have audited BRMS and obtained this

6    information for themselves.  Alta Bates has not demonstrated that Defendants had any reason to

7    believe that the information it and BRMS provided in connection with the policy was

8    inaccurate.  Nor has Alta Bates shown that Defendants had any obligation to audit BRMS'

9    documents or that Defendants actually did audit BRMS' documents.  Moreover, the case Alta

10   Bates cites in support of this argument, *Newman v. Firemen's Ins. Co. of Newark, New Jersey*,

11   67 Cal. App. 2d 386 (1944) is inapposite.  In *Newman*, the court found that the insured did not

12   make any false statements in applying for insurance.  *Id* at 392-93.  In addition, the court held

13   that a party to an insurance contract is not bound to communicate matters to "which, in the

14   exercise of ordinary care, the other ought to know, and of which the party has no reason to

15   suppose him ignorant" if no inquiry has been made.  *Id*. at 392 (citing Cal. Ins. Code § 333).  In

16   contrast here, the SRQ directly inquired about prior diagnoses of renal disease, renal failure,

17   dialysis, and chronic heart failure, and Alta Bates did make a false statement by certifying the

18   disclosures were complete and accurate.  Therefore, the Court finds that Alta Bates has not

19   shown that it did not have an obligation to provide the disclosures required by the SRQ.[4]

20        Lastly, Atla Bates contends that it would be unconscionable to interpret the SRQ to

21   require Alta Bates or BMRS to disclose the Employee Patient's trigger diagnoses because it was

22   such an enormous task.  To find a contract unenforceable on the grounds of unconscionability, a

23   court must find the contract to be both procedurally and substantively unconscionable.

24   *American Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996).  "Substantive

25   unconscionability focuses on the actual terms of the contract, while procedural

26   unconscionability focuses on the manner in which the contract was negotiated and the

27

28        [4] The Court notes the irony of Alta Bates' position, arguing that it did not know of the
     records in its own possession but that Defendants should be held to have knowledge of
     documents which they could have, but did not, audit.

United States District Court

For the Northern District of California

1    circumstances of the parties.... Indicia of procedural unconscionability include 'oppression,

2    arising from inequality of bargaining power and the absence of real negotiation or a meaningful

3    choice' and 'surprise, resulting from hiding the disputed term in a prolix document.'" *Id*. at

4    1390-91.  Substantive unconscionability is generally indicated by contract terms that are so one-

5    sided they "shock the conscience." *Id*. at 1391.  Alta Bates does not argue or submit any

6    evidence to demonstrate that the SRQ or the contract between the parties more generally, is

7    either procedurally or substantively unconscionable.  Therefore, the Court finds that Alta Bates

8    has not shown that excusing its obligation to disclose the Employee Patient's diagnoses and

9    treatment in 2005 based on the grounds of unconscionability is warranted.

10        Additionally, Alta Bates argues in the fact section of its brief that the disclosures were

11   not due before the policy became effective on January 1, 2006, but rather, within 30 days before

12   or *after* the effective date.  Alta Bates relies on the language of the SRQ stating that reports

13   submitted as the alternative to filling in Attachment A had to be "generated within 30 days of

14   the Proposed Effective Date."  "When a dispute arises over the meaning of contract language,

15   the first question to be decided is whether the language is reasonably susceptible to the

16   interpretation urged by the party.  If it is not, the case is over." *Lockyer v. R.J. Reynolds*, 107

17   Cal. App. 4th 516, 524 (2003).  Upon reviewing the entire SRQ, the Court finds that Alta Bates

18   proposed interpretation of the SRQ is not reasonable.  Although, under California law, a party

19   may present extrinsic evidence in order to demonstrate a latent ambiguity, the evidence on

20   which Alta Bates relies is insufficient to show its interpretation of the SRQ is reasonable.[5]  *See*

21   *Southern Pac. Transp. v. Santa Fe Pac. Pipelines, Inc.,* 74 Cal. App. 4th 1232, 1241 (1999); *see*

22

23       [5] Alta Bates cites to a statement by the underwriter that disclosures would be accepted
     anytime after November 15, 2004.  Such statement is relevant to the policy issued in 2005,
24   not 2006.  Moreover, although the underwriter did not explicitly state a date by which the
     disclosures had to be provided, it is not reasonable to interpret this statement to mean that
25   such disclosures could be provided at *any time*, including throughout 2005 and 2006, after
     the policy was issued or even expired.  Furthermore, Alta Bates' own broker understood that
26   the disclosures had to be given before the effective date of the policy.  Finally, even if the
     SRQ could be read to allow disclosures after the effective date of the policy, by signing the
27   SRQ, Alta Bates certified on December 7, 2005 that the disclosures provided were complete
     and accurate.
28       Alta Bates' reliance on the Defendants' payment on a claim of another patient whose
     diagnoses were not disclosed before January 1, 2006 is also misplaced.  As discussed above,
     the failure to disclose this other patient's diagnoses was not material.

*also City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993) (In order to determine whether a contract term is ambiguous, "[e]ven if the written agreement is clear and unambiguous on its face, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is 'reasonably susceptible."). Accordingly, the Court finds that Alta Bates has not demonstrated the existence any questions of fact which would preclude summary judgment on its claim for breach of contract.

### 2.      Breach of Implied Covenant of Good Faith and Fair Dealing Claim.

Because the Court finds that summary judgment is warranted on Alta Bates' breach of contract claim, Alta Bates' claim for breach of the implied covenant of good faith and fair dealing fails as well. *See Waller*, 11 Cal. 4th at 36 (holding that there can be no breach of the covenant of good faith and fair dealing if no benefits are due under the contract).

### 3.      Alta Bates' Request for Punitive Damages.

Similarly, because the Court finds that there is no breach of contract or breach of the implied covenant of good faith and fair dealing, Alta Bates cannot show that there is a question of fact regarding any entitlement to punitive damages.

### 4.      Mutual's Liability.

Because the Court finds that Alta Bates cannot recover on any of its claims, the Court need not determine whether Mutual could be held liable.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 13, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE